Robert W. Jones (State Bar # 10951200)
Brent R. McIlwain (State Bar # 24013140)
Kristen N. Beall (State Bar #24059049)
PATTON BOGGS LLP
2001 Ross Avenue, Suite 3000
Dallas, TX 75201
Phone: (214) 758-1500
Fax: (214) 758-1550
E-mail: *rwjones@pattonboggs.com*
E-mail: *bmcilwain@pattonboggs.com*
E-mail: *kbeall@pattonboggs.com*

Proposed Bankruptcy Counsel for
the Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No: 09-33886 |
| | § | |
| PROVIDENT ROYALTIES, LLC, *et al.*, | § | Chapter 11 |
| | § | |
| DEBTORS. | § | (Jointly Administered) |
| | § | |

### DEBTORS' MOTION FOR ORDER (I) APPROVING BID PROCEDURES RELATING TO SALE OF ASSETS; (II) SCHEDULING A HEARING TO CONSIDER THE SALE AND APPROVING THE FORM AND MATTER OF NOTICES; (III) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (IV) APPROVING DEAL PROTECTION PROVISION; AND (V) GRANTING RELATED RELIEF

A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 21, 2009 AT 10:30 AM, EARLE CABELL BUILDING, U.S. COURTHOUSE, 14th FLOOR, 1100 COMMERCE STREET, DALLAS, TEXAS.

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR

RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

Provident Royalties, LLC ("PRLLC") together with certain of its subsidiaries, as debtors and debtors in possession (the "Debtors")[1], by and through their undersigned counsel, hereby move (the "Motion") this Court, pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), for an order (the "Bid Procedures Order") (a) approving bid procedures (the "Bid Procedures") relating to a sale (the "Asset Sale") of certain assets (the "Properties") owned by PRLLC, Somerset Lease Holdings, Inc. ("SLH"), Shale Royalties II, Inc., ("SRII"), Shale Royalties 3, L.L.C. ("SR3"), Shale Royalties 4, Inc. ("SR4"), Provident Energy 1, LP ("PE1"), and Provident Resources 1, L.P ("PR1," and together with PRLLC, SLH, SRII, SR3, SR4, and PE1 the "Borrower Debtors") as set forth below and in that certain Agreement for Purchase and Sale dated June 22, 2009 (the "Agreement") by and among the Borrower Debtors and Sinclair Oil & Gas Company ("Buyer" or "Sinclair"); (b) scheduling a hearing (the "Sale Hearing") to consider the sale and approving the form and matter of notices including notices relating to (i) an auction (the "Auction") and (ii) an objection deadline with respect to the Asset Sale; (c) establishing procedures relating to assumption and assignment of certain Designated Contracts, including notice of proposed cure amounts (the "Cure Costs"), (d)

---

[1] The Debtors include Provident Royalties, LLC; Provident Operating Company, LLC; Somerset Lease Holdings, Inc.; Somerset Development, Inc.; Provident Energy 1, LP; Provident Resources 1, LP; Provident Energy 2, LP; Provident Energy 3, LP; Shale Royalties II, Inc.; Shale Royalties 3, LLC; Shale Royalties 4, Inc.; Shale Royalties 5, Inc.; Shale Royalties 6, Inc.; Shale Royalties 7, Inc.; Shale Royalties 8, Inc.; Shale Royalties 9, Inc.; Shale Royalties 10, Inc.; Shale Royalties 12, Inc.; Shale Royalties 14, Inc.; Shale Royalties 15, Inc.; Shale Royalties 16, Inc.; Shale Royalties 17, Inc.; Shale Royalties 18, Inc.; Shale Royalties 19, Inc.; Shale Royalties 20, Inc.; Shale Royalties 21, Inc.; and Shale Royalties 22, Inc.

approving the Overbid Fee as defined herein, and (e) granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory bases for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. BACKGROUND

3.  On June 22, 2009 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.  The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of these cases has been requested.

5.  No trustee, examiner or committee has been appointed in any of the Debtors' chapter 11 cases.

6.  The Debtors are in the business of acquiring and investing in both producing and non-producing leasehold and mineral interests across the United States, with a primary focus in Oklahoma. The Debtors acquire interests in targeted areas where the geology is well defined and productive, and in areas established operators have targeted, or are reasonably anticipated to

soon target for development, based upon known drilling trends. After acquisition of these interests, the Debtors participate as working interest owners in the drilling of wells on their leases.

7. In response to significant declines in the prices of both crude oil and natural gas, and a slowdown of drilling activity by various oil companies, the Debtors have suffered substantial decreases in production-related revenue. Further, the decrease in commodity prices, combined with the collapse in the credit markets, devastated the Debtors' ability to raise capital. As a result, the Debtors were forced to seek protection under chapter 11.

### III. THE PROPOSED SALE OF THE PROPERTIES TO SINCLAIR

8. Concurrently with this Motion, the Debtors filed their *Motion for an Order (I) Authorizing the Sale of Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* (the "Sale Motion")[2]. The Sale Motion provides additional discussion and background regarding the Debtors' analysis of potential restructuring alternatives and their rationale for deciding to proceed with the Asset Sale. Furthermore, the material terms of the proposed Asset Sale to Sinclair are discussed more fully in the Sale Motion.

9. As set forth in detail in the Sale Motion, the Debtors have explored strategic alternatives, including a thorough marketing of all of the Debtors' assets over a three month

---

[2] Capitalized terms shall have the meanings ascribed to them in the Agreement or the Sale Motion unless otherwise defined herein.

period. That process was led by Raymond James & Associates, Inc., a well known investment banking firm engaged by the Debtors

10. While the process was thorough and complete, it did not yield any offers that came close to approximating the amount necessary to satisfy the more than $150 million in senior secured Debt held by Sinclair Oil & Gas Company. Thereafter, the Borrower Debtors turned their attention in earnest to negotiations with Sinclair in order to address the Sinclair debt. That negotiation was successful, as evidenced by the terms of the proposed sale set forth in the Sale Motion.

### IV. PROPOSED BID PROCEDURES

11. In order to further confirm that the terms of the Asset Sale are the highest and best, Sinclair has agreed to act as a "stalking horse" bidder, subjecting the Sinclair bid to higher and better offers at an Auction, pursuant to the procedures set forth herein.

**A.** **Auction**

12. The Debtors intend to conduct the auction in accordance with the Bid Procedures summarized below and described more fully in Exhibit A to the Bid Procedures Order. Under Bankruptcy Rule 6004(f)(1), the Debtors may sell property outside the ordinary course of business by private sale or by public auction. The Debtors believe that the Auction will act as a final test of the market and ensure a sale to the highest and best bidder.

**B.** **Buyer Protections/Expense Reimbursement**

13. To induce Sinclair to expend the time, energy and resources necessary to submit a stalking horse bid, the Debtors have agreed to provide, and to seek at this time this Court's approval of, certain bid protections provided to Sinclair pursuant to the Agreement. In the event

that a bidder other than Sinclair emerges from the Auction as the Successful Bidder, Sinclair shall be entitled to a) Payment of a termination fee equal to $500,000 (the "Termination Fee"); and b) payment of up to $500,000 of documented actual out-of-pocket costs and expenses, including, the fees of their attorneys, financial advisors, accountants and other professionals that Sinclair incurred in connection with the negotiation, documentation and implementation of the Agreement and the transactions contemplated thereby and participation in these bankruptcy cases (the "Termination Expenses," together with the Termination Fee, the "Overbid Fee").

14. The maximum possible Overbid Fee of $1,000,000 represents less than 1% of the principal amount of the Senior Debt held by Sinclair. If the Debtors become obligated to pay Sinclair's Overbid Fee, then such obligations shall constitute an administrative expense claim under Bankruptcy Code §§ 503(b) and 507(a)(2) and shall be payable without further order of this Court.

C. **Notice of Sale Hearing Auction Bid Procedures, and Objection Dates**

15. The Debtors propose to hold the Auction at the offices of Patton Boggs, LLP, 2001 Ross Avenue, Suite 3000, Dallas TX 75201 on August 24, 2009 at 10:00 a.m. CDT.

16. The Debtors request that the Court schedule the Sale Hearing on August 25, 2009 at 10:30 a.m. (CDT), with an objection deadline for such Sale Hearing set for August 14, 2009 by 4:00 p.m. CDT.

17. In accordance with Bankruptcy Rule 2002, the Debtors propose to give notice of the Bid Procedures, the Bid Procedures Order, the Auction and the proposed Sale through service of the *Notice of (A) Auction for the Sale of the Borrower Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, (B) Procedures for the Submission of Qualifying Bids and (C)*

*Sale Hearing* (the "Auction and Sale Notice"), attached as Exhibit B to the Bid Procedures Order. Upon entry of the Bid Procedures Order, the Debtors will serve the Auction and Sale Notice, via first class mail, upon:

(a) The Office of the United States Trustee;

(b) All parties in this case that have requested notice pursuant to Bankruptcy Rule 2002;

(c) Vinson & Elkins L.L.P., counsel to Sinclair;

(d) Counsel to any statutory committee appointed in these chapter 11 cases

(e) Federal, state, and local regulatory and taxing authorities that are reasonably ascertainable to the Debtors and have a known interest in the Properties, including the Internal Revenue Service;

(f) The Securities and Exchange Commission;

(g) All persons or entities that have or may assert a lien or security interest in all or any portion of the Properties known by the Borrower Debtors;

(h) All parties known to the Borrower Debtors as having expressed a bona fide interest in acquiring all or a material portion of the Properties;

(i) The known counterparties to each of the Purchased Contracts;

(j) Entities listed on the Debtors' Creditor Matrix.

18. Additionally, as soon as is practicable after the court enters the Bid Procedures Order, copies of this Motion, the Sale Motion, the Bid Procedures, and all other related pleadings will be available on the following website: http://chapter11.epiqsystems.com/providentroyaltiesllc, or by submitting a request to counsel for the Debtors at the following address and telephone number, Patton Boggs LLP, 2001 Ross Avenue, Suite 3000, Dallas, Texas 75201: Attn Brent McIlwain, (214)-758-1500.

19. The Debtors submit that the foregoing notice is reasonably calculated to provide timely and adequate notice of the Bid Procedures and the Auction. The failure of any person or entity receiving the Auction and Sale Notice to timely file its objection will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Borrower Debtors' consummation and performance of the Agreement, if so authorized by this Court.

D. **Notice of Assumption and Assignment of Certain Purchased Contracts**

20. As part of the Asset Sale, the Debtors intend to assume and assign certain Purchased Contracts. In order to facilitate the assumption and assignment of the Purchased Contracts, the Debtors propose to serve a notice of the cure amounts associated with the assumption of the Debtors' Purchased Contracts (the "Cure Amount Notice"), in the form attached as Exhibit C to the Bid Procedures Order, to all known counterparties to the Purchased Contracts not later than five (5) days after the entry of an order approving this Motion and request that the Court approve the following procedures for fixing any cure amounts owed on all Purchased Contracts.

21. The Debtors will attach to the Cure Amount Notice their calculation of the Cure Costs that the Debtors believe must be paid to cure all prepetition defaults under all unexpired leases, license agreements and executory contracts. If no amount is listed on the Cure Amount Notice, the Debtors believe that there is no Cure Cost. The Debtors request that unless the non-debtor party to a Purchased Contract files and serves an objection (the "Cure Amount Objection") to its scheduled Cure Cost within twenty three (23) days after the date of service of the Cure Amount Notice, upon the parties listed on Exhibit C to the Bid Procedures Order, such non-debtor party should (i) be forever barred from objecting to the Cure Cost and from asserting

any additional cure or other amounts with respect to such unexpired lease, license agreement or executory contract and the Debtors shall be entitled to rely solely upon the Cure Cost; and (ii) be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder or any other assignee of the Purchased Contract that any additional amounts are due or defaults exist, or conditions to assumption and assignment must be satisfied under such unexpired lease, license agreement or executory contract.

22. In the event that a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (a) the basis for the objection, and (b) the amount the party asserts as the Cure Cost. After receipt of a Cure Amount Objection, the Debtors will attempt to reconcile any differences in the Cure Cost believed by the non-debtor party to exist. In the event, however, the Debtors and the non-debtor party cannot consensually resolve the Cure Amount Objection, such objection will be resolved by the Court at the Sale Hearing and after Court determination of the required cure amount, the Debtors may either go forward with assumption and assignment or may withdraw such agreement from the Cure Amount Notice.

## V. THE BID PROCEDURE ORDER IS APPROPRIATE

### A. Conducting the Auction Pursuant to the Bid Procedures is in the Best Interests of the Debtors' Estates

23. The Debtors believe that the Auction and proposed Bid Procedures will promote active bidding from seriously interested parties and will identify the best or highest offer(s) for the Properties. The proposed Bid Procedures will allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. The Debtors believe that the Bid Procedures are: (a) sufficient to encourage bidding for the Properties; (b) consistent with other procedures

previously approved by the Court; and (c) appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. Further, the Bid Procedures are designed to maximize value for the Debtors' estates, while ensuring an orderly sale process consistent with the timeline available to the Debtors under the Agreement.

24. The paramount goal in any proposed auction of property of the estate is to maximize the proceeds received by the estate. *See, e.g., In re Food Barn Stores Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well- established principle of bankruptcy law that the , . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)). *See also In re Terrell*, 27 B.R. 130 (Bankr. W.D. La. 1983) ("… a trustee is under a duty to liquidate property of the estate expeditiously but at the highest price that can be obtained").

25. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Cantaxx Gas Storage Ltd. v. Silverhawk Capital Ptnrs., LLC*, 2008 U.S. Dist. LEXIS 37803, 17-18 (S.D. Tex. May 8, 2008) ("Break-up and similar fees are common in corporate transactions … Such a fee provision may … enhance the bidding process by creating momentum toward closing a sale"). *Integrated Res.*, 147 B.R. at 659 (such procedures "encourage bidding to maximize the value of the debtor's assets").

Motion for Order (I) Approving Bid Procedures; (II) Scheduling a Hearing to Consider the Sale and
Approving the Form and Matter of Notices; (III) Establishing Procedures Relating to Assignment and
Assumption of Certain Contracts; (IV) Approving Deal Protections;
and (V) Granting Related Relief                                                                     Page 10

26. The Debtors have sound business justifications for seeking approval of the Bid Procedures at this juncture. By commencing bidding procedures now, the Borrower Debtors will manage to realize fair value for a substantial portion of their estate assets, even during a relatively "soft" energy market, which has previously been held to be a valid justification for a proposed 363 sale. *In re Terrace Gardens Park Partnership*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) (holding that an asset sale at a favorable price would help to implement a bankruptcy plan, especially in a "soft and flat" market, where prudent business judgment would dictate accepting a favorable pre-confirmation purchase offer). Furthermore, the Bid Procedures offer a final test of the offer made by Sinclair and will ensure that the Senior Debt is satisfied.

27. The Bid Procedures are designed to encourage competitive bidding in an orderly manner to maximize value for the Debtors' estates for their creditors and interest holders. The proposed procedures contain terms typical for a process through which a sale of this nature is consummated and will increase the likelihood that the Debtors will receive the greatest possible consideration because they will ensure a competitive and fair bidding process.

28. As additional support, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As described above, approval of the Bid Procedures will greatly assist the Debtors in maximizing the value that they may obtain for all or portions of the Properties. Consequently, the Debtors respectfully submit that granting the requested relief is "appropriate" under the circumstance.

### B. The Bid Protections Are in the Best Interests of the Debtors' Estates

29. The Overbid Fee is a material inducement for, and a condition of, Sinclair's entry into the Agreement. The Overbid Fee is fair and reasonable in view of (a) the intensive analysis, due diligence investigation, and negotiation undertaken by Sinclair in connection with the transaction and (b) the fact that, if the Overbid Fee is triggered, Sinclair's efforts will have triggered the chances that the Debtors will receive the highest or otherwise best offer for the Properties, to the benefit of the Debtors' creditors, customers and employees.

30. Although bidding incentives in favor of a stalking horse are measured against a business judgment standard, in order to receive administrative expense priority pursuant to Bankruptcy Code Section 503(b), the bidding incentive must provide some post petition benefit to the estate. *See In re O'Brien Envtl Energy. Inc.*, 181 F.3d 527, 533 (3d Cir. 1999); *See also In re Kitty Hawk, Inc.*, 2003 Bankr. LEXIS (Bankr. N.D. Tex. July 29, 2003).

31. The *O'Brien* Court identified two instances in which such a benefit to the estate may be found. First, a benefit is found if the incentive promoted a more competitive bidding process, "such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited."]] Second, benefit is found where bidding incentives induce a bidder to research the value of the debtor and submit a bid that serves as the floor bid on which other bidders can rely. *See also Cantaxx Gas Storage Ltd. v. Silverhawk Capital Ptnrs., LLC*, 2008 U.S. Dist. LEXIS 37803, 17-18 (S.D. Tex. May 8, 2008) ("Courts recognize that a [break up fee] can serve several purposes. Such a fee provision can protect a prospective purchaser that makes an offer that is then "shopped around" to attract higher offers. ... Such a fee provision may also serve to discourage a bidding strategy designed to hold back competitive bids until late

in the process; aid the seller in negotiating an initial bid that is the offeror's highest bid; establish a high floor early in the bidding process; and enhance the bidding process by creating momentum toward closing a sale.")

32. The amount of the Overbid Fee in the Agreement is reasonable and appropriate in light of the size and nature of the transaction. Moreover, the Overbid Fee is consistent with the requirement that it produce a post petition benefit to the estate; the Overbid Fee provision was a material consideration without which Sinclair would not have entered into the Agreement.

33. The Debtors submit that the Overbid Fee is a normal, and oftentimes necessary component of sales outside the ordinary course of business under section 363 of the Bankruptcy Code. *See e.g., In re the Bombay Company, Inc.*, Case No. 07-44084, Docket No. 133 (Bankr. N.D. Tex. Sept. 26, 2007) (authorizing payment of a break-up fee to the stalking horse bidder); *In re Encompass Services Corp.*, Case No. 02-43582, Docket No. 257 (Bankr. S.D. Tex., Dec. 5, 2002) (giving Debtors the right, but not the obligation, to pay a break-up fee of 2-3%, depending on sale price); *In re Crowthers McCall Pattern Inc.*, 114 B.R. 877 (Bankr. S.D.N.Y. 1990) (approving an overbid requirement in an amount equal to the approved break-up fee). Moreover, payment of the Overbid Fee will not diminish the assets of the estates available for distribution to creditors, as the Debtors do not intend to terminate the Agreement and pay the Overbid Fee unless they accept and close on an alternative bid, which bid must exceed the consideration offered by Sinclair.

34. The Debtors request that the Court authorize payment of the Overbid Fee, pursuant to the terms and conditions of the Agreement.

WHEREFORE, the Debtors respectfully request that this Court (i) enter the proposed Order substantially in the form attached and (ii) grant such other and further relief as is just and proper.

Dated: June 25, 2009

Respectfully Submitted,

/s/ Robert W. Jones
Robert W. Jones
rwjones@pattonboggs.com
Brent R. McIlwain
bmcilwain@pattonboggs.com
Kristen N. Beall
kbeall@pattonboggs.com
PATTON BOGGS LLP
2001 Ross Avenue, Suite 3000
Dallas, TX 75201-8001
Telephone: (214) 758-1500
Facsimile: (214) 758-1550

Proposed Counsel for the
Debtors and Debtors in Possession

## CERTIFICATE OF SERVICE

I certify that on June 26, 2009, a copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas, and (ii) on all parties entitled to receive notice in accordance with the Order Granting Complex Chapter 11 Bankruptcy Treatment (Docket No. 47) via first class mail.

/s/ Kristen N. Beall

Kristen N. Beall

Motion for Order (I) Approving Bid Procedures; (II) Scheduling a Hearing to Consider the Sale and Approving the Form and Matter of Notices; (III) Establishing Procedures Relating to Assignment and Assumption of Certain Contracts; (IV) Approving Deal Protections;
and (V) Granting Related Relief                                                                                       Page 14