## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 09-33886** |
| | § | |
| | § | **Chapter 11** |
| **PROVIDENT ROYALTIES, LLC,** *et al.* | § | |
| | § | |
| **DEBTORS.** | § | **(Jointly Administered)** |
| | § | |

### ORDER (I) APPROVING BID PROCEDURES RELATING TO SALE OF ASSETS; (II) SCHEDULING A HEARING TO CONSIDER THE SALE AND APPROVING THE FORM AND MATTER OF NOTICES; (III) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (IV) APPROVING DEAL PROTECTION PROVISION; AND (V) GRANTING RELATED RELIEF

On Tuesday, July 21, 2009, this Court considered the *Debtors' Motion for Entry of an Order (I) Approving Bid Procedures Relating to Sale of Assets; (II) Scheduling a Hearing to Consider the Sale and Approving the Form and Matter of Notices; (III) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts; (IV) Approving Deal Protection Provision; and (V) Granting Related Relief* (the "Motion")[1] filed by Provident Royalties, L.L.C., a Delaware limited liability company ("Provident"), Somerset Lease Holdings, Inc., a Texas corporation ("Somerset"), Shale Royalties II, Inc., a Delaware corporation ("SR2"), Shale Royalties 3, LLC, a Texas limited liability company ("SR3"), Shale Royalties 4, Inc., a Delaware corporation ("SR4"), Provident Energy 1, LP, a Texas limited partnership ("PE1"), and Provident Resources 1, LP, a Texas limited partnership ("PR1," and together with Provident, Somerset, SR2, SR3, SR4, and PE1, each a "Borrower Debtor", and collectively, the "Borrower Debtors").

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

**Order Approving Bid Procedures and Notice for a Sale of Substantially all of the Borrower Debtors' Assets, Scheduling a Final Hearing, Approving Procedures for Assessing Cure Costs, and Granting Related Relief**

Having considered the Motion, the evidence presented, proffers of testimony, and arguments and representations of counsel, this Court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"); and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that granting the relief is in the best interests of the Borrower Debtors, their estates, and creditors; and any objections (the "Objections") to the Motion having been resolved, withdrawn, or otherwise overruled by this Order; after due deliberation, and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**:

A.       Notice of the Motion has been given to (i) the Office of the United States Trustee; (ii) counsel to Sinclair; (iii) counsel to any statutory committee appointed in these chapter 11 cases; (iv) all creditors listed in the Creditor Matrix; (v) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (vi) all persons or entities that have, or may assert a lien on or security interest in all or any portion of the Properties known by the Borrower Debtors; (vii) the known counterparties to each of the Purchased Contracts; (vii) all parties known to the Borrower Debtors as having expressed a bona fide interest in acquiring all or a material portion of the Properties; (ix) the Securities and Exchange Commission; and (x) all taxing authorities having jurisdiction over any of the Properties, including the Internal Revenue Service. Notice is hereby found to be reasonable and sufficient in light of the circumstances and nature of the relief requested.

B.       The Borrower Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the bidding and sales process, including, without limitation, (i) approving the Bid Procedures, including the Overbid Fee, substantially in the form

attached hereto as Exhibit A, to be employed in connection with the proposed sale of the Properties of the Borrower Debtors as described in that certain Agreement for Purchase and Sale, dated as of June 22, 2009 (the "Agreement"); (b) approving the form, manner, and sufficiency of notice, substantially in the form attached hereto as Exhibit B, of the Sale, the Bid Procedures, and the respective dates, times, and places for the Auction and the Sale Hearing; (c) scheduling the Auction and the Sale Hearing; (d) approving the form, manner, and sufficiency of notice, substantially in the form attached hereto as Exhibit C, to counterparties to the Purchased Contracts; and (e) establishing procedures for determining Cure Costs in connection with the assumption and assignment of the Purchased Contracts, all as more fully described in the Agreement

C.      The Court has jurisdiction to consider the Motion and the relief requested pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested is a core proceeding pursuant to 28 U.S.C. § 157(b); venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and no other notice need be provided.

D.      The Bid Procedures are fair, reasonable, appropriate, and designed to maximize the recovery on the Properties.

E.      The Borrower Debtors have demonstrated that authorizing reimbursement to Sinclair of a termination fee in the amount of $500,000 (the "Termination Fee") and an overbid fee for out-of-pocket costs and expenses incurred in connection with the Agreement of an amount up to $500,000 (the "Termination Expenses" and, together with the Termination Fee, the "Overbid Fee") is in the best interests of the Borrower Debtors' estates, provides benefit to the estates and is based on compelling and sound business justification.  The Overbid Fee shall be payable in the event that (i) Sinclair terminates the Agreement due to the Borrower Debtors' accepting an offer for the Properties

from anyone other than the Buyer (an "Alternative Transaction"), or (ii) the Bankruptcy Court approves an Alternative Transaction. The Overbid Fee shall be paid directly from the sale proceeds at the closing of an Alternative Transaction either through a stand alone sale motion or through a plan of reorganization or plan of liquidation.

F.      The Overbid Fee was negotiated by the Borrower Debtors and Sinclair in good faith and at arm's-length and is fair and reasonable.

G.      The Borrower Debtors' payment to Sinclair of the Overbid Fee pursuant to the Agreement is: (i) an actual and necessary cost and expense of preserving the Borrower Debtors' estates, within the meaning of Bankruptcy Code § 503(b); (ii) commensurate with the real and substantial benefit conferred upon the Borrower Debtors' estates by Sinclair; (iii) reasonable and appropriate, given, among other things, the size and nature of the proposed sale transaction, the substantial efforts and commitments that have been and the efforts that have been and will be expended by Sinclair, and the benefits Sinclair has provided to the Borrower Debtors' estates, creditors, and all parties in interest herein by helping to maximize the value of the Properties; (iv) necessary to ensure that Sinclair will serve as the "stalking horse" bidder and continue to pursue its proposed acquisition of the Properties; and (v) necessary to ensure that the Borrower Debtors will have the opportunity to consider other potential purchasers who may offer and pay a higher purchase price or provide better consideration for the Properties.

H.      The Overbid Fee also induced Sinclair to submit a bid that will serve as a minimum floor bid on which the Borrower Debtors, its creditors and other potential bidders may rely. Sinclair has provided a material benefit to the Borrower Debtors and their creditors by increasing the likelihood that the best possible price for the Properties will be received. Accordingly, the Bidding

Procedures and the Overbid Fee are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Borrower Debtors' estates.

I.      The service of the Auction and Sale Notice, attached hereto as Exhibit B, is reasonably calculated to provide due, adequate, and timely notice to all interested parties of the Auction, Sale Hearing, and proposed sale of the Properties in accordance with Bankruptcy Rule 2002 and the applicable provisions of the Bankruptcy Code.

J.      The service of the Cure Amount Notice is reasonably calculated to provide due, adequate, and timely notice to all Purchased Contract counterparties of the potential assumption and assignment of their executory contracts and unexpired leases and any proposed Cure Costs relating thereto.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED**.

2.      All Objections to the relief requested in the Motion, if any, that have not been withdrawn, waived, or settled are overruled in their entirety.

3.      The Borrower Debtors may proceed with the sale of the Properties by conducting the Auction in accordance with the Bid Procedures, which procedures are hereby approved in their entirety in the form attached hereto as Exhibit A.  The Borrower Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

4.      The Auction and Sale Notice, in the form attached hereto as Exhibit B, is hereby approved, and the Borrower Debtors shall serve the Auction and Sale Notice upon the persons in the manner specified in the Motion and post other supporting materials on the internet as provided in the Motion.  Such notice shall be deemed proper, due, timely, good, and sufficient notice of the entry of

this Order, the Bidding Procedures, the Auction, and the Sale Hearing in accordance with Bankruptcy Rules 2002 and 6004 and no other or further notice shall be required with respect thereto.

5.     The Cure Amount Notice, in the form attached hereto as Exhibit C, is hereby approved, and the Borrower Debtors shall serve the Cure Amount Notice upon the persons and in the manner specified in the Motion.    Such notice shall be deemed proper, due, timely, good, and sufficient notice of the proposed assumption and assignment of the Purchased Contracts, the proposed Cure Costs, and the procedures for objecting thereto.

6.     The Overbid Fee as set forth herein and in the Agreement is hereby approved.    If Sinclair becomes entitled to the Overbid Fee as provided in paragraph E of this Order, then Sinclair shall be, and hereby is, granted an allowed administrative claim in the Borrower Debtors' cases in an amount equal to the Overbid Fee, under Bankruptcy Code §§ 503(b) and 507(a)(2).    The Borrower Debtors are authorized and directed, without further action or order by the Court, to pay the Overbid Fee in accordance with the terms and conditions of the Agreement and this Order.

7.     No person or entity, other than Sinclair, shall be entitled to any expense reimbursement, break-up fee, "topping", termination, or similar fee or payment related to the sale of the Properties.

8.     Objections, if any, to the proposed assumption and assignment of the Purchased Contracts, including, but not limited to, objections relating to the Cure Costs and/or adequate assurances of future performance, must (a) be in writing; (b) state with specificity the nature of such objection; (c) if concerning a proposed Cure Cost, set forth a specific default in the Purchased Contract and claim a specific monetary amount that differs from the amount (if any) specified by the Borrower Debtors in the Cure Amount Notice (with appropriate documentation in support thereof);

(d) comply with the Federal Rules of Bankruptcy Procedure; and (e) be filed with this Court and served upon the parties to receive notice as stated in the Cure Amount Notice by Friday, August 14, 2009 at 4:00 p.m. prevailing Central Time.

9.     The Borrower Debtors are authorized to amend the Cure Amount Notice by adding or deleting Purchased Contracts and/or amending Cure Costs at any time prior to the Sale Hearing; provided, however, that counterparties to any Purchased Contracts that are added to the Cure Amount Notice or whose Cure Costs are amended shall have at least ten (10) calendar days from service of the amended Cure Amount Notice to properly object to such addition or cure amount amendment.  In addition, the Borrower Debtors are authorized to delete any Purchased Contract from the Cure Amount Notice and, thus, not assume at that juncture, prior to entry of any order otherwise assuming and assigning such Purchased Contract.

10.     Any party failing to timely file an objection to the Cure Costs set forth in the Cure Amount Notice or the proposed assumption and assignment of the Purchased Contracts shall be forever barred from objecting to the Cure Costs and from asserting cure or other amounts against the Borrower Debtors, their estates, and Sinclair (or another Successful Bidder at the Auction) with respect to its Purchased Contract arising prior to assumption of the Purchased Contract and will be deemed to consent to the Sale and the proposed assumption and assignment of its Purchased Contract.

11.     Where a counterparty to a Purchased Contract files a timely objection asserting a higher cure amount than the Cure Cost set forth in the Cure Amount Notice and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid under Bankruptcy Code § 365 with respect to such objection will be determined at the Sale Hearing or such other date

and time as may be fixed by this Court. All other unresolved objections to the proposed assumption and assignment of the Purchased Contracts will be heard at the Sale Hearing.

12.     This Order shall be binding upon, and inure to the benefit of Sinclair and its affiliates, successors, and assigns and the Borrower Debtors, and their estates, including any chapter 7 or 11 trustee or other fiduciary appointed for the estates of the Borrower Debtors, whether in these cases, subsequent bankruptcy cases or upon dismissal of any of these cases.

13.     Service of the notices described herein on the parties entitled to receive such notices pursuant to this Order shall constitute proper, timely, adequate, and sufficient notice thereof and satisfies the requirements of Bankruptcy Code §§ 102, 105, 363(b), 363(f) and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9007.

14.     Objections, if any, to the relief sought in the Sale Motion shall be filed and served in accordance with the Auction and Sale Notice such that each objection is actually received by the parties to receive notice as stated in the Auction and Sale Notice by Friday, August 14, 2009 at 4:00 p.m. prevailing Central Time.

15.     The Sale Hearing to consider approval of the Agreement and the transactions contemplated thereby shall be held on Tuesday, August 25, 2009 at 10:30 a.m. prevailing Central Time.

16.     Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), this Order shall <u>not</u> be stayed for ten (10) days after the entry hereof and this Order shall be effective and enforceable immediately upon entry on this Court's docket.

17.     This Court shall retain exclusive jurisdiction over any matters related to or arising from the implementation of this Order, including, but not limited to, any matter, claim, or dispute arising

from or relating to the Overbid Fee, the Bidding Procedures and/or the implementation of this Order.


# # # END OF ORDER # # #

# Exhibit "A" – Bid Procedures

# EXHIBIT A

## BID PROCEDURES[1]

Set forth below are the bidding procedures (the "Bid Procedures") to be employed with respect to the sale of certain properties (the "Properties") pursuant to the Agreement for Purchase and Sale (the "Agreement") by and among Provident Royalties LLC, a Delaware limited liability company ("Provident"), Somerset Lease Holdings, Inc., a Texas corporation ("Somerset"), Shale Royalties II, Inc., a Delaware corporation ("SRII"), Shale Royalties 3 LLC, a Texas limited liability company ("SR3"), Shale Royalties 4, Inc., a Delaware corporation ("SR4"), Provident Energy 1, LP, a Texas limited partnership ("PE1"), and Provident Resources 1, LP, a Texas limited partnership ("PR1," and collectively with Provident, Somerset, SRII, SR3, SR4, and PE1, "Sellers"), and Sinclair Oil & Gas Company, a Wyoming corporation ("Buyer" or "Sinclair"). The sale of the Properties under the Agreement (the "Sale") is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to Sections 363 and 365 of the Bankruptcy Code. As provided in the Agreement, Sellers will file the Sale Motion with the Bankruptcy Court seeking approval of the Sale and the Overbid Procedures.

### The Sale Hearing

At the Sale Hearing, Sellers will seek entry of an order, _inter alia_, authorizing and approving the Sale (i) if no other Qualified Bid (as hereinafter defined) is received, to Buyer pursuant to the terms and conditions set forth in the Agreement, or (ii) if a Qualified Bid is received by Sellers, to Buyer or such other Qualified Bidder as the Sellers, in the exercise of their business judgment, may determine to have made the highest and best offer to purchase the Properties of Sellers, consistent with the Bid Procedures (the "Successful Bidder"). Buyer is automatically deemed to be a Qualified Bidder.

### Determination of the Sellers

Sellers shall (i) determine whether any Person, other than Buyer, is a Qualified Bidder, (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence investigations regarding Sellers generally, (iii) receive offers from Qualified Bidders, and (iv) negotiate any offer made to purchase the Properties of Sellers (collectively, the "Bidding Process," provided the definition "Bidding Process" shall not include the Auction). Any Person who wishes to participate in the Bidding Process must be a Qualified Bidder.

### Participation Requirements

In the Bidding Process, each Person other than Buyer (a "Potential Bidder") must deliver (unless previously delivered) to Sellers:

> (i) An executed confidentiality agreement in form and substance satisfactory to Sellers;

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings set forth in the Agreement.

(ii)     Such financial and other information, including contact information, that will allow the Sellers to determine the Potential Bidders' financial and other capabilities to consummate the transactions; and

(iii)     The identity of each entity that will be bidding for the Properties or otherwise participating in connection with such bid, and the complete terms of any such participation.

A "Qualified Bidder" is a Potential Bidder that delivers the documents described in subparagraph (i) and (ii) above, whose financial information and credit quality support or enhancement demonstrates the financial capability of the Potential Bidder to consummate the Sale, and/or a Potential Bidder that Sellers determine is reasonably likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale, if selected as the Successful Bidder.

Sellers shall determine, and shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder.  At the same time that Sellers notify a Potential Bidder that it is a Qualified Bidder, Sellers shall deliver (unless previously delivered) to the Qualified Bidder (i) the same confidential memorandum given to Buyer containing information and financial data relative to the Properties sought to be acquired (the "Confidential Memorandum") and (ii) a copy of the Agreement.

### Due Diligence

To obtain due diligence access or additional information from Sellers, a Qualified Bidder (other than Buyer) must first advise Sellers in writing of its preliminary (non-binding) proposal regarding (i) the Properties sought to be acquired, (ii) purchase price range, (iii) the structure and financing of the transaction (including the amount of equity to be committed and sources of financing), (iv) any additional conditions to closing that it may wish to impose, and (v) the nature and extent of additional due diligence it may wish to conduct.  If, based on the preliminary proposal and such additional factors as Sellers determine are relevant, Sellers, in their business judgment, determine that the preliminary proposal is reasonably likely to result in a bona fide higher and better offer for the Properties to be acquired by Buyer or will produce greater value to Sellers, Sellers shall afford the Qualified Bidder due diligence access to Sellers.  Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such bidders.  Any additional due diligence shall not continue after the Bid Deadline.  Neither Sellers nor any of their Affiliates (or any of their respective representatives) shall furnish any such additional information relating to Sellers or the Properties to any Person except to such a Qualified Bidder who makes an acceptable preliminary proposal.  Buyer shall be entitled to request and receive any information that Sellers provide to any Qualified Bidder and Sellers shall use their reasonable efforts to provide such information promptly.

### Bid Deadline

A Qualified Bidder that desires to make a bid shall deliver written copies of its bid to (i) Buyer and (ii) Raymond James & Associates, Inc., 277 Park Avenue, 4th Floor, New York, NY

10172; Attn: Mike Pokrassa, not later than 12:00 noon (CDT) on August 18, 2009 (the "Bid Deadline"). Sellers shall provide copies of the Qualified Bid(s) to (x) counsel for the Committee, and (y) counsel for the Sellers' prepetition secured lenders by August 21, 2009.

## Bid Requirements

A bid is a letter from a Qualified Bidder (other than the Buyer, whose participation as a Qualified Bidder shall be on the terms set forth in the Agreement) stating that (i) the Qualified Bidder offers to purchase the Properties sought to be acquired upon the terms and conditions set forth in a copy of the Agreement, marked to show those amendments and modifications to the Agreement, including price, terms, and Properties to be acquired, that the Qualified Bidder proposes (the "Marked Agreement") and (ii) the Qualified Bidder's offer is irrevocable until 48 hours after the closing of the sale of the Properties of Sellers, whether or not to such Qualified Bidder. A Qualified Bidder (other than Buyer) shall accompany its bid with written evidence of a commitment for financing or other written evidence of ability to consummate the transaction.

The Sellers will consider a bid only if the bid, at a minimum:

(a)     provides for cash consideration to Sellers (after payment of the Overbid Fee) of at least $250,000 over the Purchase Price;

(b)     is on terms that are not materially more burdensome or conditional than the terms of the Agreement;

(c)     is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the Qualified Bidder with respect to the Properties sought to be acquired;

(d)     does not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment; and

(e)     is submitted prior to the Bid Deadline.

A bid received from a Qualified Bidder that meets the above requirements is a "Qualified Bid." A Qualified Bid will be valued based upon factors such as (a) the amount of the Qualified Bid, (b) the value of the Properties not being purchased, if any, (c) the amount of Sellers' liabilities to be assumed and (d) the net value provided to Sellers. For purposes hereof, the Agreement executed by Buyer shall constitute a Qualified Bid.

## "As Is, Where Is"

The sale of the Properties of the Sellers shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Sellers, their agents or their estates, except to the extent set forth in the Agreement or the Marked Agreement, as the case may be. Except as otherwise provided in the Agreement or the Marked Agreement, as the case may be, all of Sellers' right, title and interest in and to the Properties shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Transferred Liens"), such Transferred Liens

attaching to the net proceeds of the sale of such Properties, in the order of their priority, with the same validity, force and effect which they now have as against the Properties, subject to any claims and defenses the Sellers may possess with respect thereto.

## Auction

If Qualified Bids have been received from at least one Qualified Bidder other than Buyer, Sellers will conduct an auction (the "Auction") with respect to such Properties. The Auction shall take place at 10:00 a.m. (CDT) on August 24, 2009, at the offices of Patton Boggs, LLP, 2001 Ross Avenue, Suite 3000, Dallas, Texas 75201, (214) 758-1500. At the Auction, participants will be permitted to increase their bids. The bidding shall start at the purchase price proposed in the best and highest Qualified Bid, as determined by Sellers', and continue in minimum bid increments of at least $250,000. Sellers may adopt rules for the bidding process at the Auction that, in their reasonable judgment, will better promote the goals of the bidding process and that are not inconsistent with any of the provisions of the Agreement, any Bankruptcy Court order (including, the Initial Order) or these Bid Procedures. All such rules will provide that: (a) the procedures must be fair and open, with no participating Qualified Bidder disadvantaged in any material way as compared to any other Qualified Bidder and (b) all bids shall be made and received in one room, on an open basis, and all other bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each bidder will be full disclosed to all other bidders throughout the entire Auction (the "Open Auction Procedures").

Only a Qualified Bidder who has submitted a Qualified Bid shall be eligible to participate at the Auction. At least one (1) day prior to the Auction, Sellers shall give Buyer and all other Qualified Bidders a copy of the highest and best Qualified Bid received and, copies of all other Qualified Bids. In addition, Sellers will inform Buyer and each Qualified Bidder who has expressed its intent to participate in the Auction of the identity of all Qualified Bidders that may participate in the Auction.

Immediately prior to the conclusion of the Auction, Sellers shall (i) review each Qualified Bid on the basis of financial and contractual terms and factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale and (ii) identify the highest and best offer for the Properties of Sellers at the Auction (the "Successful Bid") and notify all Qualified Bidders at the Auction, prior to its adjournment of the name or names of the Successful Bidder, and the amount and other material terms of the Successful Bid. If Buyer is the Successful Bidder by bidding more than the Purchase Price at the Auction, it shall be permitted, at the Closing under the Agreement to settle as an offset, in full satisfaction of the Successful Bid, an amount equal to (a) the amount of the Successful Bid less (b) the Overbid Fee.

At the Sale Hearing, the Sellers shall present to the Bankruptcy Court for approval the Successful Bid.

## Acceptance of Qualified Bids

Sellers presently intend to sell the Properties of Sellers to the highest and best Qualified Bid received, whether received from Buyer or another Qualified Bidder. Sellers' presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute Sellers' acceptance of the bid, except with respect to the bid of Buyer as reflected in the Agreement (subject to higher and better Qualified Bids and subject to Bankruptcy Court approval). Sellers will have accepted any other bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

## Modifications

Sellers may (a) determine, in their business judgment, which Qualified Bid, if any, is the highest and best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that Sellers have determined is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of Sellers, their estate and their creditors, except that if Buyer makes the only Qualified Bid, or Buyer makes the Successful Bid, the foregoing provisions of this sentence shall be inoperative. At or before the Sale Hearing, the Bankruptcy Court, or subject to the provisions hereof and the provisions of the Agreement, Sellers, may impose such other terms and conditions as it may determine to be in the best interests of Sellers' estates, their creditors and other parties in interest.

Exhibit "B" – Auction and Sale Notice

| IN RE: | § | Case No: 09-33886 |
| | § | |
| PROVIDENT ROYALTIES, LLC, *et al.,* | § | Chapter 11 |
| | § | |
| DEBTORS. | § | (Jointly Administered) |
| | § | |

## NOTICE OF (A) AUCTION FOR THE SALE OF THE BORROWER DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (B) PROCEDURES FOR THE SUBMISSION OF QUALIFYING BIDS AND (C) SALE HEARING

**PLEASE TAKE NOTICE** that, on _____, 2009, the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, entered an order (the "Bid Procedures Order") approving the motion of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for an order (I) Approving Bid Procedures Relating to a Sale of the Debtors' Assets; (II) Scheduling a Hearing to Consider the Sale and Approving the Form and Matter of Notices; (III) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts, (IV) Approving Expense Reimbursement Provision, and (V) Granting Related Relief (the "Bid Procedures Motion")[1].

**PLEASE TAKE FURTHER NOTICE** that, on June 25, 2009, the Debtors filed a Motion for Order (I) Authorizing the Sale of Assets; (II) Approving an Asset Purchase Agreement, Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief (the "Sale Motion").

**PLEASE TAKE FURTHER NOTICE** that the Bid Procedures attached shall govern the Auction (the "Bid Procedures").

**PLEASE TAKE FURTHER NOTICE** that *all interested bidders should carefully read the Bid Procedures.* If there are any inconsistencies between the Bid Procedures and the summary description of its terms and conditions contained in this Notice, the terms of the Bid

---

[1] Unless otherwise defined, all capitalized terms shall have the meaning ascribed to them in the Bid Procedures Motion.

Procedures shall control. Any bidder who follows the Bid Procedures may submit an offer to acquire the Properties (each as defined in the Bid Procedures Motion).

**PLEASE TAKE FURTHER NOTICE** that on **Monday, August 24, 2009 at 10:00 a.m. (CDT)**, the Debtors shall conduct the Auction at the offices of Patton Boggs, LLP, 2001 Ross Avenue, Suite 3000, Dallas, Texas 75201, (214)-758-1500.

**PLEASE TAKE FURTHER NOTICE** that the deadline to submit a Qualifying Bid (as defined in the Bid Procedures) is **Tuesday August 18, 2009 at 12:00 p.m. (CDT).**

**PLEASE TAKE FURTHER NOTICE** that the hearing (the "Sale Hearing") to approve the motion for the Sale(s) of the Assets will be held on **Tuesday, August 25, 2009 at 10:30 a.m. (CDT)** at the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, 1100 Commerce Street, Room 1421, Dallas, Texas 75242.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve their rights in their sole discretion and reasonable business judgment to (a) determine which Qualified Bid, if any, is the highest and best offer received; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that the Debtors have determined is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and their creditors, provided that the Debtors may not reject a Qualified Bid submitted by Sinclair in accordance with the Agreement after it has been submitted to the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that interested parties may obtain copies of the Bid Procedures Motion, the Bid Procedures Order, the Sale Motion, and other related pleadings from the following website: http://chapter11.epiqsystems.com/providentroyaltiesllc, or by requesting these materials from counsel to the Debtors at the following address and telephone number, Patton Boggs LLP, 2001 Ross Avenue, Suite 3000, Dallas, Texas 75201, Attn: Brent McIlwain, (214)-758-1500.

## Exhibit "C" – Cure Amount Notice

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **Case No: 09-33886** |
| | § | |
| **PROVIDENT ROYALTIES, LLC,** *et al.,* | § | **Chapter 11** |
| | § | |
| **DEBTORS.** | § | **(Jointly Administered)** |
| | § | |

## PURCHASED CONTRACT ASSUMPTION AND CURE NOTICE

**PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS WILL BE AFFECTED AS SET FORTH HEREIN.**

**PLEASE TAKE NOTICE:**

1. On June 25, 2009, Provident Royalties, LLC, along with its affiliates and subsidiaries[1] ("Provident" or the "Debtors") filed its *Motion for Order (I) Approving Bid Procedures Relating to a Sale of Assets; (II) Scheduling a Hearing to Consider the Sale and Approving the Form and Matter of Notices; (III) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts, (IV) Approving Expense Reimbursement Provision, and (V) Granting Related Relief* (the "Bid Procedures Motion") (Docket No. ___).

2. On _____, 2009, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an order approving the Bid Procedures Motion (Docket No. __) (the "Bid Procedures Order").

3. As outlined in the Bid Procedures Motion[2] and the Bid Procedures Order, an

---

[1] The Debtors include Provident Royalties, LLC; Provident Operating Company, LLC; Somerset Lease Holdings, Inc.; Somerset Development, Inc.; Provident Energy 1, LP; Provident Resources 1, LP; Provident Energy 2, LP; Provident Energy 3, LP; Shale Royalties II, Inc.; Shale Royalties 3, LLC; Shale Royalties 4, Inc.; Shale Royalties 5, Inc.; Shale Royalties 6, Inc.; Shale Royalties 7, Inc.; Shale Royalties 8, Inc.; Shale Royalties 9, Inc.; Shale Royalties 10, Inc.; Shale Royalties 12, Inc.; Shale Royalties 14, Inc.; Shale Royalties 15, Inc.; Shale Royalties 16, Inc.; Shale Royalties 17, Inc.; Shale Royalties 18, Inc.; Shale Royalties 19, Inc.; Shale Royalties 20, Inc.; Shale Royalties 21, Inc.; and Shale Royalties 22, Inc.

[2] Unless otherwise indicated, all capitalized terms shall have the same meaning ascribed to them in the Bid Procedures Motion.

Auction of the Borrower Debtors' assets free and clear of all liens, claims, encumbrances, and interests will be held on August 24, 2009 at 10:00 a.m. (CDT), (the "Auction") to determine the Successful Bidder.

4. With that sale, and as determined at the Auction, the Debtors may seek to assume or assign executory contracts (the "Purchased Contracts") set forth in the attached <u>Schedule 1</u> on the Closing Date to the Successful Bidder(s).

5. The cure amounts that the Debtors believe are due and owing, within the meaning of section 365 of the Bankruptcy Code, for the Purchased Contracts (the "Cure Amounts"), which are based on the Debtors' books and records, are set forth in the attached <u>Schedule 1</u>. The Cure Amounts include any and all pre-petition amounts outstanding under the Purchased Contracts.

6. On _____, 2009, the Debtors filed and served this notice and the list of Cure Amounts for the Purchased Contracts, and posted them at, <u>http://chapter11.epiqsystems.com/providentroyaltiesllc</u>, the website for Epiq Bankruptcy Solutions, LLC ("Epiq"), the Debtors' official noticing agent. The posting and this notice (the "Assumption and Cure Notice") shall constitute notice of such Cure Amounts.

7. Objections, if any, to the Cure Amounts (the "Cure Objection") must state with specificity what cure the party believes is required and must comply with the Federal Rules of Bankruptcy Procedure, must set forth in writing a description of the basis thereof, must be filed with and submitted to the Bankruptcy Court and served on appropriate parties in accordance with the Bankruptcy Court's General Orders.

(i) counsel for the Debtors, Patton Boggs LLP, 2001 Ross Avenue, Suite 3000, Dallas, Texas 75201, Attn: Robert W. Jones and Brent McIlwain;

(ii) counsel for Sinclair Oil and Gas Company, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3700, Dallas, Texas 75201, Attn: Tonya Ramsey; and

(iii) counsel for the Official Committee of Unsecured Creditors (TBD)

(collectively, the "Cure Objection Notice Parties"); so as to be received <u>by 4:00 p.m. (CDT) on August 14, 2009</u>.

8. If no Cure Objection is timely received, the Cure Amount set forth on <u>Schedule 1</u> shall be controlling notwithstanding anything to the contrary in any unexpired lease or other document.

9. All non-debtor parties to the Purchased Contracts (the "Counterparties") who fail to timely file objections to Cure Amounts <u>by 4:00 p.m. CDT on August 14, 2009</u>, shall be barred from asserting any Cure Objection in the future as to such Purchased Contracts.

10. The Bid Procedures Motion, the Bid Procedures Order and any related documents may be viewed online (a) with a Pacer Account at <u>http://www.txnb.uscourts.gov</u> or (b) for free at

http://chapter11.epiqsystems.com/providentroyaltiesllc. These materials will also be available upon request by contacting counsel for the Debtors at the following address and telephone number: Patton Boggs LLP, 2001 Ross Avenue, Suite 3000, Dallas, Texas 75201, Attn: Brent McIlwain, (214)-758-1500.

11.    For purposes of adequate assurance, the Counterparties may obtain information regarding such by contacting counsel for the Debtors.

12.    After the Auction, the Debtors will identify the Purchased Contracts that they wish to assume and assign to the Successful Bidder as of the Closing Date (the "Closing Date Purchased Contracts"), and the Debtors will notify the affected Counterparties by facsimile or e-mail, to the extent available, or by U.S. Mail, and shall post this list at http://chapter11.epiqsystems.com/providentroyaltiesllc.

13.    A final hearing to approve the sale of the Properties pursuant to the Asset Purchase Agreement shall be held on <u>August 25, at 10:30 a.m. (CDT)</u> in the courtroom of the Honorable Harlin D. Hale, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Northern District of Texas, 1100 Commerce Street, Room 1421, Dallas, Texas, 75242, or as soon thereafter as counsel may be heard. Furthermore, any unresolved Cure Amount or adequate-assurance disputes arising out of objections by the Counterparties shall be resolved at the Sale Hearing. The Debtors reserve the right to delegate any agreement from the list of Purchased Contracts at any time prior to entry of an order assuming and assigning such agreement.

14.    After the assumption and assignment of your Purchased Contract, the Debtors and their bankruptcy estates will be relieved on any liability to you that accrued or arose before the Closing Date, and the Debtors will be relieved of any liability to you on your Purchased Contract that arises after the Closing Date. Further, your Purchased Contract will be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder in accordance with its terms, notwithstanding any provision in any such Purchased Contract that prohibits, restricts, or conditions such assignment or transfer.