

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Harlin DeWayne Hale*

**Signed August 26, 2009**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 09-33886 |
| | : | |
| **PROVIDENT ROYALTIES, L.L.C.,** *et al.* | : | **JOINTLY ADMINISTERED** |
| | : | |
| DEBTORS. | : | Chapter 11 |
| | : | |

## ORDER (I) AUTHORIZING THE SALE OF ASSETS; (II) APPROVING AN ASSET PURCHASE AGREEMENT SUBJECT TO HIGHER AND BETTER OFFERS; (III) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF #49</u>

On August 25, 2009, this Court considered the *Motion for Order Pursuant to 11 U.S.C. §§ 105(a), 363, and 365, and Fed. R. Bankr. P. 2002, 6004, and 9007 (I) Authorizing the Sale of Assets; (II) Approving an Asset Purchase Agreement Subject to Higher and Better Offers; (III) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* (the "<u>Sale Motion</u>") [Docket No. 49] of Provident Royalties, L.L.C., a Delaware limited liability company ("<u>Provident</u>"), Somerset Lease Holdings, Inc., a Texas

corporation ("Somerset"), Shale Royalties II, Inc., a Delaware corporation ("SR2"), Shale Royalties 3, L.L.C., a Texas limited liability company ("SR3"), Shale Royalties 4, Inc., a Delaware corporation ("SR4"), Provident Energy 1, LP, a Texas limited partnership ("PE1"), and Provident Resources 1, L.P., a Texas limited partnership ("PR1," and together with Provident, Somerset, SR2, SR3, SR4, and PE1, each a "Borrower Debtor", and collectively, the "Borrower Debtors").

Pursuant to Sections 105, 363, and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Sale Motion sought, *inter alia*: (a) authorization for the sale of the Properties[1] (the "Transferred Assets") of the Borrower Debtors free and clear of all claims, liens, encumbrances, and other interests (with the exceptions set forth in that certain Agreement for Purchase and Sale, dated as of June 22, 2009, attached hereto as **Exhibit "A"** (filed with the Court at **Docket No. 230**), or as modified or amended by the parties, and incorporated herein (the "Agreement")), by and between the Borrower Debtors and Sinclair Oil & Gas Company, a Wyoming corporation (the "Buyer"), and (b) authorization for the Borrower Debtors' assumption and assignment of all of the Purchased Contracts, with the Buyer satisfying the Cure Costs in respect of the Purchased Contracts, all as more fully described in the Sale Motion and provided for herein.

The Bankruptcy Court, having subject matter jurisdiction to consider the Sale Motion and the relief requested pursuant to 28 U.S.C. § 1334; and consideration of the Sale Motion and the relief requested being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due notice of the Sale

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Sale Motion.

Motion having been provided; and it appearing that no other notice need be provided; and a hearing having been held on August 25, 2009, to consider the relief requested in the Sale Motion (the "Sale Hearing"); and upon the proceedings at the Sale Hearing; and it appearing that granting the relief is in the best interests of the Debtors, their estates and creditors; and any objections (the "Objections") to the Sale Motion having been resolved, withdrawn, or otherwise overruled by this Sale Order; after due deliberation, and sufficient cause appearing therefor, the Bankruptcy Court makes the following findings of fact and conclusions of law.[2]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    This Bankruptcy Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this Bankruptcy Court under 28 U.S.C. §§ 1408 and 1409.

B.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), there is no stay pursuant to Bankruptcy Rule 6004(h) or 6006(d) and this Sale Order shall be effective and enforceable immediately upon entry. To the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Bankruptcy Court expressly finds that cause exists not to delay the implementation of this Sale Order.

C.    The statutory predicates for the relief sought in the Sale Motion are Bankruptcy Code §§ 105(a), 363(b), (f), (m), and (n), and 365, and Bankruptcy Rules 2002, 6004, 6006, and 9014.

D.    On July 19, 2009, the Borrower Debtors filed the Sale Motion in which they

---

[2] In accordance with Bankruptcy Rule 7052, when appropriate, all findings of fact shall be construed as conclusions of law, and all conclusions of law shall be construed as findings of fact.

sought, among other things, entry of orders (i) approving the Bidding Procedures and the Overbid Fee; (ii) scheduling the final hearing for approval of the Agreement and the transactions contemplated thereby; (iii) setting deadlines for the filing of Objections and responses to the relief requested; (iv) establishing procedures for the form, manner, and sufficiency of notice to be given by the Borrower Debtors; and (v) the entry of this sale order (the "<u>Sale Order</u>") approving the sale of the Transferred Assets and the assumption and assignment of the Purchased Contracts to the Buyer free and clear of all claims, liens, encumbrances, and other interests in the Transferred Assets (other than the Permitted Encumbrances and Assumed Obligations, collectively referred to herein as the "<u>Permitted Liens</u>").

E.      On July 30, 2009, after appropriate notice and hearing, this Bankruptcy Court entered the *Order (I) Approving Bid Procedures Relating to Sale of Assets; (II) Scheduling a Hearing to Consider the Sale and Approving the Form and Matter of Invoices; (III) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts; and (IV) Granting Related Relief* (the "<u>Sale Procedure Order</u>") [Docket No. 145]. The Sale Procedure Order approved, among other things, the Bidding Procedures.

F.      Notice of the Sale Motion, the Sale Hearing, and the relief requested in the Sale Procedure Order having been given to (i) the Office of the United States Trustee; (ii) counsel to the Buyer; (iii) counsel to the Committees; (iv) counsel to the Borrower Debtors' prepetition secured lenders; (v) all known creditors of the Debtors; (vi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (vii) all persons or entities that have, or may assert a lien on or security interest in all or any portion of the Properties known by the Borrower Debtors; (viii) the known counterparties to each of the Purchased Contracts; (ix) all parties known to the Borrower Debtors as having expressed a bona fide interest in acquiring all or a material portion

of the Properties; (x) the Securities and Exchange Commission; and (xi) all taxing authorities having jurisdiction over any of the Properties, including the Internal Revenue Service, the Bankruptcy Court finds the scope and manner of service proper, timely, adequate, and sufficient, in accordance with Bankruptcy Code §§ 105(a) and 363, and Bankruptcy Rules 2002, 2002(i), 6004, 6007, and 9014, and in compliance with the Sale Procedure Order. No further notice of the Sale Motion or the Sale Hearing is or shall be required. The Sale Hearing commenced and concluded on August 25, 2009, and no further notice of the Sale Hearing was necessary.

G.      A reasonable opportunity to object or to be heard regarding the relief requested in the Sale Motion has been afforded to all creditors and parties in interest.

H.      As demonstrated by the evidence in support of the Sale Motion, the Borrower Debtors and their financial advisors have further marketed the Transferred Assets and conducted the sale process in compliance with the Sale Procedure Order.

I.      The Borrower Debtors did not receive any Qualified Bids and therefore, in accordance with the Sale Procedure Order, no Auction was held. The Buyer's purchase price, as provided in the Agreement, is the highest and best bid.

J.      The Borrower Debtors have full power and authority to execute the Agreement and all other documents referenced in or contemplated by the Agreement or necessary or appropriate to effectuate the sale of the Transferred Assets as contemplated under the Agreement.

K.      All actions contemplated by the Agreement have been duly and validly authorized by all necessary action of the Borrower Debtors and the Borrower Debtors have the full power and authority to consummate the transactions contemplated by the Agreement. No further consents or approvals, other than entry of this Sale Order, are required for the Borrower Debtors

or the Buyer to consummate the transactions contemplated in the Agreement.

L.     Approval of the Agreement and consummation of the transactions contemplated therein are at this time in the best interests of the Borrower Debtors, the Borrower Debtors' estates, their creditors, and interest holders.

M.     The Borrower Debtors have demonstrated both (i) good, sufficient, and sound business purpose and justification for the sale of the Transferred Assets and (ii) compelling circumstances for approval of the sale transactions contemplated in the Agreement pursuant to Bankruptcy Code §§ 363(b) and (f).

N.     The Agreement was negotiated, proposed, and entered into by the Borrower Debtors and the Buyer in good faith, without collusion, and was the result of arm's-length bargaining with the parties represented by independent counsel.  The Agreement constitutes fair value for the Transferred Assets.  Neither the Borrower Debtors nor the Buyer have engaged in any conduct that would cause or permit the Agreement to be avoided under Bankruptcy Code § 363(n).  The Buyer is not an "insider" of any of the Borrower Debtors, as that term is defined in Bankruptcy Code § 101.

O.     The Buyer is a good faith purchaser of the Transferred Assets under Bankruptcy Code § 363(m) and, as such, is entitled to all of the protections afforded thereby.  The Buyer has acted in good faith within the meaning of Bankruptcy Code § 363(m) in closing the transactions contemplated by the Agreement and will rely on entry of this Sale Order and this good faith determination in closing such transactions.

P.     The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

Q. The consideration provided by the Buyer for the Transferred Assets (i) is fair and reasonable, (ii) is the highest and best offer for the Transferred Assets after a thorough marketing process, and (iii) constitutes reasonably equivalent value, fair saleable value, and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

R. The sale of the Transferred Assets outside a plan of reorganization pursuant to the Agreement is reasonable and appropriate under the circumstances and does not impermissibly dictate the terms of any future plan of reorganization or liquidation that may be filed by the Debtors, individually or collectively, and is not a *sub rosa* plan.

S. The Borrower Debtors are authorized to sell the Transferred Assets free and clear of all claims, liens, encumbrances, and other interests (other than Permitted Liens) because one or more of the standards set forth in Bankruptcy Code § 363(f) have been satisfied with respect to each such interest. The transfer of the Transferred Assets to the Buyer will be a legal, valid, and effective transfer of the Transferred Assets, and will vest the Buyer with all rights, title, and interest in and to the Transferred Assets free and clear of all claims, liens, encumbrances, and other interests (other than Permitted Liens) which have, or could have, been asserted by the Borrower Debtors or their creditors.

T. Any objection of a secured creditor or other holder of a claim, lien, encumbrance, or other interest that did timely object to the sale of the Transferred Assets and did not withdraw the Objection is overruled as one or more of the other subsections of Bankruptcy Code § 363(f) is met with respect to such party.

U. The Buyer is solely responsible for payment of the Cure Costs (in the amounts as provided herein) to each of the counterparties to each of the Purchased Contracts as set forth in

**Exhibit "B"** to this Sale Order (filed with the Court at **Docket No. 230**) and such payments are in full and final satisfaction of all obligations and constitute full compensation to the counterparties for any pecuniary losses under such contracts or leases pursuant to Bankruptcy Code § 365(b)(1). Such Cure Costs shall be paid by the Buyer as follows: (1) with respect to the Cure Costs to XTO Energy, Inc., Sedna Energy, Inc., Xanadu Exploration Company, Devon Energy Corporation, and Devon Energy Production Company, L.P., by allowing such counterparties to offset the Cure Costs from (i) any revenue, refunds, or other amounts held by the counterparty that are otherwise payable to the Buyer attributable to any of the interests conveyed by the Agreement, and/or (ii) any future amounts otherwise payable to the Buyer attributable to any of the interests conveyed by the Agreement (the "Allowed Cure Offset", with such Allowed Cure Offset being allowed only up to the amounts listed on **Exhibit "B"** (filed with the Court at **Docket No. 230**)); (2) with respect to the Cure Costs to St. Mary's Land and Exploration Company, by engaging in a good faith accounting to determine the accurate Cure Costs, followed by a one-time cash payment in full satisfaction of such Cure Costs (the "Cure Payment"); (3) with respect to the Cure Costs to Continental Resources, Inc. and Newfield Exploration Mid-Continent, Inc., by engaging in a good faith accounting to determine the accurate Cure Costs associated with each and negotiating a settlement in respect thereto (the "Cure Cost Accounting" and, together with the Allowed Cure Offset and the Cure Payment, the "Cure Process"); and (4) with respect to the Cure Costs to BP America Production Company ("BP"), by engaging in a Cure Cost Accounting and either (i) providing a cash payment from the Buyer to BP in full satisfaction of the Cure Costs within fifteen (15) business days after the parties reach an agreement of the Cure Costs, or (ii) allowing BP to offset the Cure Costs through the Allowed Cure Offset. Nothing in this paragraph shall be construed as limiting or affecting

the contractual or statutory rights of the counterparties with respect to the collection of the Buyer's share of future operating expenses attributable to any of the interests conveyed by the Agreement under any well election letters or pooling order. The amount of any such settlement of a Cure Cost shall be filed with this Court and served on counsel for the Trustee, the Official Committee of Unsecured Creditors and the Official Investors Committee within three (3) business days after the settlement is finalized between the Buyer and the applicable counterparty to the Purchased Contract. If a settlement cannot be reached, this Court retains jurisdiction to resolve the amount of any such Cure Cost.

V.      The Buyer has demonstrated adequate assurance of future performance of the Purchased Contracts under this Sale Order.

W.      The Borrower Debtors have never disclosed a policy to an individual prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the Borrower Debtors, the Borrower Debtors have never had such a policy, and no such policy was in effect on the Petition Date of the Borrower Debtors' Bankruptcy Cases. Thus, there is no requirement that the sale of the Transferred Assets contemplated hereunder be consistent with any privacy policy or that a consumer privacy ombudsman be appointed in connection with same under Bankruptcy Code § 363(b)(1).

X.      Closing of the transactions contemplated in the Agreement are conditioned upon entry of a order approving a settlement between Buyer and the Borrower Debtors (the "Final Settlement Order") by August 27, 2009. Nothing contained in this Sale Order shall impair the right of Buyer to terminate the Agreement or determine not to close if any condition precedent is not met, including entry of the Final Settlement Order.

Y.    Due to the deadlines contained in the Agreement, there is no legal or equitable reason to delay the transactions contemplated in the Agreement if the parties so choose.  As a result, cause exists not to apply the automatic ten (10) day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

**BASED ON THE FOREGOING FINDINGS, GOOD CAUSE EXISTS FOR ENTRY OF THE FOLLOWING ORDER.  IT IS THEREFORE ORDERED:**

1.    The notice of the Sale Motion and the notice of the Sale Hearing are approved as being fair, reasonable, and adequate under the circumstances of the Bankruptcy Cases, and any additional notice as may otherwise be required under state and federal law is hereby deemed satisfied.

2.    The Sale Motion is granted as set forth herein and the sale of the Transferred Assets and assignment of the Purchased Contracts to the Buyer are hereby authorized as set forth in this Sale Order.

3.    All Objections to the Sale Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

4.    The Buyer has complied with the Sale Procedure Order and is the Successful Bidder for the Transferred Assets on the terms and conditions set forth in the Agreement.

**Approval of the Agreement**

5.    The Agreement, all exhibits and schedules thereto, and all of the terms and conditions thereof are hereby approved.

6.    Pursuant to Bankruptcy Code §§ 363(b) and (f), Dennis L. Roossien, Jr., the Chapter 11 Trustee of the Debtors, is authorized and directed on behalf of the Borrower Debtors to consummate the sale of the Transferred Assets, pursuant to and in accordance with the terms

and conditions of the Agreement, including, without limitation, to convey to the Buyer the Transferred Assets and assume and assign the Purchased Contracts.

7. Without need for any additional Bankruptcy Court order, the Debtors and their officers, directors, employees, and agents are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be reasonably requested by the Buyer or otherwise required under the Agreement. The Agreement is a binding obligation on the Borrower Debtors and any other Debtor signatory thereto.

8. The consideration provided by the Buyer for the Transferred Assets under the Agreement constitutes reasonably equivalent value, fair saleable value, and fair consideration under the Bankruptcy Code and any other applicable state, federal or international law.

### Transfer of the Transferred Assets

9. Pursuant to Bankruptcy Code §§ 105(a), 363(b) and 363(f), the transfers of the Transferred Assets to the Buyer pursuant to the Agreement shall vest the Buyer with all rights, title, and interest in and to the Transferred Assets effective as of the time of the transfers under the Agreement and shall be free and clear of all claims, liens, encumbrances, and other interests (other than Permitted Liens), which have, or could have, been asserted by the Borrower Debtors or their creditors in connection with the Bankruptcy Cases.

10. This Sale Order shall be the Bankruptcy Court's determination that, on the Closing Date, all claims, liens, encumbrances, and other interests (other than the Permitted Liens) in and to the Transferred Assets being conveyed as described in the Agreement have been unconditionally released, discharged, and terminated from the Transferred Assets.

11.     The Buyer shall have no liability or responsibility for any liability or other obligation of the Borrower Debtors arising under or related to the Transferred Assets other than as expressly set forth in the Agreement or this Order and in no event shall the Buyer have any liability or responsibility for any liabilities of the Borrower Debtors (including any unrecorded liabilities of the Borrower Debtors) other than Permitted Liens.  Without limiting the effect or scope of the foregoing, the transfer of the Transferred Assets from the Borrower Debtors to the Buyer does not and will not subject the Buyer or its affiliates, successors or assigns, or their respective properties (including the Transferred Assets) to any liability for claims (as that term is defined in Bankruptcy Code § 101(5)) against the Debtors or the Transferred Assets by reason of such transfer under the laws of the United States or any state, territory, or possession thereof applicable to such transactions.  Neither the Buyer nor its affiliates, successors, or assigns shall be deemed, as a result of actions taken in connection with the purchase of the Transferred Assets: (i) to be a successor to the Debtors or (ii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  Neither the Buyer nor its affiliates, successors, or assigns is acquiring or assuming any liability, warranty, or other obligation of the Debtors, including, without limitation, any tax incurred but unpaid by the Debtors prior to the Closing (except as expressly set forth in the Agreement), any fine or penalty relating to a tax, or any addition to a tax, whether or not previously assessed, fixed, or audited, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction (except as otherwise expressly provided in the Agreement).  On and after the Closing, all persons or entities holding claims, liens, encumbrances, and other interests of any kind and nature with respect to the Transferred Assets (other than Permitted Liens) shall be barred from asserting such claims, liens, encumbrances, and other interests against the Buyer, its

successors or assigns, or the Transferred Assets. Any provision in any agreement that prohibits, restricts, or conditions any assignment or transfer, or that terminates or modifies, or permits a party other than the Borrower Debtors to terminate or modify any agreement on account of such assignment or transfer, including, without limitation, all preferential rights or rights of first refusal of any kind or nature whatsoever is considered an encumbrance and is removed pursuant to Bankruptcy Code § 363.

12.     On and after the Closing, the Borrower Debtors shall have no liability or responsibility for any Permitted Liens. Further, on and after the Closing, Buyer shall assume and have all liability and responsibility for the Assumed Obligations.

13.     The process set forth in the Agreement and other related documents for obtaining all approvals, consents (including assignments of any permits and rights of way), certificates, waivers, and other authorizations required to be obtained from, or filings or other notices required to be made with or to, any Governmental Authorities having jurisdiction over any of the Transferred Assets in order to consummate the transactions contemplated by the Agreement and the other related transaction documents and the transfer of such Transferred Assets to the Buyer upon the receipt of such approvals is hereby approved pursuant to Bankruptcy Code §§ 105, 363 and 365.

### Assumption and Assignment of Purchased Contracts to the Buyer

14.     On the Closing Date, the Borrower Debtors are hereby authorized and directed, pursuant to Bankruptcy Code §§ 363 and 365, to assume, as debtors in possession, and then assign, to Buyer, the Purchased Contracts. The Buyer shall pay to each of the counterparties to the Purchased Contracts the Cure Costs as set forth in **Exhibit "B"** (filed with the Court at **Docket No. 230**) through the Cure Process which Cure Process shall be in full and final

satisfaction of all obligations and as full compensation to the counterparties for any pecuniary losses under such contracts or leases pursuant to Bankruptcy Code §§ 365(a), (b), (c), (f), and (k). Following the Effective Date, the Borrower Debtors shall have no further liability for, and shall be released from, any obligation arising from or in connection with the Purchased Contracts.

15. Prior to the Petition Date, one or more of the Debtors transferred funds to Newfield Exploration Mid-Continent, Inc. ("Newfield") relating to obligations arising in connection with Purchased Contracts to which Newfield is a party (the "Newfield Assigned Agreements"), the list of which is attached hereto as **Exhibit "C"** (filed with the Court at **Docket No. 230**). Pursuant to the terms of the Agreement, Sinclair is acquiring all interests of the Borrower Debtors in and to the Newfield Assigned Agreements[3] including, without limitation, "all accounts receivables in respect of (i) Hydrocarbons produced from the Oil and Gas Properties and sold prior to the Effective Date" as well as all rights to all Hydrocarbons produced from the Oil and Gas Properties on or after the Effective Date (the "Newfield Production Proceeds") and "amounts to be refunded to a Seller in respect of funds previously advanced to a third party," (the "Newfield Refund Obligations") subject to the obligation of Sinclair to pay "all Liabilities of each Seller for all cure, compensation and reinstatement costs or expenses of or relating to the assumption and assignment of the Purchased Contracts" (the "Newfield Cure Obligations"). Newfield and Sinclair agree that the Newfield Refund Obligations may be used to satisfy through offset (a) the Newfield Cure Obligations and (b) any obligations owing by

---

[3] There are separate and additional Newfield Agreements which are not Purchased Contracts and which are not being assigned to Sinclair (the "Non-Purchased Newfield Agreements"). Nothing herein shall affect the rights of Newfield and/or of any of the Debtors in and to Newfield Production Proceeds, Newfield Refund Obligations or Newfield Cure Obligations in connection with the Non-Purchased Newfield Agreements. Newfield and the Debtors are endeavoring to reconcile the amounts which may be owing to or by Newfield in connection with the Non-Purchased Newfield Agreements.

Sinclair (or any affiliates of Sinclair) to Newfield in connection with any of the properties which are the subject of the Newfield Assigned Agreements. After such setoffs, to the extent that there are any amounts owing or due on account of the Newfield Cure Obligations, Sinclair and Newfield agree that Newfield may also offset such amounts against the Newfield Production Proceeds (whether produced prior to or after the Effective Date) attributable to the interests of one or more Borrower Debtor or Sinclair until the Newfield Cure Obligations are paid in full. Newfield agrees that except as provided herein, the Newfield Cure Obligations are non-recourse as to Sinclair. Sinclair agrees that nothing herein shall affect the rights of Newfield to seek payment in full from Sinclair, with recourse to the full extent permitted by applicable law, for all amounts due under the Newfield Assigned Agreements after the Effective Date. Newfield and Sinclair agree that following the Closing Date the Debtors shall have no further liability for, and shall be released from any obligation arising from or in connection with the Newfield Assigned Agreements.

16. A reconciliation of the amount of the Newfield Refund Obligations related to the Newfield Assigned Agreements has not been completed. All parties recognize that upon final reconciliation, it may be determined that the amount of the Newfield Refund Obligations exceeded the Newfield Cure Obligations. Notwithstanding, the Newfield Refund Obligations and Newfield Production Proceeds are transferred to Sinclair free and clear of any and all liens, claims, interests, and encumbrances of the Debtors and all parties acting by or through a Debtor, in whole or in part. The Debtors specifically release all claims or causes of action which may exist or could be asserted solely in connection with the Newfield Assigned Agreements including, without limitation, (i) any claims that funds were improperly paid to Newfield by any one or more of the Debtors, (ii) that the Debtors are entitled to avoid any one or more or any

portion of the transfers to Newfield including, without limitation, under 11 U.S.C. §§ 547, 548, 549 or 550, or any other state or federal statute which could form the basis for avoidance of any transfer to Newfield or (iii) that any other claim or cause of action exists against Newfield in connection with the Newfield Assigned Agreements.

17.     On the Closing Date, the Purchased Contracts will be assigned to the Buyer, and will remain valid and binding and in full force and effect in accordance with their respective terms for the benefit of the Buyer, notwithstanding any provision in such contracts or leases, or under applicable Law (including those described in Bankruptcy Code §§ 365(b)(2), (f)(1), and (3)), that prohibits, restricts, or conditions such assignment or transfer, or that terminates or modifies, or permits a party other than the Borrower Debtors to terminate or modify such Purchased Contracts on account of such assignment or transfer, including, without limitation, all preferential rights or rights of first refusal of any kind or nature whatsoever, pursuant to Bankruptcy Code § 365(f).

18.     The Agreement, all Purchased Contracts that are assigned to the Buyer, and such other contracts entered into by any of the Borrower Debtors as are necessary to effectuate the transactions contemplated in the Agreement, are enforceable pursuant to their terms and applicable law.  The failure of the Borrower Debtors to enforce, at any time prior to the Effective Date of the Agreement, one or more terms or conditions of any Purchased Contract shall not constitute a waiver of such terms or conditions, or of the Buyer's rights to enforce every term and condition, of the Purchased Contracts.

19.     The Borrower Debtors are further authorized and directed to take any and all actions necessary or appropriate to consummate the proposed assignment of the Purchased Contracts to the Buyer, as specified in the Sale Motion and in the Agreement.  The Buyer shall

have no liability for any defaults under the Purchased Contracts (except for Cure Costs provided herein and as otherwise specified in the Agreement) that occurred prior to the assignment of the Purchased Contracts, it being specifically understood that all defaults or other obligations of the Borrower Debtors under the Purchased Contracts arising or accruing prior to the Effective Date of the Agreement and all compensation for damages with respect to Purchased Contracts assumed and assigned hereunder shall be cured pursuant to and only in accordance with Section U and paragraphs 15 and 16 hereof. Pursuant to Bankruptcy Code § 365(k), the Borrower Debtors are relieved of any liability for any claims of any kind arising from any of the Purchased Contracts assigned to the Buyer, and any counterparty to a Purchased Contract is hereby forever barred and estopped from asserting against the Borrower Debtors, their estates, the Buyer, or the property of any of them, any default existing prior to the Effective Date of the Agreement.

### Additional Provisions

20.     On the Closing Date, each of the Borrower Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its interest in the Transferred Assets, if any, as such interests may have been recorded or may otherwise exist.

21.     Regardless of whether the Borrower Debtors' creditors execute the releases set forth in the above paragraph, this Sale Order (a) shall be effective as a determination that, on the Closing Date, all claims, liens, encumbrances, and other interests (other than Permitted Liens) of any kind or nature whatsoever existing with respect to the Transferred Assets have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Transferred Assets.

22.     Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing and/or recording, and approve as necessary, any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

23.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing claims or interests with respect to the Borrower Debtors or the Transferred Assets shall not have delivered to the Borrower Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Borrower Debtors or the Transferred Assets or otherwise, then (a) the Borrower Debtors are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Transferred Assets and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all claims, liens, encumbrances, and other interests (other than Permitted Liens) in the Transferred Assets of any kind or nature whatsoever.

24.     All entities that presently are in possession of some or all the Transferred Assets are hereby directed to surrender possession of the Transferred Assets to the Buyer at the Closing.

25.     This Bankruptcy Court retains jurisdiction to (i) enforce and implement the terms and provisions of the Agreement (including any breach of the Agreement), all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects and (ii) determine as a core proceeding (by motion and without necessity for an adversary proceeding if the Bankruptcy Court deems appropriate) any proceeding, dispute, or controversy arising out of or related to this Sale Order and the Sale Hearing.

26.     The transactions contemplated by the Agreement are undertaken by the Buyer in good faith, as that term is used in Bankruptcy Code § 363(m).  Accordingly, the reversal or modification of the authorization provided herein to consummate the transactions contemplated herein shall not affect the validity of the sale of the Transferred Assets to the Buyer, unless such authorization is duly stayed.  The Buyer is a purchaser in good faith of the Transferred Assets and, upon the occurrence of the Closing, is entitled to all of the protections afforded by Bankruptcy Code § 363(m).

27.     Nothing contained in any chapter 11 plan confirmed in these Bankruptcy Cases (or any order of this Bankruptcy Court confirming such plan) shall conflict with or derogate from the provisions of the Agreement or the terms of this Sale Order, provided that the retention of jurisdiction under this Sale Order following confirmation of such plan shall not be broader than jurisdiction permitted to be retained under an order of confirmation.

28.     The terms and conditions of the Agreement and this Sale Order shall be binding in all respects and shall inure to the benefit of the Borrower Debtors, their respective bankruptcy

estates and their creditors and interest holders, successors, and assigns, and the Buyer, its respective affiliates, successors and assigns notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall binding.

29.     The Agreement and the transactions and instruments contemplated thereby shall be specifically performable and enforceable against and binding upon, and not subject to rejection or avoidance by, the Borrower Debtors, and their respective affiliates, successors, and assigns, or any chapter 7 or chapter 11 trustee of the Borrower Debtors and their estates, or any Person acting on the Borrower Debtors' behalf.

30.     The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Agreement be authorized and approved in its entirety.

31.     The Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Bankruptcy Court, provided that such modification, amendment, or supplement shall not have a material adverse effect on the Borrower Debtors' bankruptcy estates.

32.     The provisions of this Sale Order are non-severable and mutually dependent.

33.     Headings are included in this Sale Order for ease of reference only.

34.     In the event of any inconsistency between the terms and provisions of this Sale Order and the Agreement, the terms and provisions of this Sale Order shall control. To the extent this Sale Order does not include any provision contained in both the Sale Motion and the

Agreement and where such provision in the Sale Motion and the Agreement is inconsistent, the Agreement shall govern.

35.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), there is no stay pursuant to Bankruptcy Rule 6004(h) or 6006(d) and this Sale Order shall be effective and enforceable immediately upon entry.

36.     The Borrower Debtors shall file and serve a notice with this Court of the Effective Date of the Agreement, which notice shall be filed not later than three (3) business days following the occurrence of such Effective Date of the Agreement.

37.     The Bankruptcy Court reserves the right to make additional findings of fact and conclusions of law.

# EXHIBIT "A" – AGREEMENT


## SEE DOCKET NUMBER 230

# EXHIBIT "B" – CURE COSTS

**SEE DOCKET NUMBER 230**

# EXHIBIT "C" – NEWFIELD ASSIGNED AGREEMENTS

## SEE DOCKET NUMBER 230