Joseph J. Wielebinski
Texas Bar No. 21432400
Kevin M. Lippman
Texas Bar No. 00784479
Kathleen M. Patrick
Texas Bar No. 24037243
Lee J. Pannier
Texas Bar No. 24066705
**MUNSCH HARDT KOPF & HARR, P.C**.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone:     (214) 855-7500
Facsimile:     (214) 855-7584

***ATTORNEYS FOR DENNIS L. ROOSSIEN, JR.,***
***CHAPTER 11 TRUSTEE***

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | CASE NO. 09-33886 |
| | § | |
| PROVIDENT ROYALTIES, LLC, *et al.*, | § | Chapter 11 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | Hearing Date:  January 19, 2010, |
| | § | at 2:30 p.m. prevailing Central Time |
| | § | |

**CHAPTER 11 TRUSTEE'S AMENDED MOTION FOR ORDER: (I) AUTHORIZING
SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND
PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO
<u>CONDUCT DE MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS</u>**

TO THE HONORABLE HARLIN D. HALE, U.S. BANKRUPTCY JUDGE:

Dennis L. Roossien, Jr. (the "<u>Trustee</u>"), the duly-appointed Chapter 11 trustee for

Provident Royalties, LLC and its affiliated debtors (collectively, the "<u>Debtors</u>"), files his

*Amended Motion for Order: (I) Authorizing Sale of Leasehold Interests; (II) Approving Amended*

---

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II)
APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III)
APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS
SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 1**

*Model PSA and PSA Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Authorizing the Trustee to Conduct De Minimis Sales of Leasehold and Mineral Interests* (the "Amended Motion").  In support of the Amended Motion, the Trustee respectfully states as follows:

## I.      JURISDICTION AND VENUE

1.      This Court (the "Bankruptcy Court") has jurisdiction to consider the Amended Motion pursuant to 28 U.S.C. §§ 157(a) and 1334.

2.      The Amended Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

## II.      BACKGROUND

### A.      The Bankruptcy Case

4.      On June 22, 2009 (the "Petition Date"), the Debtors[1] filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby initiating the above-referenced cases with the Bankruptcy Court (collectively, the "Bankruptcy Cases").

---

[1] The Debtors include the following:  Provident Royalties, LLC, Case No. 09-33886; Provident Operating Company, LLC, Case No. 09-33893; Somerset Lease Holdings, Inc., Case No. 09-33892; Somerset Development, Inc., Case No. 09-33912; Provident Energy 1, LP, Case No. 09-33888; Provident Resources 1, LP, Case No. 09-33887; Provident Energy 2, LP, Case No. 09-33894; Provident Energy 3, LP, Case No. 09-33899; Shale Royalties II, Inc., Case No. 09-33889; Shale Royalties 3, LLC, Case No. 09-33891; Shale Royalties 4, Inc., Case No. 09-33890; Shale Royalties 5, Inc., Case No. 09-33895; Shale Royalties 6, Inc., Case No. 09-33896; Shale Royalties 7, Inc., Case No. 09-33898; Shale Royalties 8, Inc., Case No. 09-33900; Shale Royalties 9, Inc., Case No. 09-33902; Shale Royalties 10, Inc., Case No. 09-33901; Shale Royalties 12, Inc., Case No. 09-33903; Shale Royalties 14, Inc., Case No. 09-33905; Shale Royalties 15, Inc., Case No. 09-33904; Shale Royalties 16, Inc., Case No. 09-33906; Shale Royalties 17, Inc., Case No. 09-33913; Shale Royalties 18, Inc., Case No. 09-33907; Shale Royalties 19, Inc., Case No. 09-

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 2**

5.      On July 1, 2009, the Securities and Exchange Commission (the "SEC") filed its
*Complaint*[2] (the "SEC Complaint") with the United States District Court for the Northern
District of Texas (the "District Court") against the Defendants and the Relief Defendants (as
defined in the Complaint).  The SEC Complaint sought, among other things, the appointment of
a receiver over the property and the estates (the "Receivership Estates") of certain of the
Defendants and the Relief Defendants:  Provident Royalties, LLC, Provident Asset Management,
LLC, Provident Energy 1, LP, Provident Resources 1, LP, Provident Energy 2, LP, Provident
Energy 3, LP, Shale Royalties II, Inc., Shale Royalties 3, LLC, Shale Royalties 4, Inc., Shale
Royalties 5, Inc., Shale Royalties 6, Inc., Shale Royalties 7, Inc., Shale Royalties 8, Inc., Shale
Royalties 9, Inc., Shale Royalties 10, Inc., Shale Royalties 12, Inc., Shale Royalties 14, Inc.,
Shale Royalties 15, Inc., Shale Royalties 16, Inc., Shale Royalties 17, Inc., Shale Royalties 18,
Inc., Shale Royalties 19, Inc., Shale Royalties 20, Inc., Provident Operating Company, LLC,
Somerset Lease Holdings, Inc., Somerset Development, Inc., Shale Royalties 21, Inc., and Shale
Royalties 22, Inc. (collectively, the "Receivership Defendants").  The Receivership Defendants
are, for all practical purposes, the Debtors in the Bankruptcy Cases and, therefore, the
Receivership Estates are also, for all practical purposes, the Debtors' bankruptcy estates (the
"Estates").

6.      The following day, the Honorable Sam A. Lindsay granted the SEC the relief it
requested in the SEC Complaint and entered the Order Granting Temporary Restraining Order,

---

33908; Shale Royalties 20, Inc., Case No. 09-33910; Shale Royalties 21, Inc., Case No. 09-33909; and Shale
Royalties 22, Inc., Case No. 09-33911.
[2] The "Complaint" is that certain pleading filed by the SEC with the District Court, thereby commencing Civil Case
No. 3-09CV1238-L.  The Complaint is supported by the SEC's *Memorandum of Law in Support of Motion for Ex
Parte Order Freezing Assets and Other Emergency Relief, in Support of Motion to Appoint Receiver and Order to
Show Cause Why a Preliminary Injunction Should Not Issue*, which the SEC filed the same day as the Complaint.

Appointing Receiver, Freezing Assets, Staying Litigation, Prohibiting the Destruction of Documents and Accelerating Discovery (the "District Court Order"), thereby, in effect, appointing the Trustee as the receiver of the Debtors. Thereafter, the Trustee, represented by Munsch Hardt Kopf & Harr, P.C., proceeded to act as the trustee of the Estates.

7.      On July 8, 2009, a committee formation meeting was conducted by the Office of the United States Trustee and, pursuant to that meeting, the Official Committee of Unsecured Creditors (the "Creditors Committee") was formed in the Bankruptcy Cases.

8.      On July 17, 2009, the Bankruptcy Court entered the *Stipulation Approving Protocol for the Receiver to Serve as Chapter 11 Trustee in the Bankruptcy Cases* (the "Protocol"), which validated the District Court Order by formally appointing the Trustee as the chapter 11 trustee in the Bankruptcy Cases pursuant to section 1106 of the Bankruptcy Code, and allowed the Trustee to continue to act as the receiver of the non-debtor Defendants and Relief Defendants in the District Court Case in accordance with the District Court Order and subject to the conditions set forth in the Protocol.

9.      On July 20, 2009, the U.S. Trustee's Office appointed the Trustee to serve as the Chapter 11 trustee in the Bankruptcy Cases. By order entered on the same day, the Trustee's appointment was confirmed and approved by the Bankruptcy Court.

10.     On July 30, 2009, the Office of the United States Trustee appointed the Official Investors Committee (the "Investors Committee" and together with the Creditors Committee, the "Committees") in the Bankruptcy Cases.

**B.      The Original Sale Motion**

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 4**

11.    On December 18, 2009, the Trustee executed an agreement with Continental Resources, Inc. ("Continental" and Continental's bid is the "Amended Stalking Horse Bid") for the purchase of the Anadarko Leasehold Package (the "Anadarko Package").  On December 21, 2009, the Trustee filed his *Motion for Order: (I) Authorizing Sale of Leasehold Interests; (II) Approving Model PSA and PSA Subject to Higher and Better Offers; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Authorizing the Trustee to Conduct De Minimis Sales of Leasehold and Mineral Interests* (the "Original Sale Motion") [Docket No. 475] for approval of the proposed sale of the Leasehold Interests and his selection of Continental as the "stalking horse" bidder for the Anadarko Package (the "Sale").

12.    On December 28, 2009, the Bankruptcy Court held a hearing on the Trustee's *Motion for Order: (I) Approving Bid Procedures for Sale of Leasehold Interests; (II) Scheduling Hearing to Consider Sale; (III) Approving Form of Notices; (IV) Establishing Procedures Relating to Assumption/Assignment and/or Transfer by Agreement of Certain Unexpired Leases and/or Executory Contracts; (V) Approving Bid Protections; and (VI) For Other Relief* [Docket no. 472] (the "Bid Procedures Motion"), which was approved by order of the Bankruptcy Court on December 31, 2009.  At the hearing on the Bid Procedures Motion, the Trustee agreed to certain changes requested by the Committees to the Stalking Horse PSA, the Model PSA and the Bid Procedures approved for use at the auction of Leasehold Interests.

13.    The Trustee now files this Amended Motion for approval of the terms of the proposed Sale of Leasehold Interests, as amended, the Amended Purchase and Sale Agreement executed by and between the Trustee and Continental (the "Amended Stalking Horse PSA"), and

---

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 5**

the amended form purchase and sale agreement (the "Amended Model PSA").  The Original Sale

Motion is wholly incorporated herein and capitalized terms not otherwise defined shall have the

same meaning ascribed to them in the Original Sale Motion.

### III.    SUMMARY OF CHANGES TO TERMS OF SALE

14.    As previously stated, the Trustee agreed to certain changes to the terms of the

Stalking Horse PSA with Continental and the original Model PSA.  These amendments may be

summarized as follows:

(a)    Continental's Overbid Fee was amended from three percent (3%) of the Base Purchase Price as calculated at the date of execution for the Stalking Horse PSA to three percent (3%) of Continental's Base Purchase Price as calculated at the beginning of the Auction;

(b)    The Continental's Stalking Horse PSA was amended to provide that in the event Continental became entitled to payment of the Overbid Fee, Continental shall also be entitled to reimbursement up to $50,000.00 (the "Due Diligence Fee") for actual and reasonable expenses incurred by Continental in connection with conducting its due diligence;

(c)    The original Stalking Horse PSA and the Model PSA were amended to make the Buyer responsible only for those liabilities associated with the assumption and assignment of executory contracts (original Exhibit B-2 to the PSAs amended to Exhibit "B").  Under the Amended Model PSA and the Amended Stalking Horse PSA, liabilities listed on original Exhibit B-1 to both the Stalking Horse PSA and the Model PSA shall remain claims against the Bankruptcy Estates; and

(d)    The definition of "Final Order" was amended to allow the Trustee and the Successful Bidder to elect to proceed to Closing once the order on the Amended Sale Motion is entered.

15.    The Trustee and Raymond James have provided electronic copies of the Amended

Stalking Horse PSA and the Amended Model PSA to the Committees and all parties having

demonstrated an interest in participating in the Auction in advance of the filing of this Amended

Motion so that all interested parties can review the changes outlined herein and no party is

disadvantaged by the amendments to the terms of the proposed Sale and may participate in the Auction with advance notice of the Amended Stalking Horse Bid for the Anadarko Package. Other than the changes and amendments referenced herein, the Sale is intended to proceed as outlined in the Original Sale Motion.

16.    In addition to the changes to the terms of the Sale as proposed in the Amended Stalking Horse PSA and the Amended Model PSA, the Trustee is filing the Amended Sale Motion to provide notice of a late addition to the schedule of Cure Costs originally included in the Bid Procedures Motion and served by the Trustee with the Assumption and Cure Notice on December 31, 2009. On January 6, 2010, the Trustee received notice of a forced pooling order (the "Ballard Pooling Order") entered by the Corporation Commission of the State of Oklahoma regarding a well known as the Ballard 1-17H, which was proposed and drilled by Continental on Section 17, Township 7 North, Range 6 West, Grady County, Oklahoma (the "Ballard 1-17H Well"). Under the Ballard Pooling Order, the Debtors must elect to participate in the Ballard 1-17H Well on or before January 21, 2010, and commit to payment of $710,687.50 in exchange for a one-eighth (1/8) working interest in the Ballard 1-17H Well.

17.    The Trustee is taking appropriate steps to resolve the issues surrounding the Ballard Pooling Order. Although he does not concede that this is a valid Cure Cost which must be paid at Closing by the Successful Bidder, out of an abundance of caution and in the interest of fairness to all parties interested in submitting a bid on the Leasehold Interests in the Sale, the Trustee has added the costs assessed by the Ballard Pooling Order to the schedule of costs associated with the Purchased Contracts, which is attached hereto as Exhibit "1" to Exhibit "A".

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 7**

## IV.   SUMMARY OF RELIEF REQUESTED

18.    By and through the Amended Motion, the Trustee respectfully requests entry of an order substantially in the form of the proposed order attached here as Exhibit "A" (the "Sale Order") (i) authorizing the Trustee to consummate the Sale, free and clear of all liens, claims, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code to the Successful Bidder(s) on the terms and conditions found in the Amended Model PSA and/or the Amended Stalking Horse PSA; (ii) authorizing the Trustee to execute any and all documents he deems necessary to effectuate the Sale; (iii) authorizing the Trustee to assume and assign or transfer by agreement the Purchased Contracts and/or Leasehold Interests (as applicable) to the applicable Successful Bidder(s); (iv) finding that parties to the Purchased Contracts that have not filed a valid Cure Objection are forever barred from asserting any additional claims for payment on account of such Purchased Contracts against the Debtors, the Estates, the Trustee, any Successful Bidder or any assignee of such Purchased Contracts; (v) eliminating the ten (10) day stay contemplated by Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure; (vi) finding that each Successful Bidder is a good faith purchaser of the respective Leasehold Interests purchased and, as a result, is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code; (vii) granting authority for the Trustee to conduct *de minimis* sales of the remaining Leasehold and Mineral Interests and (viii) granting such other related relief as is just and proper.

## V.   PROPOSED SALE OF LEASEHOLD INTERESTS

**A.    Summary**

---

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 8**

19.    The Trustee proposes to sell the Leasehold Interests at auction and under substantially the same terms and conditions as described in the form Amended Model PSA, which is attached hereto and incorporated as Exhibit "B" and/or the Amended Stalking Horse PSA, which is attached hereto and incorporated as Exhibit "C". The Trustee proposes to select Continental as the "stalking horse" bidder for the Anadarko Package under the terms of the Amended Stalking Horse Bid, subject to higher and better offers. Pursuant to the terms of the Bankruptcy Court's order approving the Bid Procedures (the "Sale Procedures Order")[Docket No. 488], the Trustee will conduct an open, no-reserve auction (the "Auction") for the Leasehold Interests on January 14, 2010, at 10:00 a.m. prevailing Central Time at the offices of Munsch Hardt Kopf & Harr, P.C.

20.    The Trustee proposes to close the Sale within approximately thirty (30) days to ensure that the Sale provides the greatest benefit to the Estates. Proceeding quickly on the closing of the Sale will permit the Trustee to receive maximum value for the Leasehold Interests.[3] With each passing day, the Leasehold Interests are another day closer to expiring (with the attendant loss in value) and remain subject to the risk of being subjected to a forced pooling order or other administrative proceeding which jeopardizes the Trustee's ability to sell the Leasehold Interests for the benefit of the Estates.

**B.    Terms and Conditions of the Sale**

21.    Under the Bid Procedures approved by the Sale Procedures Order, each Successful Bidder is required to submit a purchase and sale agreement substantially in the form of the Amended Model PSA or a marked version of the Amended Stalking Horse PSA in order

---

[3] Under the terms of the Amended Stalking Horse PSA, in the event that the Trustee postpones Closing after February 1, 2010, Continental is entitled to a price reduction in the amount of $2,000,000.

to participate at the Auction.  The salient terms and conditions for the Sale in the Amended

Model PSA include:[4]

> (a)  Assets to be sold include all of the specified Debtors' interests in the Leasehold Interests and related assets, including wells and production equipment, rights in related contracts and proceeds from the sale of gas, oil and other mineral production from or attributable to the Leases for all periods subsequent to the Effective Date;

> (b)  Sale of the Leasehold Interests shall be "as is, where is" condition without representations or warranties of any kind whatsoever;

> (c)  Buyer shall be responsible for payment of all transfer taxes owed in connection with the Sale and agrees to indemnify the Trustee and the Estates from liability for such costs;

> (d)  Production from or attributable to the Leases for all periods prior to the Effective Date is excluded from the Sale; and

> (e)  At Closing, the successful Buyer shall pay those cure costs associated with the assumption and assignment of the Purchased Contracts described on Exhibit "B" to the Amended Model PSA.

22.    As discussed earlier, in the event that a bidder other than Continental emerges

from the Auction as the Successful Bidder on the Anadarko Leasehold Package and such

winning bidder subsequently closes, Continental is entitled to receive the Overbid Fee in the

amount of three percent (3%) of the Base Purchase Price as calculated at the time of the Auction

and the Due Diligence Fee for reimbursement of actual and reasonable expenses incurred by

Continental in connection with conducting its due diligence up to $50,000.00.

23.    If the Trustee becomes obligated to pay the Overbid Fee and the Due Diligence

Fee in connection with the Sale, then such obligations shall constitute an administrative expense

---

[4] To the extent this summary conflicts with the Amended Model PSA, the terms of the Amended Model PSA shall control.  All parties are encouraged to review the Amended Model PSA.  Additionally, all capitalized terms contained within this summary, unless otherwise defined in this summary or in the Motion, have the meaning attributed to them in the Amended Model PSA.

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 10**

claim under Bankruptcy Code §§ 503(b) and 507(a)(2) and shall be payable without further order of this Court.

## C.    De Minimis Sales

24.    In the event that Leasehold Interests remain unsold after the conclusion of the Sale, the Trustee proposes to sell such Leasehold Interests as well as any unsold Mineral Interests on an ongoing piecemeal basis for the best and highest price.  In the event that a proposed sale is less than $500,000.00 (each, a "De Minimis Sale"), the Trustee respectfully requests that the Court authorize him to close such De Minimis Sale under the procedures summarized below and described in detail in the Bid Procedures Motion.

25.    Under the procedures described in detail in the Bid Procedures Motion, the Trustee would reach an agreement with a third-party for the purchase of some portion of the unsold Leasehold or Mineral Interests, and would provide notice to all parties in interest of the proposed De Minimis Sale by filing a notice with the Court, which would include the terms of the proposed sale as well as a declaration from the Trustee or his advisors setting forth the factual basis for the Trustee's conclusion that such proposed sale provides a benefit to the Estates.  If no party files an objection within three (3) business days of the Trustee's filing of the notice of the proposed De Minimis Sale, the Trustee would file a notice of no objection with the Bankruptcy Court and would then have the authority to close the proposed De Minimis Sale without need for further order of the Bankruptcy Court.

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 11**

## VI.   BASIS FOR RELIEF REQUESTED

**A.     The Sale of the Leasehold Interests under Section 363 of the Bankruptcy Code**

26.     In exercising his business judgment, the Trustee has concluded that the Sale of the Leasehold Interests, subject to the approved Bid Procedures and the terms and conditions of the Amended Model PSA and/or the Amended Stalking Horse PSA, is in the best interest of the Estates, their creditors, and other stakeholders.   Accordingly, the Trustee requests the authority to sell the Leasehold Interests to the Successful Bidder(s) free and clear of all liens, claims, encumbrances, and interests under section 363(f) of the Bankruptcy Code.

27.     A trustee may sell property of the estate "other than in the ordinary course of business" with court approval and after notice and a hearing.   11 U.S.C. §363(b)(1).   As recognized by the Fifth Circuit, a trustee is entitled to use his or her business judgment in determining whether to sell assets outside of the ordinary course of business.   *See Institutional Creditors of Cont'l Air Lines Inc. v. Cont'l Air Lines Inc. (In re Cont'l Air Lines Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986).   Trustees are generally allowed to sell property of the estate outside the ordinary course if that sale benefits the estate and its creditors.   *See, e.g., Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (reminding courts, when faced with bankruptcy sales, to be mindful of "the ubiquitous desire of the unsecured creditors" and of one of the "primary objective[s] of the Code, to enhance the value of the estate at hand"); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (explaining that "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the Debtor's duty with respect to such sales is to obtain the highest price or

overall greatest benefit possible for the estate" (quoting *In re Atlanta Packaging Prod., Inc*., 99

B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

28.     Courts typically consider the following factors in determining whether a proposed

sale satisfies the "business judgment" standard:  (i) whether a sound business justification exists

for the sale; (ii) whether fair and reasonable consideration is provided; (iii) whether the

transaction has been proposed in good faith; and (iv) whether adequate and reasonable notice is

provided.  *See e.g., In re Condere*, 228 B.R. 615, 626 (Bankr. S.D. Miss. 1998).  The proposed

Sale of Leasehold Interests satisfies each of these four factors.

**1.     The Proposed Sale and De Minimis Sales Satisfy the "Business Judgment"
Standard**

29.     Sound business justifications weigh strongly in favor of the Sale and the proposed

De Minimis Sales.  The Leasehold Interests have a limited shelf life and if not sold now, will

expire without providing any benefit to the Estates.  Because some portions of the Leasehold

Interests are working interests, their value is dependent on operators drilling wells on the

Leasehold Interests.  In the current market, the Trustee cannot rely on operators to consistently

drill new wells and consequently the Leasehold Interests will continue to expire and lose value.

30.     Further, many of the Leasehold Interests risk being rendered useless by forced

pooling orders issued by the Oklahoma Corporate Commission.  These forced pooling orders

force the Trustee to expend a significant amount of money to elect into a well or to accept a

small royalty interest, which will be paid only after the operator recoups its operating costs.

Because the Trustee and the Estates cannot afford to elect into a well as long-term investors in

the well's success, forced pooling orders threaten to render a number of the Leasehold Interests

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II)
APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III)
APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS
SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 13**

into relatively worthless royalty interests.  By conducting an Auction and Sale pursuant to the Bid Procedures and then conducting ongoing sales of remaining Leasehold and Mineral Interests under the approved De Minimis Procedures, the Trustee will be able to sell the remaining property of the Estates in a manner calculated to maximize value.

31.    Additionally, the Bid Procedures approved by this Court ensure that the Sale will return fair and reasonable compensation for the Estates.  Under the Bid Procedures, an Auction will be conducted (provided that any Qualified Bids are received prior to the Bid Deadline).  The Auction provides a platform for open and competitive bidding that will encourage the highest and best bids for the Leasehold Interests that the market can offer under the circumstances. Second, under the Bid Procedures, the Trustee retains the right to not accept any offer or bid on the Leasehold Interests that he believes is not reasonable value for any of the Leasehold Interests. Finally, the Sale ensures that the Estates will get some benefit from the Leasehold Interests before they expire or are rendered relatively worthless by forced pooling orders.

32.    Further, Continental's Amended Stalking Horse Bid provides a premium for the Anadarko Package which will additionally result in the elimination of ongoing obligations in the form of the Purchased Contracts, which if transferred, would result in an enhanced recovery for the creditors and other stakeholders in the Estates.

33.    The Amended Stalking Horse Bid was negotiated at an arms' length with Continental and the Bid Procedures further promote fair and open competitive bidding which will result in the best and highest possible return to the Estates.  Consequently, the Trustee believes that the proposed Sale was tendered in good faith and with the intention of providing the maximum benefit to the Estates.

34.     In the exercise of his business judgment, the Trustee believes that the proposed De Minimis Sales provide a benefit to the Estates by allowing him to gain additional value for the Estates without incurring all of the costs associated with a more traditional sale under Section 363 of the Bankruptcy Code.  Further, under the proposed procedures for De Minimis Sales, the Estates stand to capture additional benefits by selling Leasehold and Mineral Interests at a price which provides economic value to the Estates that would not otherwise be beneficial if the Trustee were required to incur the administrative expense of filing a motion and holding a hearing on the proposed sale.

### 2.      Sale Free and Clear of Liens

35.     The Trustee further submits that it is appropriate to sell the Leasehold Interests free and clear of all liens, claims, encumbrances and interests pursuant to section 363 of the Bankruptcy Code, other than those Purchased Contracts explicitly accepted by a Successful Bidder, with any such liens, claims and encumbrances attaching to the net sale proceeds of the Sale.  Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property "free and clear of any interest in such property of an entity other than the estate if:

(1)      applicable non-bankruptcy law permits sale of such property free and clear of such interests;

(2)      such entity consents;

(3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)      such interest is in bona fide dispute; or

(5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

11 U.S.C. § 363(f).

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 15**

36.     Satisfaction of any one of the five requirements listed above will suffice to permit the sale of the Leasehold Interests "free and clear" of liens, claims and encumbrances.  *In re C-Power Products, Inc.*, 230 B.R. 800 (Bankr. N.D. Tex. 1998) (for a sale of assets free and clear of liens, claims and encumbrances, "…one of the conditions of 363(f)(1) through (5) must be met").

37.     Here, the Trustee may sell the Leasehold Interests free and clear of all liens, claims, encumbrances, and interests because there is no reason that any holder of a lien against the Leasehold Interests could not be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its lien or other interest.  In addition, all of the Leasehold Packages and Leasehold Sub-Packages and the vast majority of the Leasehold Interests have a value of, and will be sold for, an amount greater than the aggregate value of all liens on such property.

38.     Accordingly, the Sale can fulfill the requirements under either section 363(f)(3) or section 363(f)(5) of the Bankruptcy Code, and the Trustee may sell the Leasehold Interests free and clear of all liens, claims, encumbrances, and interests.

**B.      Assumption and Assignment (or Transfer by Agreement) of the Purchased Contracts (and to the extent applicable, the Leasehold Interests) under Section 365 of the Bankruptcy Code**

39.     Sections 365(a) and (b) of the Bankruptcy Code authorize a trustee to assume, subject to the court's approval, executory contracts and unexpired leases.  11 U.S.C. § 365; *In re National Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).  Specifically, under section 365(a) of the Bankruptcy Code, a trustee "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Section 365(b)(1) of

---

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 16**

the Bankruptcy Code codifies the requirements for assuming an unexpired lease or executory

contract of a debtor.  Section 365(b)(1) states:

> "[i]f there has been a default in an executory contract or unexpired lease of the
> debtor, the trustee may not assume such contract or lease unless, at the time of
> assumption of such contract or lease, the trustee
>
>> (A)    cures or provides adequate assurance that the trustee will
>> promptly cure, such default;
>
>> (B)    compensates, or provides adequate assurance that the
>> trustee will promptly compensate, a party other than the debtor to
>> such contract or lease, for any actual pecuniary loss to such party
>> resulting from such default; and
>
>> (C)    provide adequate assurance of future performance under
>> such contract or lease."

11 U.S.C. § 365(b)(1).

40.    Although section 365(a) of the Bankruptcy Code does not provide a standard for

determining when a court may authorize a trustee's assumption or rejection of an executory

contract or an unexpired lease, the Fifth Circuit has adopted, and subsequently affirmed, the

Supreme Court's rule that a court should defer to the trustee's business judgment when

considering a motion to reject an executory contract or unexpired lease.  *Richmond Leasing Co.*

*v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (quoting *Group of Institutional*

*Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 318 U.S. 523, 550 (1943)).  *See*

*also Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 525 n. 5 (5th

Cir. 2004) (citing *Richmond Leasing Co.*, 762 F.2d at 1309).

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II)
APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III)
APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS
SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 17**

41.     Here, the Trustee's assumption and assignment of the Purchased Contracts[5] is an exercise of his sound business judgment because the assumption and subsequent assignment of the Purchased Contracts to the Successful Bidder(s), is crucial to the Sale.   The Purchased Contracts are comprised of certain operating and other agreements related to certain oil or gas wells covered by some of the Leasehold Interests.  The Purchased Contracts are an integral part of maximizing revenue for certain Leasehold Interests, because they govern the percentage of the well's production to which each holder of a lease or other interest in the well is entitled.

42.     The Trustee's assumption and assignment or transfer by agreement of the Purchased Contracts (and to the extent applicable, the Leasehold Interests)  is an exercise of his sound business judgment because, as set forth in detail in the Bid Procedures Motion, the Successful Bidder(s) will relieve the Estates of their responsibilities under such Purchased Contracts.   Specifically, the Successful Bidder(s) will be responsible for remedying any cure, compensation, and reinstatement costs or expenses as well as providing the necessary adequate

---

[5]      As discussed in the Bid Procedures Motion, the Trustee does not believe that the Leasehold Interests themselves are executory contracts or unexpired leases of non-residential real property that may be assumed and assigned pursuant to 11 U.S.C. § 365, and that the majority of courts ruling on this issue so agree. .  *See In re Clark Res.*, 68 B.R. 358, 359 (Bankr. N.D. Okla. 1986) (ruling that, under Oklahoma law, oil and gas leases are not unexpired leases or executory contracts because they are in the nature of an estate in real property having a nature in fee); *River Prod. Co., Inc. v. Webb (In re Topco, Inc.)*, 894 F.2d 727, 739-40 (5th Cir. 1990) (stating that "Texas oil and gas leases are neither true leases nor executory contracts");  *In re Fredrick Petroleum Corp.*, 98 B.R. 762, 767 (Bankr. S.D. Ohio 1989) (ruling that, under Ohio law, oil and gas leases were not "leases of non-residential real property"); *In re Hanson Oil Co.*, 97 B.R. 468, 470-72 (Bankr. S.D. Ill. 1989) (ruling that, under Illinois law, oil and gas leases are not ordinary leases but convey a freehold estate and, as a result, section 365 of the Bankruptcy Code does not apply).  However, the Trustee is aware of at least one state – Louisiana – where conflicting court decisions make it less than clear whether an oil and gas lease is an unexpired lease, an executory contract, or an interest in real rights.  *See Texaco Inc. v. Louisiana Land and Exploration Co.*, 136 B.R. 658, 668 (Bankr. M.D. La. 1992) (ruling that, under Louisiana law, mineral leases are executory contracts subject to section 365 of the Bankruptcy Code).  *But, see also, In re WRT Energy Corp.*, 202 B.R. 579, 583-4 (Bankr. W.D. La. 1996) (considering and rejecting the analysis in *Texaco Inc. v. Louisiana Land and Exploration Co.* and ruling that oil and gas leases are neither executory contracts nor unexpired leases and, instead, "vest the lessee with real rights").  To the extent such Leasehold Interests qualify under state law as an executory contract or a lease of non-residential real property, the Trustee respectfully requests authority, in the exercise of his sound business judgment, to assume and assign such Leasehold Interests to the Successful Bidders.

assurance for future payment of all obligations under the assumed/transferred Purchased Contracts.

**C.      The Successful Bidder(s) are Good Faith Purchasers**

43.      Section 363(m) of the Bankruptcy Code states that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to such entity that purchased or leased such property in good faith . . . ." 11 U.S.C. § 363(m).  Citing Fifth Circuit Court of Appeals precedent, courts have stated that conduct which can destroy a party's good faith status under section 363(m) of the Bankruptcy Code "involves fraud, collusion . . ., or attempt to take grossly unfair advantage of the other bidders."  *In re Sullivan Central Plaza I. Ltd.*, 106 B.R. 934, 938 (Bankr. N.D. Tex. 1998) (citing *Matter of Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 (5th Cir. 1981)).

44.      The Bid Procedures and the Auction contemplated therein promote a fair, open, and competitive bidding process under the watchful eyes of the Trustee and his professionals as well as the Committees and their respective counsel.  Accordingly, any sales that result from the Auction should be void of any fraud and collusion.  Additionally, the terms and conditions of the Amended Model PSA, which are substantially included in the Amended Stalking Horse PSA, ensure all sales of the Leasehold Interests on virtually the same terms and conditions, thereby helping make certain that no bidder has a "grossly unfair" advantage over other bidders.  Therefore, the Trustee requests that the Bankruptcy Court find that each of the Successful Bidders is a "good faith purchaser" under 363(m) of the Bankruptcy Code and entitled to all the benefits and protections of a good faith purchaser under 363(m) of the Bankruptcy Code.

---

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 19**

**D.     A Waiver of the Ten-Day Stay under Rule 6004(h) is Justifiable**

45.     Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  Similarly, Rule 6006(d) provides that "an order authorizing the trustee to assign and execute a contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the Court orders otherwise." Fed. R. Bank. P. 6006(d).

46.     The Trustee desires to close the Sale as quickly as possible, provided that the Bankruptcy Court approves the Sale and the other relief requested herein.  The Trustee believes that such a speedy closing is warranted under the circumstances, and the Trustee anticipates the Successful Bidders will agree with his request, especially because the Leasehold Interests are continually expiring or are otherwise rendered relatively worthless by forced pooling orders. Consequently, the Trustee requests that the Bankruptcy Court waive the ten-day stay under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

**E.     Reasonable Notice has been Provided under the Circumstances**

47.     In accordance with Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure, the Trustee has provided reasonable notice of the Auction and Sale and the Sale Hearing under the circumstances.

48.     On December 21, 2010, the Trustee caused Epiq Bankruptcy Solutions to serve notice of the Original Sale Motion, the proposed Sale Order and notice of the Sale on all parties on the regular service list as well as those parties who are not on the regular service list but stand

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 20**

to be affected by the proposed assumption and assignment and/or transfer by agreement of the Purchased Contracts associated with the Leasehold Interests.

49.     Pursuant to the Sale Procedures Order, on December 31, 2009, the Trustee caused Epiq Bankruptcy Solutions to serve the Sale and Auction Notice (as defined in the Bid Procedures Motion) on:  (i) all entities listed on the current master service list; (ii) all known parties that have or may assert a lien on or security interest in some or all of the Leasehold Interests; (iii) all known counterparties to the Purchased Contracts; and (iv) those parties who previously contacted the Trustee and his professionals and expressed a bona fide interest in purchasing the Leasehold Interests.  The Sale and Auction Notice includes, among other things, the deadline to object to the Sale and the date and time of the Auction and the hearing for final approval of the Sale.

50.     Furthermore, during the week of January 4-8, 2010, the Trustee provided notice by publication of the proposed Sale in three editions of the *Daily Oklahoman,* the *Dallas Morning News* and the *Houston Chronicle*, which notice provided the time, date and place of the Auction, the deadline to object to the Sale, and the date and time of the hearing for final approval of the Sale..

51.     The Trustee will serve notice of this Amended Motion, the proposed Sale Order (as amended), the Amended Model PSA and the Amended Stalking Horse PSA in accordance with Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure on all parties on the regular service list as well as those parties who are not on the regular service list but stand to be affected by the proposed assumption and assignment and/or transfer by agreement of the Purchased Contracts associated with the Leasehold Interests.  Prior to filing this Amended

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 21**

Motion. the Trustee and Raymond James provided copies of the Amended Model PSA and the
Amended Stalking Horse PSA to the Committees and all parties previously demonstrating an
interest in the Sale.

52.     The notice procedures set forth herein and in the Sale Procedures Order satisfy the
notice requirements of Rules 2002, 6004 of the Federal Rules of Bankruptcy Procedure as well
as Section 363(b) of the Bankruptcy Code and constitute good and sufficient notice.  No other or
further notice is required.

## VII.     PRAYER

WHEREFORE, the Trustee respectfully requests entry of an order substantially in the
form of the proposed order attached hereto as Exhibit "A":  (i) authorizing the Trustee to
consummate the Sale, free and clear of all liens, claims, encumbrances, and interests pursuant to
section 363(f) of the Bankruptcy Code to the Successful Bidder(s) on the terms and conditions
found in Amended Model PSA and/or the Amended Stalking Horse PSA executed by and
between the Trustee and Continental; (ii) authorizing the Trustee to execute any and all
documents he deems necessary to effectuate the Sale; (iii) authorizing the Trustee to assume and
assign or transfer by agreement the Purchased Contracts (and to the extent applicable, the
Leasehold Interests) to the applicable Successful Bidder(s); (iv) finding that parties to the
Purchased Contracts that have not filed a valid Cure Objection are forever barred from asserting
any additional claims for payment on account of such Purchased Contract against the Debtors,
the Estates, the Trustee, any Successful Bidder or any assignee of such Purchased Contract; (v)
eliminating the ten (10) day stay contemplated by Rules 6004(h) and 6006(d) of the Federal
Rules of Bankruptcy Procedure; (vi) finding that each Successful Bidder is a good faith

AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II)
APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III)
APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS
SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 22

purchaser of the respective Leasehold Interests purchased and, as a result, is entitled to all of

the protections afforded by section 363(m) of the Bankruptcy Code; (vii) granting authority

for the Trustee to conduct *de minimis* sales of the remaining Leasehold and Mineral Interests

and (viii) granting related relief as is just and proper.

DATED:  January 11, 2010

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**


By:    /s/ Kathleen M. Patrick
          Joseph J. Wielebinski
          Texas Bar No. 21432400
          Kevin M. Lippman
          Texas Bar No. 00784479
          Kathleen M. Patrick
          Texas Bar No. 24037243
          Lee J. Pannier
          Texas Bar No. 24066705
          3800 Lincoln Plaza
          500 N. Akard Street
          Dallas, Texas 75201-6659
          Telephone: (214) 855-7500
          Facsimile:  (214) 855-7584

**ATTORNEYS FOR DENNIS L. ROOSSIEN,
JR., CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

On this 11th day of January, 2010, she caused Epiq Bankruptcy Solutions, LLC ("Epiq"), as service agent, to serve a true and correct copy of the foregoing upon all parties on the Master Service List, as updated from time to time, as well as the parties listed on the Special Service List, which is attached here as Exhibit "D", via first class mail, postage prepaid.
.

/s/ Kathleen M. Patrick
Kathleen M. Patrick

**AMENDED MOTION FOR ORDER: (I) AUTHORIZING SALE OF LEASEHOLD INTERESTS; (II) APPROVING AMENDED MODEL PSA AND PSA SUBJECT TO HIGHER AND BETTER OFFERS; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) AUTHORIZING THE TRUSTEE TO CONDUCT MINIMIS SALES OF LEASEHOLD AND MINERAL INTERESTS– PAGE 24**

MHDocs 2445036_1 4856.8