

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

Honorable DeWayne Hale

**United States Bankruptcy Judge**

**Signed June 10, 2010**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | CASE NO. 09-33886 |
| | § | |
| PROVIDENT ROYALTIES, LLC, *et al.*, | § | Chapter 11 |
| | § | |
| Debtors. | § | (Jointly Administered) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT
TO CONFIRMATION OF FOURTH AMENDED CONSOLIDATED
PLAN OF LIQUIDATION FOR DEBTORS' ESTATES UNDER
CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

On June 8, 2010, the Court conducted a hearing (the "Confirmation Hearing") to consider

confirmation of the *Fourth Amended Consolidated Plan of Liquidation Under Chapter 11 of the*

*United States Bankruptcy Code* [Docket No. 748] (the "Plan")[1]  Having considered the Plan, all

filed objections to confirmation of the Plan, the agreement announced resolving certain objections

to the Plan, the evidence presented, arguments of counsel, and having taken judicial notice of the

---

[1] Unless separately defined, all capitalized terms herein shall have the meanings ascribed to such terms in the Plan.

pleadings and evidence presented in, and the record of, this case, the Court hereby enters its findings of fact and conclusions of law (the "Findings and Conclusions") with respect to confirmation of the Plan, as follows:[2]

## I.  FINDINGS OF FACT – BACKGROUND OF THE CASE

### A.    Judicial Notice and the Record

1.      In making Findings and Conclusions, this Court takes judicial notice of the docket of the Bankruptcy Cases, including, without limitation, all pleadings and other filed documents, orders and the evidence introduced at the Confirmation Hearing.

2.      These Findings and Conclusions incorporate the official record (the "Record") and the transcript of the Confirmation Hearing, including the Court's ruling on confirmation of the Plan, for all purposes.

### B.    The Debtors' Business and Events Leading to the Chapter 11 Filing

1.      Provident Royalties, LLC and its affiliated debtors in bankruptcy under the above captioned, jointly administered bankruptcy cases (collectively, the "Debtors") were in the business of acquiring and investing in both producing and non-producing leasehold and mineral interests (the "O&G Interests") across the United States, and primarily in the state of Oklahoma.  The Debtors acquired interests in targeted areas, and would thereafter participate as working interest owners in the drilling of wells on their leases.

2.      The Debtors employed a multi-tiered structure for the operation of their businesses.  Provident Royalties, LLC ("PRLLC"), owns all or virtually all of the voting stock or membership interests in the other Debtors and provided overhead and operational support,

---

[2] To the extent that any finding of fact is or may be construed as a conclusion of law, it shall also constitute a conclusion of law.  Similarly, to the extent that any conclusion of law is or may be construed as a finding of fact, it shall also constitute a finding of fact.

including accounting, land services and employees, for each of the Debtors. Provident Operating Company, LLC ("POCO") served primarily for purposes of well operations. Somerset Lease Holdings, Inc. ("SLH") and Somerset Development, Inc. ("SDI") served as holding companies for the oil and gas and other real estate properties in the Debtors' corporate family.

3.    The lower tier of the Debtors' organizational structure is a series of corporate entities established for the purpose of raising working capital through private placement offerings which enabled individual investors to make equity investments in specific Debtor entities in exchange for non-voting membership interests in the operative Debtor entity.

## C.    The Bankruptcy Filings and the Receivership

1.    On June 22, 2009 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Tile 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), thereby initiating the Bankruptcy Cases with the Court.

2.    On July 1, 2009, the Securities and Exchange Commission (the "SEC") filed its *Complaint* (the "SEC Complaint")[3] with the United States District Court for the Northern District of Texas (the "District Court") against the Defendants and the Relief Defendants (as defined in the SEC Complaint). The SEC Complaint sought, among other things, the appointment of a receiver over the property and the estates (the "Receivership Estates") of certain of the Defendants and the Relief Defendants: Provident Royalties, LLC, Provident Asset Management, LLC, Provident Energy 1, LP, Provident Resources 1, LP, Provident Energy 2, LP, Provident Energy 3, LP, Shale Royalties II, Inc., Shale Royalties 3, LLC, Shale Royalties 4, Inc., Shale Royalties 5, Inc., Shale

---

[3] The "SEC Complaint" is that certain pleading filed by the SEC with the District Court, thereby commencing Civil Case No. 3-09CV1238-L. The SEC Complaint is supported by the SEC's *Memorandum of Law in Support of Motion for Ex Parte Order Freezing Assets and Other Emergency Relief, in Support of Motion to Appoint Receiver and Order to Show Cause Why a Preliminary Injunction Should Not Issue*, which the SEC filed the same day as the SEC Complaint.

Royalties 6, Inc., Shale Royalties 7, Inc., Shale Royalties 8, Inc., Shale Royalties 9, Inc., Shale Royalties 10, Inc., Shale Royalties 12, Inc., Shale Royalties 14, Inc., Shale Royalties 15, Inc., Shale Royalties 16, Inc., Shale Royalties 17, Inc., Shale Royalties 18, Inc., Shale Royalties 19, Inc., Shale Royalties 20, Inc., Provident Operating Company, LLC, Somerset Lease Holdings, Inc., Somerset Development, Inc., Shale Royalties 21, Inc., and Shale Royalties 22, Inc. (collectively, the "Receivership Defendants").  The Receivership Defendants are, for all practical purposes, the Debtors in the Bankruptcy Cases and, therefore, the Receivership Estates are also, for all practical purposes, the Debtors' bankruptcy estates (the "Estates").

3.      The following day, the District Court granted the SEC the relief it requested in the SEC Complaint and entered its Order Granting Temporary Restraining Order, Appointing Receiver, Freezing Assets, Staying Litigation, Prohibiting the Destruction of Documents and Accelerating Discovery (the "District Court Order"), thereby, in effect, appointing the Trustee as the receiver of the Debtors and their Estates.

4.      On July 8, 2009, a committee formation meeting was conducted by the Office of the United States Trustee and, pursuant to that meeting, the Official Committee of Unsecured Creditors (the "Creditors Committee") was formed in the Bankruptcy Cases.

5.      On July 17, 2009, the Court entered the *Stipulation Approving Protocol for the Receiver to Serve as Chapter 11 Trustee in the Bankruptcy Cases* (the "Protocol"), which validated the District Court Order by appointing Dennis L. Roossien, Jr., subject to approval of the Office of the United States Trustee, as the chapter 11 trustee in the Bankruptcy Cases pursuant to section 1106 of the Bankruptcy Code, and allowed the Trustee to continue to act as the receiver of the non-debtor Defendants and Relief Defendants in the District Court Case in

accordance with the District Court Order and subject to the conditions set forth in the Protocol.

6.      Pursuant thereto, on July 20, 2009, the U.S. Trustee's Office sought the appointment of the Trustee to serve as the Chapter 11 trustee in the Bankruptcy Cases and by order entered on the same day, the Trustee's appointment was confirmed and approved by this Court.

7.      On July 30, 2009, the Office of the United States Trustee appointed the Official Investors Committee (the "Investors Committee" and together with the Creditors Committee, the "Committees") in the Bankruptcy Cases.

## D.    The Plan-Related Settlements and the 3013 Motion

1.      After extensive negotiations, the Trustee and the Committees determined it was in the best interests of the Estates and all parties-in-interest to seek the Court's approval of several motions as predicates for the Plan.

2.      On March 31, 2010 [Docket No. 700], this Court entered its order granting the Creditors Committee's *Motion to Determine Classes of Creditors and Equity Security Holders Pursuant to Fed. R. Bankr. P. 3013* [Docket No. 579] (the "3013 Motion"), thereby ordering, among other things, that general unsecured claims against the Debtors be separately classified from, and senior to, equity interests in the Debtors.

3.      On April 6, 2010, this Court entered its order [Docket No. 722] granting the Plan Proponents' *Motion for Approval of Distribution Settlement Under Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 583] (the "Distribution Motion"), which requested approval pursuant to Bankruptcy Rule 9019 of a settlement by and among the Trustee and the Committees regarding the equitable allocation of the Debtors' Assets under the Plan (the

"Distribution Settlement"). Specifically, the Distribution Settlement approved by this Court provides, among other things, that: (i) the proceeds of all of the Debtors' Assets will be shared solely for the purpose of making distributions with respect to Claims against and Equity Interests in the Debtors under the Plan; (ii) each Claim against or Equity Interest in any of the Debtors is deemed to be a Claim against or Equity Interest in every Debtor without distinction among the Debtor entities; (iii) any proof of Claim or proof of Equity Interest filed against one or more of the Debtors is deemed to have been a single proof of Claim or proof of Equity Interest filed against all of the Debtors without distinction; (iv) all intercompany claims by and among the Debtors is eliminated solely for purposes of determining distributions among the Creditors and holders of Equity Interests of the Debtors; and (v) all guarantees by one of the Debtors in favor of any of the other Debtors are eliminated, with all guarantees executed by any of the Debtors in favor of a Creditor deemed to be a single obligation.

4.    On March 31, 2010, this Court entered its order [Docket No. 701] approving the Trustee's Motion for Approval of Settlement and Compromise with Sinclair Oil & Gas Company and Sinclair Finance Company Pursuant to Bankruptcy Rule 9019 [Docket No. 584] (the "Sinclair Settlement Motion").  The Court thereby approved pursuant to Bankruptcy Rule 9019 a (second) settlement with the Sinclair Entities that: (i) provides for the Estates' payment of $8 million to Sinclair Finance Corporation in full satisfaction of the Sinclair Subordinated Claim; and (ii) requires the Sinclair Entities to transfer certain claims they may have against the non-Debtor defendants in the SEC Action in exchange for the Sinclair Allocation Claim.[4]

## II. FINDINGS OF FACT – THE CHAPTER 11 PLAN

---

[4] In accordance with the terms of this settlement, the Trustee has delivered the $8 million payment to Sinclair Finance Corporation, and the Sinclair Entities have delivered any and all claims they may have against the non-Debtor defendants in the SEC Action to the Trustee.

## A.    Procedural Background

1.    On April 21, 2010, the Trustee and the Committees (collectively, the "Plan Proponents") filed the Plan.  On the same date, the Plan Proponents filed their proposed *Fourth Amended Disclosure Statement Pursuant to 11 U.S.C. § 1125 in Support of Fourth Amended Consolidated Plan of Liquidation for Debtors' Estates Under Chapter 11 of the United States Bankruptcy Code, Proposed by Chapter 11 Trustee, Official Committee of Unsecured Creditors, and Official Investors Committee* [Docket No. 749] (the "Disclosure Statement").

2.    On April 22, 2010, this Court, after determining that the Disclosure Statement contained adequate information for purposes of soliciting votes on the Plan within the meaning of section 1125 of the Bankruptcy Code, entered its *Order (A) Approving Fourth Amended Disclosure Statement Pursuant To 11 U.S.C. § 1125 in Support of Fourth Amended Consolidated Plan of Liquidation for Debtors' Estates, (B) Scheduling a Hearing to Consider Confirmation of the Fourth Amended Consolidated Plan of Liquidation for Debtors' Estates, (C) Establishing Voting and Objection Deadlines, and (D) Approving Balloting, Solicitation, Notice And Voting Procedures* [Docket No. 753] (the "Disclosure Statement Order").

3.    Pursuant to the Disclosure Statement Order, the Court also: (i) approved the forms of ballots to be used in soliciting votes on the Plan and in providing the holders of Class 6 Preferred Stock Interests the choice of exercising an "Opt-Out Election," through which they may vote in favor of the Plan but choose not to assign their personal claims against third parties relating to such investors' relationships with one or more of the Debtors, pursuant to the provisions of the Plan (collectively, the "Ballots");[5] (ii) appointed Epiq Bankruptcy Solutions,

---

[5] Final forms of the Ballots as approved by the Court are attached as exhibits to the Affidavit of Service of Solicitation Materials, by James F. Daloia, Esq., at Exhibits 5 through 8 thereto [Docket No. 836] ("Daloia Affidavit").

LLC, ("Epiq"), the formally approved claims noticing agent in these Bankruptcy Cases, to serve

as balloting agent responsible for, *inter alia*, (a) service of Solicitation Packages (as defined in the

Disclosure Statement Order), (b) providing other form and manner of notice of the Confirmation

Hearing and Objection Deadline and service of the Disclosure Statement, Plan, Ballots and

Disclosure Statement Order  in accordance with the Disclosure Statement Order and applicable

law (collectively with the Solicitation Packages the "Solicitation Materials"), and (c) receipt and

tabulation votes on the Plan; (iii) established specific balloting and tabulation procedures to be

applied by Epiq in administering and tabulating votes on the Plan (collectively, the "Balloting

Procedures"); (iv) fixed a deadline of May 28, 2010, at 5:00 p.m. (Central), for the return of

Ballots to Epiq (the "Voting Deadline"); (v) fixed a deadline of May 28, 2010, at 5:00 p.m.

(Central), for the filing and service of objections to confirmation of the Plan (the "Objection

Deadline"); (vi) approved the form and contents of all materials to be included in Solicitation

Packages, including, without limitation, "Any letters from the Committees recommending that

their constituents vote in favor of the Plan" (Disclosure Statement Order, at p. 6), as well as the

form and contents of all other Solicitation Materials; and (vii) approved noticing and service

deadlines, requirements and other procedures (collectively, the "Solicitation Requirements") in

relation to service of the Solicitation Materials and solicitation of votes on the Plan.

4.       As evidenced by the Daloia Affidavit and the Exhibits attached thereto, none of the

accuracy or validity of which were attempted to be controverted by any party, the Plan

Proponents timely complied with all of the Solicitation Requirements.  Accordingly, proper and

sufficient notice of the Confirmation Hearing, Voting Deadline and Objection Deadline was

provided to Creditors, Equity Interest holders, and all other parties in interest entitled to notice in

accordance with all requirements of the Disclosure Statement Order and the Bankruptcy Rules. The Plan Proponents properly, sufficiently and fairly distributed approved Solicitation Materials to all holders of Claims and all holders of Class 6 Preferred Stock Interests who were entitled to vote on the Plan (and make the Opt-Out Election in the case of holders of Class 6 Preferred Stock Interests), as well as all other parties entitled to receive same.

## B.    Objections and Resolution Thereof

1.    Five objections (collectively, the "Objections") were filed prior to the Objection Deadline by: (i) Lyle R. Nelson (the "Medallion Trustee"), Trustee in the Chapter 7 bankruptcy case of Medallion Energy, Inc. ("Medallion") pending in the United States Bankruptcy Court for the Western District of Oklahoma [Docket No. 801] (the "Medallion Objection"); (ii) QA3, LLC and QA3 Financial Corporation [Docket No. 822] (the "QA3 Objection"); (iii) jointly, Joseph Billitteri, Robert Adams, Karen L. Bopp, IRA, the Bussell Living Trust DTD 12/05/96, John Gilgallon, Scott Jessen, the Sharon Kreindel Revocable Trust DTD 02/09/2005, Mary Merline, James Merrill, Lewis Wilson, Donald Stott, Ron Brown, and Vivian Garcia (collectively, the "Billitteri Group") [Docket No. 825] (the "Billitteri Objection"); (iv) Jolley, Castillo, Drennon Ltd. d/b/a Sierra Engineering [Docket No. 827] (the "Jolley Objection"); and (v) Mr. Charles Suchman [Docket No. 829] (the "Letter Objection").  Separately, the taxing authorities for Dallas County informally presented their objection to the Trustee (the "Dallas County Objection"), and such objection has been resolved as explained below.  No other objections (formal or informal) have been filed, presented or otherwise made known to the Court in opposition to confirmation of the Plan.

### a.    Jolley Objection

2.      With respect to the Jolley Objection, the Court finds that the parties have resolved

the objection as announced on the record of the Confirmation Hearing: (i) the principal amount of

Jolley, Castillo, Drennon Ltd. d/b/a Sierra Engineering's claim shall be an Allowed Secured Claim

in the amount of $103,577.44 ("Jolley Claim"); (ii) 6% interest shall accrue on the Jolley Claim

from and after the first date on which the principal amount of the Jolley Claim became past due;

(iii) attorneys' fees and expenses shall be Allowed under the Jolley Claim in the amount of no

more than $5,000.   The Court finds that such proposed resolution is fair and equitable, a

reasonable exercise of the Trustee's reasonable business judgment, is in the best interests of the

Estates, and should be approved.

### b.      The Dallas County Objection

1.      With respect to Dallas County Objection, an announcement was made at the

Confirmation Hearing that the Plan Proponents and Dallas County had agreed to the inclusion of

specific language within any order of this Court confirming the Plan, which both clarifies the

treatment afforded to Dallas County's Administrative Claims for year 2010 ad valorem taxes and

provides for the retention and reattachment of ad valorem tax liens securing such Claims pending

the Effective Date, as follows (the "Dallas County Order Provisions"):

> Notwithstanding any other provision in this order, the Plan, any supplement
> thereto or agreement in furtherance of the Plan, any claim of Dallas County for
> year 2010 ad valorem property taxes shall be an Administrative Claim.   Dallas
> County shall retain any and all liens against the Debtors' assets that secure year
> 2010 ad valorem property taxes and/or any penalties and interest that may accrue
> in connection therewith.   In the event of a sale of the assets securing year 2010 ad
> valorem property taxes owed to Dallas County, any liens securing Dallas County's
> Administrative Claim shall attach to the sale proceeds with the same validity,
> priority and extent that they attached to the assets sold.    The Administrative
> Claims Bar Date under the Plan shall not apply to a claim by Dallas County for
> year 2010 ad valorem property taxes, which claim, to the extent that the Debtors
> or their Estates do not dispute the amount(s) thereof, shall be paid in the ordinary
> course of business prior to the state law delinquency date.    In the event of a

dispute as to the amount or validity of such 2010 ad valorem property taxes, or a default by a Debtor or its estate in the payment of same, Dallas County shall seek authorization or relief from the Bankruptcy Court prior to seeking to enforce its remedies pursuant to state law outside of the Bankruptcy Court. Upon the final resolution of any dispute concerning a claim by Dallas County for year 2010 ad valorem property taxes, all amounts ultimately determined to be owing and payable by the Debtors or their Estates, including without limitation, any penalties and/or interest, will be promptly paid within fifteen (15) days of such resolution as an Administrative Claim of the Debtors' Estates.

2.      Based on the parties' agreement, Dallas County did not file a formal objection to confirmation of the Plan.

3.      The Court finds that such proposed resolution is fair and equitable, a reasonable exercise of the Trustee's reasonable business judgment, is in the best interests of the Estates, and should be approved. Such provisions will have no adverse impact on any Creditors, Equity Interest holders or any other parties in interest in the Bankruptcy Cases, are non-material in nature, and are consistent with applicable law. To the extent that the agreed language constitutes a modification to the Plan, given the non-material nature of the provisions, no further or additional notice is required and there is no need to provide Creditors and Equity Interest holders within impaired voting classes under the Plan with an opportunity to change their votes. Accordingly, all votes cast on the Plan should apply with equal force to the Plan to the extent modified by this agreed language, and all references to the Plan herein shall be to the Plan as modified thereby, except to the extent expressly stated otherwise.

        **c.      Letter Objection**

1.      Mr. Suchman in the Letter Objection states that "I therefore protest ratification of the Debtor's Plan as it presently stands, unless changes are made to include a distribution of recoveries by the Liquidating Trust, against third parties connected to the Debtor (Provident

Royalties, LLC), to all Preferred Stockholders, whether they Opted-In or Opted-Out." Letter Objection, at p. 2. The Court finds that this Letter Objection misconstrues the terms of the Plan, which provide that beneficiaries of the PR Liquidating Trust shall share pro rata in the net proceeds of all causes of action belonging to the Debtors' Estates. Accordingly, the Plan already provides for all beneficiaries of the trust to share in distributions of net proceeds from the trust's claims against third parties based on their relationships with the Debtors, as opposed to personal claims of individual holders of Preferred Stock Interests assigned to the trust.

2.    The Court further finds that Mr. Suchman did not appear at the Confirmation Hearing to press or advance his objection, and for all of the foregoing reasons, the Letter Objection should be overruled.

### d.    Medallion Objection

1.    With respect to the Medallion Objection, the Medallion Trustee filed a proof of claim in the Bankruptcy Cases to assert a Claim on behalf of Medallion against the Debtors in the amount of $1,046,844.00 (the "Medallion Claim"). The Medallion Trustee has also filed his *Motion To Allow Filing of Late Claims and to Deem Claims Timely Filed* (the "Medallion Claim Motion"), requesting that the Court deem the Medallion Claim timely-filed and Allowed. *See* Docket No. 766. In connection therewith, the Medallion Trustee asserts that the Plan is not proposed in good faith, and not fair and equitable, for failing to provide for the payment of a class of late filed claims prior to the receipt by any junior classes of any interests in property under the Plan.

2.    The Trustee and the Creditors Committee filed objections to the Medallion Claim Motion and the Medallion Claim (the "Medallion Objections") because, among other reasons, the

Medallion Claim was filed more than five months late, the Debtors' books and records do not reflect any obligation to Medallion and Medallion owes the Debtors for auction overpayments and proceeds never returned by Medallion. *See* Docket Nos. 762, 803 and 804. The Medallion Claim Motion and Objection are currently scheduled for hearing on June 30, 2010, at 9:00 a.m., prevailing Central time.

3.    The Court has reviewed the Medallion Objection, the record of the Bankruptcy Cases and the arguments of counsel, and finds that it is not well-taken. Under section 502(b)(9), the Bankruptcy Code dictates the disallowance of late filed claims, unless timely allowed by an order of the Court pursuant to applicable law. Section 727(a) of the Bankruptcy Code, providing for a priority of distributions including tardily filed claims, does not apply in Chapter 11 cases. Therefore, the Medallion Trustee's objections fail because the Bankruptcy Code dictates that the Medallion Trustee presently has no Claim in these Bankruptcy Cases, and that the issues related to the Medallion Claim and Objection are a matter of whether Medallion is entitled to relief from the Court allowing the late-filed Medallion Claim. The Medallion Trustee's position is also tantamount to invalidly asserting that every chapter 11 bankruptcy plan must provide for a class of late filed claims if such plan can pay 100% of allowed, timely filed general unsecured claims, which is not required by the Bankruptcy Code. In the event that the Medallion Claim is Allowed as a valid Claim, the Plan provides fair and appropriate treatment therefor. Accordingly, the Plan does not violate section 1123(a)(1) or (a)(7) of the Bankruptcy Code and the Medallion Objection is without merit.

**e.    The QA3 Objection**

1.    Sections 4.6.3 and 4.6.4 of the Plan contain a mechanism allowing for individual

holders of Preferred Stock Interests to assign to the PR Liquidating Trust their personal claims arising against third parties in connection with such holders' dealings with the Debtors (the "Personal Claims") by voting for the Plan and not exercising an "Opt-Out Election" (the "Assignment Mechanism").

2.      In the QA3 Objection, QA3 asserts that the Plan does not comply with the good faith requirements of section 1129(a)(3) of the Bankruptcy Code, based on arguments that: (i) the Assignment Mechanism purportedly impermissibly alters state law; (ii) any suit(s) involving the Personal Claims purportedly have no reasonable hope for success; and (iii) the purported "numerous miscellaneous problems" with the Plan and the Assignment Mechanism weigh in favor of rejecting the Plan.  *See* QA3 Objection, at p. 2.

3.      Upon consideration of the QA3 Objection, the record of the Bankruptcy Cases and the arguments of counsel, the Court finds that the QA3 Objection is not well-taken.  First, QA3 lacks standing to object to the Plan.  QA3 is not a creditor or equity interest holder, and is appearing as a defendant or potential defendant of Personal Claims.  QA3's assertions regarding the potential impact of the Plan, through the Assignment Mechanism, of its defensive arguments, positions and costs, are not the type of direct pecuniary interests or sufficient stake in the confirmation of the Plan itself that can confer standing to be heard with respect thereto.

4.      Assuming, in the alternative, that QA3 does have standing to object to the Plan, the Court finds that QA3's arguments regarding the invalidity or unworkability (or the extent thereof) of the Assignment Mechanism under applicable bankruptcy law are incorrect.  QA3's arguments regarding the invalidity or unworkability (or the extent thereof) of the Assignment Mechanism under applicable nonbankruptcy law generally, also do not appear to be correct.

Moreover, even if QA3 is correct that the Assignment Mechanism may give rise to partial or dispositive defenses to any assigned Personal Claim, such assertions are properly to be made at defense of such actions and do not impair the feasibility or confirmability of the Plan, which clearly appears likely to be successfully implemented even if all assigned Personal Claims fail.

### f.    The Billitteri Objection

1.    The Billitteri Objection is asserted by a group of putative class action plaintiffs comprised of a group of holders of Preferred Stock Interests.  The Billitteri Objection is based primarily on the Plan's inclusion of the Assignment Mechanism, and the Billitteri Group's arguments at hearing were confined to such issues and whether the Plan was proposed and solicited in good faith.  Specifically, the Billitteri Group contends that the inclusion of the Assignment Mechanism in the Plan violates applicable nonbankruptcy law, is ineffective, and would not maximize the value of those claims or the recoveries of holders of Preferred Stock Interests pursuant to the Plan.  The Billitteri Group further asserts that the Assignment Mechanism is structured in a misleading and inappropriate way, in that it is allegedly not a "complete assignment," and provides for an "automatic" assignment of claims that allegedly has confused holders of Class 6 Preferred Stock Interests into assigning their claims unintentionally.

2.    Additionally, the Billitteri Group complains of the fact that the Plan was solicited upon holders of Class 6 Preferred Stock Interests through, among other things, a letter of Paul Haavik, chairman of the Investors Committee, served upon holders of Class 6 Preferred Stock Interests ("Haavik Letter").  *See* Plan Proponents Exh. 5.  The Billitteri Group asserts that the Haavik Letter constitutes improper, unapproved and misleading solicitation materials, and questions whether Mr. Haavik is suitable to participate in the administration of the PR Liquidating

Trust.

3.      The Billitteri Group further contends that these issues and the structure of the Assignment Mechanism and PR Liquidating Trust are intended to operate, or do operate, to create a "slush fund" for the Liquidating Trustee and his professionals.  Relatedly, the Billitteri Group contends that the PR Liquidating Trust is structured in a way that causes beneficiaries of the trust who did not assign their Personal Claims to the trust to subsidize the cost of pursing the Personal Claims of assigning beneficiaries of the Trust, while non-assigning beneficiaries do not stand to share in the proceeds from such assigned Personal Claims.  As a result, the Billitteri Group contends that the Plan was intended to force beneficiaries into assigning their Personal Claims or agreeing to an unfair treatment, and that it does unfairly discriminate against or unfairly treat beneficiaries of the trust who did not assign their Personal Claims to the Trust.

4.      Accordingly, the Billitteri Group objects to the Plan as violating sections 1123(a)(4), 1129(a)(1) and 1129(a)(3) of the Bankruptcy Code.

5.      Upon consideration of the Billitteri Objection, the record of the Bankruptcy Cases and the arguments of counsel, the Court finds that the Billitteri Group is entirely comprised of holders of Preferred Stock Interests who exercised the Opt-Out Election and declined to assign their Personal Claims to the PR Liquidating Trust.  Accordingly, the Billitteri Group has no standing to assert the interests of those who did elect to assign their Personal Claims to the PR Liquidating Trust, or those who may have been misled into assigning their Personal Claims to the trust.

6.      Assuming that the Billitteri Group does have standing to assert such arguments, for the same reasons as set forth with respect to these same arguments advanced by QA3, the

Court finds that they should be overruled.  The Court further finds that the Haavik Letter was properly disclosed to the Court and to parties in interest by the Plan Proponents prior to the commencement of the hearing on the Disclosure Statement, and was expressly approved by this Court in the Disclosure Statement Order to be included among Solicitation Materials. Accordingly, any objection that it is improper or misleading should be overruled.

7.    The Court further finds that all holders of Class 6 Preferred Stock Interests are treated identically under the Plan.  Each and every such holder is granted a beneficial interest in the PR Liquidating Trust and stands to receive pro rata distributions on the net proceeds of all Estate assets vested in, or transferred to, the trust.  Additionally, each and every such holder is given the option to assign their Personal Claims to the trust by voting for the Plan, as well as the option to vote in favor of the Plan while refusing or declining to assign their Personal Claims to the trust.  Accordingly, no discrimination within Class 6 is present.  Additionally, the Plan Proponents have reasonably established that the Liquidating Trustee shall have the flexibility and discretion to make equitable distributions to address issues related to the allocation of trust expenses, and that Trust Oversight Committee and Court supervision and oversight are available to address issues concerning use and consumption of Trust Assets, including but not limited to for the compensation of the Liquidating Trustee and his professionals.  Therefore, the Court finds that the Plan was not formulated with the intention of creating any "slush fund", but rather was formulated, negotiated, solicited, and proposed in good faith and with honest intentions by all Plan Proponents.

8.    With respect to Mr. Haavik, the Court finds that the personal issues he may have had unrelated to this case raised by the Billitteri Group do not sufficiently establish that he lacked

good faith or suitability with respect to any duties or actions performed as chair of the Investors

Committee, or would lack good faith or suitability to serve on the Trust Advisory Committee.

Based upon the record, it appears that Mr. Haavik has selflessly and appropriately performed his

duties as chair of the Investors Committee, and the Court finds credible his testimony that he

participated in the formulation, negotiation, solicitation and proposal of the Plan in good faith,

with honest intentions, and with the belief that the Plan represents the best option available to

maximize the return to holders of Preferred Stock Interests, as a whole, on account of their equity

interests, and therefore is in their best interests.  No direct evidence whatsoever of any improper

conduct by Mr. Haavik relating to his position as chairman or his activities in these Bankruptcy

Cases was presented.  Accordingly, any objection that Mr. Haavik was not a proper person to

have solicited the Plan and communicated with investors thereon, assisted in its formulation,

and/or is suitable to participate in the administration of the PR Liquidating Trust, or that he

otherwise has acted in bad faith with respect to the Plan, should be overruled.

9.    Notwithstanding the foregoing, the Court finds that the Billitteri Group has

asserted two objections, which the Plan Proponents agreed to address in the order confirming the

Plan.  First, the Billitteri Group objects to the Plan based on a perceived ambiguity in the

injunction provided for in the Plan (section 11.3), and its potential to interfere with the

prosecution of Personal Claims that have not been assigned to the PR Liquidating Trust.  The

Billitteri Group also objects to the Plan to the extent the retention of jurisdiction provision

specified in the Plan could conceivably interfere with jurisdiction of, or venue before, other courts

with respect to Personal Claims that have not been assigned to the PR Liquidating Trust.  As to

both of these objections, the Court accepts the proposed resolution of same by the Plan

Proponents, under which they will work cooperatively with the Billitteri Group to draft protective language in the confirmation order to resolve these concerns.

### III.  FINDINGS OF FACT – CONFIRMATION REQUIREMENTS

### A.    Section 1129(a)(1) Requirements

1.      In determining whether the Plan complies with applicable provisions of the Bankruptcy Code, the Court considered, among other things, whether the Plan complies with sections 1122 and 1123 of the Bankruptcy Code, as follows:

      a.      **11 U.S.C. §§ 1122, and 1123(a)(1)**

2.      The Plan classifies Claims and Equity Interests in the Bankruptcy Cases as follows:

<u>Unclassified Claims</u>

Allowed Administrative Claims
Allowed Priority Tax Claims

<u>Classified Claims</u>

Class 1:  Allowed Secured Claims
Class 2:  Allowed Priority Non-Tax Claims
Class 3:  Allowed General Unsecured Claims
Class 4:  Sinclair Claim
Class 5:  Allowed Subordinated Claims
Class 6:  Preferred Stock Interests
Class 7:  Other Equity Interests

*See* Plan Proponents Exh. 1, §§ 2.2, 2.3.  As reflected by the above, the Plan designates Classes for all Equity Interests and Claims, with the exception of Claims of a kind specified in section 507(a)(2) of the Bankruptcy Code (Administrative Claims under the Plan) and section 507(a)(8) of the Bankruptcy Code (Priority Tax Claims under the Plan).

3.      With respect to such classification, each Claim or Equity Interest within a particular Class under the Plan is substantially similar to all of the other Claims or Equity Interests

within such Class, and there are significant differences between the legal nature and/or priority of

the Claims or Equity Interests in each particular Class and the Claims or Equity Interests in each

other Class.  Specifically: (i) Sinclair Claims (Class 4) are properly classified separately from other

claims because of prior Court approved settlements in these Bankruptcy Cases specifying unique

treatment for the Sinclair Entities; and (ii) Preferred Stock Interests are properly classified

separately from Other Equity Interests because of the different facts relating to how such interest

arise, the holders and their relationships with the Debtors, and due to their legal and contractual

rights regarding their relative priorities.

4.      Accordingly, the Plan satisfies 11 U.S.C. §§ 1122, and 1123(a)(1).

**g.      11 U.S.C. § 1123(a)(2)**

1.      The Plan clearly identifies whether each particular Class is impaired under the Plan.

*See* Plan Proponents Exh. 1, §§ 4.1.4, 4.2.3, 4.3.4, 4.4.3, 4.5.3, 4.6.2 and 4.7.2.  Unclassified

Claims and Class 2 have been identified as unimpaired under the Plan. *Id.*, § 4.2.3.  Accordingly,

the Plan satisfies 11 U.S.C. § 1123(a)(2).

**h.      11 U.S.C. § 1123(a)(3)**

1.      Article 4 of the Plan specifies the treatment provided for each Class of Claims and

Equity Interests under the Plan, including each Class of Claims and each Class of Equity Interests

that is impaired under the Plan.  *See* Plan Proponents Exh. 1,§§ 4.1.1, 4.2.1, 4.3.1, 4.4.1, 4.5.1,

4.6.1 and 4.7.1.  Accordingly, the Plan satisfies 11 U.S.C. § 1123(a)(3).

**i.      11 U.S.C. § 1123(a)(4)**

1.      Under the Plan, all Claims and Equity Interests within each particular Class will

receive identical treatment unless the holder of a particular Claim has agreed to different treatment

of its Claim. *See* Plan Proponents Exh. §§ 4.1.1, 4.2.1, 4.3.1, 4.4.1, 4.5.1, 4.6.1 and 4.7.1. *See also* Paragraph 41 *herein*. Accordingly, the Plan satisfies 11 U.S.C. § 1123(a)(4).

> **j.    Adequate Means for the Plan's Implementation (11 U.S.C. § 1123(a)(5))**

1.    The Plan sets out all necessary provisions for its implementation, including, without limitation:

- Providing for the appointment of the Trustee as the Plan Agent as of the Effective Date, with the duties and responsibilities of administering the Plan on behalf of the Post-Confirmation Debtors administering claims objections, making distributions to Allowed Claims, and transferring Trust Assets to the PR Liquidating Trust as well as coordinating with the Liquidating Trustee. Based upon the Trustee's qualifications, particular familiarity with these Bankruptcy Cases, and disinterestedness, the appointment of the Trustee as Plan Agent and, in such capacity, as the Post-Confirmation Debtors' sole officer and director, is consistent with the best interests of Creditors and Equity Interest holders and with public policy with respect to the selection of Plan fiduciaries following confirmation;

- Providing for the creation, funding and administration of the PR Liquidating Trust, specifying which Assets of the Estate will be transferred to the PR Liquidating Trust and which will re-vest in the Post-Confirmation Debtors, and ensuring adequate funding to the trust through, *inter alia*, the Initial Trust Assets;

- Providing for the retention or extinguishment of Liens, and the treatment of retained Liens, as applicable (including as modified with respect to the Dallas County Objection);

- Providing for Milo Segner, Jr., ("Segner") to serve as the initial Liquidating Trustee of the PR Liquidating Trust. Segner, who was selected by the Investors Committee to serve as the Liquidating Trustee, is known in the local legal community to have considerable experience in bankruptcy, bankruptcy trustee duties and administration, and the administration of post-confirmation trusts. Mr. Segner does not hold or represent any interest adverse to the Estates or the PR Liquidating Trust to be established, and accordingly, is a disinterested person. Accordingly, the selection of Segner as the initial Liquidating Trustee of the PR Liquidating Trust is consistent with the best interests of the Preferred Stock Interest holders and with public policy with respect to the selection of post-confirmation trustees;

- Providing for the compensation of the Plan Agent, the Liquidating Trustee, reimbursement to the members of the Trust Oversight Committee, reserving and providing for adequate funds to satisfy such obligations, and providing for appropriate oversight of fees and expenses by the Liquidating Trustee (regarding the Plan Agent and his professionals), the Committees, if still in existence, the

Trust Oversight Committee and this Court, as well as providing the Trust Oversight Committee and this Court supervisory oversight over the use of Trust Assets by the PR Liquidating Trust. Furthermore, the Plan Proponents have disclosed the proposed compensation to the Plan agent and Liquidating Trustee;

- Providing for the wind-up and termination of the Post-Confirmation Debtors, and in connection therewith, for adequate means to accomplish same, and for the governance of the Post-Confirmation Debtors by the Plan Agent as the Post-Confirmation Debtors' sole officer and director until he is discharged from his duties as Plan Agent, at which time such responsibility shall transfer to the Liquidating Trustee. Based upon the Trustee's and Segner's experience and disinterestedness, as set out above, the appointment of the Trustee and Segner as the Post-Confirmation Debtors' sole officer and director is consistent with the best interests of Creditors and Equity Interest holders and with public policy with respect to the selection of officers and directors of a debtor following confirmation. Section 6.3 of the Plan further provides for the modification of the Debtors' articles, bylaws, operating agreements and other governing documents to the extent necessary to effectuate such provisions of the Plan;

- Providing for all Other Equity Interests in the Debtors to be cancelled, extinguished and otherwise rendered null, void and of no further force or effect, and for the PR Liquidating Trust to be the sole owner of 100% of the stock, member or other equity interests of the Post-Confirmation Debtors pursuant to the Plan;

- Providing for the specification and retention of all causes of action by the Estates and the vesting of same in the PR Liquidating Trust, all defenses and objections to Preferred Stock Interests or against their holders, the standing of the Liquidating Trustee to prosecute same, and the jurisdiction of this Court to resolve any subsequent issues that may arise with respect to the Plan.

Plan Proponents Exh. 1, §§4.1, 4.2, 4.7.1 and art. 6.

### k.    11 U.S.C. § 1123(b)

1.    The Plan also contains several non-mandatory, permissible provisions, including

the following:

- Providing for the specification and retention of all Causes of Action by the Estates and the vesting of same in the PR Liquidating Trust, the standing of the Liquidating Trustee to prosecute same, and the jurisdiction of this Court to resolve any subsequent issues that may arise with respect to the Plan;

- Providing for the disposition of executory contracts and unexpired leases and the Allowance of rejection damage Claims through the rejection on the Effective Date of all executory contracts and unexpired leases under section 365 of the Bankruptcy Code (with the exception of contracts and leases which have

previously been accepted or rejected and contracts and leases that have been made the subject of a motion to assume filed by the start of the Confirmation Hearing), and a bar date for the submission of claims arising pursuant to such rejections;

•  Specifying how Distributions under the Plan will be made, including, without limitation, providing for interim distribution procedures, withholding provisions, reserve requirements, and undeliverable/unclaimed and disputed distribution procedures, all of which are reasonable and appropriate mechanisms to accomplish same;

•  Establishing procedures for the disposition of Disputed Claims, including, without limitation, the establishment of a deadline for objections to Claims, post-confirmation Claim filing and amendment requirements, and authorization and other provisions for the settlement of Disputed Claims;

•  Providing for the enforcement of protections afforded by section 1141 of the Bankruptcy Code, exculpation protections afforded by section 1125 of the Bankruptcy Code, and numerous miscellaneous provisions which are appropriate and designed to facilitate the overall consummation of the Plan; and

•  Provisions acknowledging and providing for this Court's continuing post-confirmation jurisdiction to the fullest extent permitted by law.

Plan Proponents Exh. 1, arts. 6-9, 11 and 12.  All of the above-referenced provisions of the Plan, as well as provisions not specified above, are appropriate and not inconsistent with applicable provisions of the Bankruptcy Code.  Procedures set forth therein are reasonable and appropriate and have been considered and proposed in the exercise of the Plan Proponents' individual and collective, sound business judgment.  Accordingly, all of the above-referenced provisions, as well as provisions not specified above, are in the best interests of the Debtors and their Creditors and Equity Interest holders, and are permissible provisions of the Plan pursuant to 11 U.S.C. § 1123(b).

2.    Additionally, sections 4.6.3 and 4.6.4 of the Plan set out the specific Assignment Mechanism provisions to allow individual holders of Preferred Stock Interests to assign Personal Claims to the PR Liquidating Trust.  The Plan Proponents proposed these provisions for the purpose of gathering claims held by Preferred Stock Interests holders arising under a same or

similar set of facts and against the same or similar defendants for the collective benefit of those holders of Preferred Stock Interests who choose to assign their Personal Claims to the PR Liquidating Trust, and maximize litigation efficiencies, including by diminishing or negating the duplicative cost of pursuing claims on a piecemeal basis.    As previously found by this Court herein, such provisions, in combination, provide for the identical, non-discriminatory, equalized treatment of Class 6 Preferred Stock Interests because all such holders are given the same election for treatment within Class 6.

3.    In connection with the above, the Court has considered whether provisions related to the assignment of third-party claims, including the assignment of Personal Claims held by holders of Preferred Stock Interests, to the PR Liquidating Trust and the Opt-Out Election are permissible under nonbankruptcy law.    The provisions are appropriate.    In this regard, every holder of a Preferred Stock Interest has been provided notice of the applicable provisions and given the opportunity to make the Opt-Out Election.    Of the holders of Preferred Stock Interests who submitted timely Ballots, 3,651 of such holders chose to assign their Personal Claims to the PR Liquidating Trust, comprising 51,279 shares in the Debtors.    The holders of Preferred Stock Interests assigning their Personal Claims are identified on the Plan Proponents' Exhibit 10, which is incorporated herein by reference and made a part of these findings as if fully set forth.    Plan Proponents Exhs. 8 (Declaration of Jane Sullivan of Epiq Bankruptcy Solutions, LLC, Certifying Voting on, and Tabulation of, Ballots Accepting and Rejecting the Fourth Amended Consolidated Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code Proposed for Provident Royalties, LLC, et al. ("Sullivan Declaration"), at Exhibit D), 10 (List of Preferred Stock Interest Holders Assigning Personal Claims).

4.     The assignment of third-party claims is consensual in nature.  The Assignment Mechanism under the Plan provides for a complete assignment of such Personal Claims. Furthermore, because the assignments of Personal Claims of holders of Preferred Stock Interests in Class 6 who elect to not make the Opt-Out Election are made directly to the PR Liquidating Trust on the Effective Date, such Personal Claims never become property of the Estates pursuant to section 541 of the Bankruptcy Code.  It is the right of each holder of a Preferred Stock Interest in Class 6 to freely assign such Personal Claims in accordance with such holder's personal preference, and the provisions of the Plan relating to such Assignment are appropriate and reasonably tailored to achieve the proposed result.

5.     For all of the reasons set out above, inclusion of the Assignment Mechanism and related provisions providing for the assignment of Personal Claims by Preferred Stock Interest holders wishing to do so, is both reasonable and appropriate, and not inconsistent with applicable provisions of the Bankruptcy Code or in violation of public policy.

## B.     11 U.S.C. § 1129(a)(2)

1.     In considering whether the Plan Proponents have complied with all applicable provisions of the Bankruptcy Code, the Court finds, based on the record of these Bankruptcy Cases, including, but not limited to, the testimony of Jane Sullivan Vice President of Epiq, that Plan Proponents did not solicit any votes on the Plan until after approval and transmittal of the Solicitation Package and such solicitation was made using only the information approved by this Court for same.  *See* Plan Proponents Exhs. 3 (Disclosure Statement Order), 6 (Daloia Affidavit), 8 (Sullivan Declaration).  The Plan Proponents complied with all applicable notice requirements in relation to the Plan, including the requirements of the Bankruptcy Code and the Disclosure

Statement Order.  The Plan proponents have satisfied the provisions of section 1129(a)(2).

## C.    11 U.S.C. § 1129(a)(3)

1.    As supported by the Trustee's, Mr. Phelps' and Mr. Haavik's testimony, as well as the representations of counsel, this Court finds, based on the record in these Bankruptcy Cases, that the Plan was formulated by the Plan Proponents with the legitimate and honest objectives of administering and resolving all Claims and Equity Interests in the Bankruptcy Cases, providing for the fair and equitable treatment of such Claims and Equity Interests consistent with the priorities established under the Bankruptcy Code, and maximizing the recoveries by creditors and equity interest holders in the Estates by paying all Allowed Claims in full and maximizing the value of the Trust Assets for the benefit of the PR Liquidating Trust's beneficiaries.  Such intentions and purpose are legitimate and appropriate, and as previously found hereinabove, the Plan Proponents have not proposed the Plan by any means forbidden by law.  The Plan Proponents have satisfied the provisions of section 1129(a)(3).

## D.    11 U.S.C. § 1129(a)(4)

1.    Pursuant to retention, interim fee procedure, and interim fee application orders in the Bankruptcy Cases, payments to court-approved professionals are subject to final approval of the Court.  In this regard, the Plan establishes a procedure for the submission of applications for the allowance of Administrative Claims and Professional Fee Claims.  *See* Plan, § 3.1.

2.    With respect to administration of the Plan, the compensation payable to the Plan Agent has been specified as his existing customary rates applied to other clients.  *See* Plan, § 6.1.3. The Plan authorizes the Plan Agent and Liquidating Trustee to employ such professionals as they deem necessary to assist them in the administration of the Plan and PR Liquidating Trust,

and to compensate such professionals and reimburse such professionals for out-of-pocket expenses incurred by them on reasonable terms agreed to by the Plan Agent / Liquidating Trustee. The Plan provides for appropriate oversight by the Liquidating Trustee, and Committees, if still in existence, of the compensation payable to the Liquidating Trustee and his professionals, as well as for oversight by the Trust Advisory Committee over the compensation payable to the Plan Agent and his professionals.    In both cases, Court oversight to resolve any disputes over the reasonableness of such compensation is provided for as well.  *See* Plan, §§ 6.1.3(a), 6.2.7 & Exh. 1 (PR Liquidating Trust Documentation), §§ 3.9-3.10.

3.    Accordingly, the Plan satisfies the provisions of 11 U.S.C. § 1129(a)(4).

## E.    11 U.S.C. § 1129(a)(5)

1.    As previously found herein, the proposed Plan Agent (Mr. Roossien) and proposed Liquidating Trustee (Mr. Segner) disclosed in the Bankruptcy Cases are disinterested, well qualified, and their respective appointments are consistent with the best interests of Creditors and Equity Interest holders and with public policy.  All remaining officers and directors of the Debtors will be deemed terminated.  *See* Plan, §§ 6.2.6, 6.3.1.

2.    The identity of the initial Trust Advisory Committee members has also been disclosed: Mr. Paul Haavik, Gary Holcombe and Eduardo A. Garcia.  All such initial Trust Advisory Committee members are holders of Preferred Stock Interests or official representatives of such holders.  As previously found herein, Mr. Haavik is suited to serve on the Trust Advisory Committee, is otherwise disinterested, and his appoint thereto is consistent with the best interests of Creditors and Equity Interest holders and with public policy.  As existing members of the Investors Committee holding or representing holders of substantial Preferred Stock Interests,

Gary Holcombe and Eduardo A. Garcia are also suited to serve on the Trust Advisory Committee, are otherwise disinterested, and their appoint thereto is consistent with the best interests of Creditors and Equity Interest holders and with public policy. No agreements have been made for the employment or retention by the Post-Confirmation Debtors, Plan Agent or Liquidating Trustee of any insiders of the Debtors. Accordingly, the Plan satisfies the provisions of 11 U.S.C. § 1129(a)(5).

**F.     11 U.S.C. §§ 1129(a)(6), (a)(13), (a)(14) and (a)(15)**

1.      The Debtors do not charge any rates that are subject to the approval of any governmental regulatory commission and will not prospectively operate. Accordingly, the Plan satisfies the provisions of 11 U.S.C. § 1129(a)(6).

2.      None of the provisions within section 1129(a)(13), (a)(14) and (a)(15) are applicable to the Debtors because the Debtors do not provide for retiree benefits, were not subject to section 1114 in these Bankruptcy Cases, and the Debtors are not individuals or otherwise subject to any domestic support obligations.

**G.     11 U.S.C. §§ 1129(a)(7) and 1129(a)(10)**

1.      There are six impaired Classes under the Plan – Class 1 (Allowed Secured Claims), Class 3 (Allowed General Unsecured Claims), Class 4 (Sinclair Claim), Class 5 (Allowed Subordinated Claims), Class 6 (Preferred Stock Interests), and Class 7 (Other Equity Interests).

2.      Classes 1, 3, and 6 have overwhelmingly voted to accept the Plan. With respect to Class 1, 88.89% in number and 93.27 % in amount voted to accept the Plan. *See* Sullivan Affidavit Declaration, Exhs. A-C. With respect to Class 3, 100% of voters and amounts voted to accept the Plan. *See id*. With respect to Class 6, 90.9% of the voting shares (61,856 shares)

voted in favor of the Plan. *See Id.*

3.    The sole creditor of Class 4, the Sinclair Entities, did not vote on the Plan. But, pursuant to an announcement to the Court on the record at the Confirmation Hearing, the Sinclair Entities consent to their treatment under the Plan. Moreover, because their treatment is dictated by a settlement previously approved by the Court, and because they receive the Sinclair Allocation under the Plan, the Sinclair Entities would not receive more under a chapter 7 liquidation, as of the Effective Date of the Plan, than as provided in the Plan.

4.    Because there were no creditors in Class 5, this is a null Class and, therefore, without impact on acceptance or rejection of the Plan.

5.    Finally, with respect to Class 7 (Other Equity Interests), because holders of Other Equity Interests will not receive or retain any property under the Plan, Class 7 is deemed to have rejected the Plan as a matter of law. Class 7 is the most junior Class under the Plan, and the Court finds that Preferred Stock Interest holders have legal and contractual priority over the holders of interests in Class 7, and that holders of Other Equity Interests would receive nothing under a Chapter 7 liquidation.

6.    Accordingly, the Plan satisfies the provisions of 11 U.S.C. §§ 1129(a)(7) and 1129(a)(10).

## H.    11 U.S.C. §§ 1129(a)(8) and 1129(b)

1.    Class 2 (Allowed Priority Non-Tax Claims) and unclassified Claims are not impaired. Thus, as previously determined in the Disclosure Statement Order and as a matter of law, these Classes are deemed to have accepted the Plan under the Bankruptcy Code. *See* Disclosure Statement Order, at p. 6; 11 U.S.C. § 1126(f).

2.      The Sinclair Entities, the sole creditor of Class 4, consent to their treatment under the Plan, and accordingly the Court finds that the Plan is fair and equitable to them.

3.      Class 5 is a null Class, and therefore is not relevant to these considerations.

4.      As to rejecting Class 7, pursuant to both the Plan and Disclosure Statement, the Plan Proponents reserved the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code. *See* Plan, § 5.4.  The Trustee credibly testified at the Confirmation Hearing that the treatment afforded to Class 7 under the Plan was dictated by the priority scheme established under the Bankruptcy Code and the legal and contractual rights of Other Equity Interests relative to Preferred Stock Interests, and it is therefore nondiscriminatory.  Additionally, there is no provision for the holders of any junior interests or Classes, of which there are none, to receive or retain any interest in property under the Plan.  The Plan is fair and equitable to Class 7 and, therefore, should be confirmed pursuant to section 1129(b) of the Bankruptcy Code with respect to Class 7.

## I.      Section 1129(a)(9) Requirements

1.      The Plan provide for the payment in full, in Cash, of all Allowed Administrative Claims and Allowed Priority Tax Claims within 15 days of the later of the Effective Date of the Plan or the date on which such Claim is Allowed.  *See* Plan, §§ 3.1.4 and 3.2.  Except for Administrative Claims and Priority Tax Claims, there are no other Claims of a kind specified in section 507(a)(1)-(8) of the Bankruptcy Code in the Bankruptcy Cases.

2.      In the case of Allowed Priority Tax Claims (Claims of a kind specified in section 507(a)(8) of the Bankruptcy Code and Secured Claims which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8) but for the

secured status of the Claims), such Claims are treated under the Plan in a manner that is not less

favorable than the most favored non-priority unsecured Claim provided for by the Plan because all

such claims are proposed to be promptly satisfied in full.  *Compare* Plan, §§ 3.2, 4.1, and 4.3.

Accordingly, the Plan satisfies the provisions of 11 U.S.C. § 1129(a)(9).

**J.      Section 1129(a)(11) Requirements**

1.      The Plan provides for the liquidation of all remaining Assets of the Estates,

including through operation of the PR Liquidating Trust, and the evidence on the record

establishes that there are ample funds and means for its implementation and the satisfaction of

Claims and Equity Interests as provided in the Plan.   *See* Plan, §§ 6.2, 8.2, and 8.3.  Hence,

confirmation of the Plan is not likely to be followed by the need for any further non-contemplated

liquidation or for further reorganization of either the Post-Confirmation Debtors or the PR

Liquidating Trust.  Accordingly, the Plan satisfies the provisions of 11 U.S.C. § 1129(a)(11).

**K.      Section 1129(a)(12) Requirements**

1.      The Debtors are current in the payment of all fees payable under 28 U.S.C. § 1930

and the Plan provides for the payment of all such fees which are hereafter to be paid by the Plan

Agent as they become due pending his final transfer of Trust Assets to the PR Liquidating Trust

and thereafter paid by the Liquidating Trustee as they become due.  *See* Plan, § 3.3.  Accordingly,

the Plan satisfies the provisions of 11 U.S.C. § 1129(a)(12).

**L.      Section 1129(a)(16) Requirements**

1.      The Plan provides that the Plan Agent and Liquidating Trustee shall cause the Post-

Confirmation Debtors and PR Liquidating Trust to comply with all applicable federal, state and

local laws, and it provides that transfers of property under the Plan will be made in accordance

with all applicable provisions of non-bankruptcy law that govern the transfer of property. Initial vesting of Assets upon the Effective Date in the Post-confirmation Debtors and the PR Liquidating Trust are specified in the Plan in compliance with applicable federal, state and local laws, Accordingly, the Plan satisfies the provisions of 11 U.S.C. § 1129(a)(16).

## M.    Section 1129(c) and (d) Requirements

1.    There is no competing plan proposed in these Bankruptcy Cases.

2.    No governmental unit has requested the Court to make a determination in accordance with section 1129(d) of the Bankruptcy Code. Nevertheless, as supported by the Trustee's testimony, the Plan was not formulated by the Plan Proponents for the principal purpose of avoiding any taxes or avoiding the requirements of any securities laws. Rather, this Court has found that the Plan was proposed with honest intentions towards the maximization of recoveries to creditors and equity interest holders. Accordingly, the Plan satisfies the provisions of 11 U.S.C. § 1129(c) and 1129(d).

## IV.    **FINDINGS OF FACT – CONDITIONS PRECEDENT TO CONFIRMATION**

1.    Section 11.1 of the Plan sets out a number conditions precedent to confirmation of the Plan. *See* Plan, § 10.1  In relation to such conditions: (i) each of the Plan Proponents has approved the form of the Confirmation Order, as reflected by their respective approvals of the form and substance of the proposed Confirmation Order submitted to the Court; (ii) the Sinclair Settlement has been approved by the Court; and (iii) each of the Plan Proponents and other Persons who have solicited acceptances and rejections of the Plan have acted in good faith and in compliance with the Disclosure Statement Order and the provisions of the Bankruptcy Code, and are not liable on account of such solicitation or participation for violation of any applicable law,

rule or regulation governing the solicitation of acceptances and rejections of the Plan.

Accordingly, all of the Plan's conditions to confirmation have been satisfied.

## V. CONCLUSIONS OF LAW

**A.      Jurisdiction and Venue**

1.      The Court has jurisdiction over the Bankruptcy Cases and over proceedings to consider confirmation of the Plan pursuant to 28 U.S.C. §§ 157 and 1334.   The confirmation proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   Venue of the Bankruptcy Cases and of the confirmation proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.      Approval of Plan Modifications**

1.      To the extent the Dallas County Order Provisions constitute a modification of the Plan, such modification is approved and made a part of the Plan pursuant to section 1127 of the Bankruptcy Code and Fed. R. Bankr. P. 3019(a).   In this regard, (i) the modification does not cause the Plan to fail to meet the requirements of section 1122 and 1123 of the Bankruptcy Code, and (ii) because the modification is non-material and does not adversely change the treatment of any Claims or Equity Interests under the Plan, (a) no further or additional notice is required under section 1125 of the Bankruptcy Code and, hence, the Plan Proponents are deemed to have complied with section 1125 in relation to the modification, and (b) all votes cast in relation to the Plan should apply with equal force to the Plan, as modified, with no opportunity provided to Creditors to change their votes.   Based upon the foregoing, all further references herein to the Plan shall be in reference to the Plan, as modified by the Dallas County Order Provisions.

**C.      All of the Requirements of Section 1129(a) of the Bankruptcy Code, With the Exception of Section 1129(a)(8), Have Been Met**

1.      The Plan complies with all applicable provisions of the Bankruptcy Code and, therefore, the requirements of section 1129(a)(1) of the Bankruptcy Code have been met.  All other provisions of the Plan that are not mandated by section 1123(a) of the Bankruptcy Code are appropriate and not inconsistent with applicable provisions of the Bankruptcy Code, and therefore permissible under section 1123(b) of the Bankruptcy Code.

2.      The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code in proposing and pursuing approval of the Plan, thereby satisfying the requirements of section 1129(a)(2) of the Bankruptcy Code.  In this regard, the Plan Proponents complied with section 1125 of the Bankruptcy Code in soliciting votes on the Plan and complied with all applicable notice requirements in relation to the confirmation process, including, without limitation, Fed. R. Bankr. P. 2002, 3016-3019, 6004, 6006, 9007, 9014 and 9019.

3.      The Plan Proponents proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code.

4.      Any payment made or to be made by the Debtors, the Trustee, the Plan Agent or the Liquidating Trustee for services or for costs and expenses in or in connection with the Bankruptcy Cases, or in connection with the Plan and incident to the Bankruptcy Cases, has been approved by, or is subject to the approval of, the Court as reasonable.  In this regard, the Plan's provisions for the compensation and reimbursement of expenses of the Plan Agent and the Liquidating Trustee and professionals employed by them are reasonable and approved.  There have been no such payments made, nor are any such payments to be made, by the Trustee, the Committees or any person acquiring property under the Plan other than the Plan Agent and

Liquidating Trustee, and there are no securities to be issued under the Plan. Based upon the foregoing, the requirements of section 1129(a)(4) of the Bankruptcy Code have been met.

5.     The Plan Proponents have disclosed the identity and affiliations of the individual proposed to serve, after confirmation of the Plan, as (i) the sole director and officer of the Post-Confirmation Debtors (the Trustee as Plan Agent); and (ii) the Liquidating Trustee of the PR Liquidating Trust (Segner), which appointments are consistent with the interests of Creditors and Equity Interest holders and with public policy. The Plan does not provide for a voting trustee of the Post-Confirmation Debtors. Based upon the foregoing, the requirements of section 1129(a)(5)(A) of the Bankruptcy Code have been met.

6.     The Plan does not provide for, and there are no existing agreements for, the employment or retention of any insiders by the Post-Confirmation Debtors. Therefore, the requirements of section 1129(a)(5)(B) of the Bankruptcy Code have been met or are otherwise inapplicable.

7.     The requirements of section 1129(a)(6) of the Bankruptcy Code are inapplicable because the Debtors do not charge any rates that are subject to the approval of any governmental regulatory commission.

8.     Each holder of a Claim or Equity Interest in an impaired Class of Claims or Equity Interests (as applicable) has either accepted the Plan or will receive or retain under the Plan on account such Claim or Equity Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date. No Class of Secured Claims has made the election under section 1111(b)(2) of the Bankruptcy Code. Based upon the

foregoing, the requirements of section 1129(a)(7) of the Bankruptcy Code have been met.

9.       Class 2 of the Plan has accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes 1 and 3 of the Plan have accepted the Plan pursuant to section 1126(c) of the Bankruptcy Code.  Class 6 of the Plan has accepted the Plan pursuant to section 1126(d) of the Bankruptcy Code.  Class 7 of the Plan has rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Based upon the foregoing, the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

10.      The Plan provides that with respect to each Claim of a kind specified in section 507(a)(2) of the Bankruptcy Code (an Administrative Claim under the Plan), the holder of such Claim will receive Cash equal to the Allowed amount of such Claim by not later than 15 days after the Effective Date of the Plan (or the date of Allowance, if later), unless the holder has agreed to a different treatment of the Claim.  There are no Claims in the Bankruptcy Cases of a kind specified in section 507(a)(3) of the Bankruptcy Code.  Based upon the foregoing, the requirements of section 1129(a)(9)(A) of the Bankruptcy Code have been met.

11.      The Plan provides that with respect to each Claim of a kind specified in section 507(a)(4) or 507(a)(5) of the Bankruptcy Code (a Priority Non-Tax Claim under the Plan), the holder of such Claim will receive Cash equal to the Allowed amount of such Claim by not later than 15 days after the Effective Date of the Plan (or the date of Allowance, if later), unless the holder has agreed to a different treatment of the Claim.  There are no Claims in the Bankruptcy Cases of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code.  Based upon the foregoing, the requirements of section 1129(a)(9)(B) of the Bankruptcy Code have been met.

12.     The Plan provides that with respect to each Claim of a kind specified in section 507(a)(8) of the Bankruptcy Code and any Secured Claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8) but for the secured status of that Claim (in each case, a Priority Tax Claim under the Plan), the holder of such Claim will receive Cash equal to the Allowed amount of such Claim by not later than 15 days after the Effective Date of the Plan (or the date of Allowance, if later), unless the holder has agreed to a different treatment of the Claim.  The manner in which such Claims will be satisfied under the Plan is not less favorable than the most favored non-priority unsecured claim provided for by the Plan.  Based upon the foregoing, the requirements of section 1129(a)(9)(C) and (D) of the Bankruptcy Code have been met.

13.     Five impaired Classes of Claims (Classes 1, 3, and 6) have accepted the Plan, determined without including any acceptance of the Plan by an insider.  Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code have been met.

14.     Except as proposed in the Plan, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Post-Confirmation Debtors or the PR Liquidating Trust as successor to the Debtors under the Plan. Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been met.

15.     The Debtors are current in the payment of all fees payable under 28 U.S.C. § 1930 and the Plan provides for the payment of all such fees which are hereafter assessed by the Plan Agent and then the Liquidating Trustee as they become due.  Accordingly, the requirements of section 1129(a)(12) of the Bankruptcy Code have been met.

16.     None of the provisions of sections 1129(a)(13), 1129(a)(14) or 1129(a)(15) of the

Bankruptcy Code are applicable to the Debtors.

17.    All transfers of property of the Plan will be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust, thereby satisfying the requirements of section 1129(a)(16) of the Bankruptcy Code.

## D.  All Applicable Requirements of Section 1129(b) Of the Bankruptcy Code Have Been Met

1.    The Plan does not discriminate unfairly, and is fair and equitable, with respect to Classes 4 and 7, the only impaired Classes under the Plan that did not accept the Plan. Accordingly, the requirements of section 1129(b) of the Bankruptcy Code have been met.

## E.  Sections 1129(c)-(e) Are Inapplicable

1.    There are no other proposed Chapter 11 plans in the Bankruptcy Cases. Therefore, section 1129(c) of the Bankruptcy Code is inapplicable.

2.    No party in interest that is a governmental unit has made a request for the Court to not confirm the Plan under section 1129(d) of the Bankruptcy Code.  Therefore, section 1129(d) of the Bankruptcy Code is inapplicable.

3.    None of the Bankruptcy Cases is a "small business case" as defined within the Bankruptcy Code.  Therefore, section 1129(e) of the Bankruptcy Code is inapplicable.

## F.  Objections Overruled

1.    Pursuant to the foregoing findings of the Court with respect to the Objections, each and every such Objection and basis asserted therein, are overruled, except to the extent expressly otherwise stated herein or resolved by the agreement of the parties.  Such exceptions are comprised of the Plan Proponents' agreement to the Dallas County Order Provisions, the

treatment of the Jolley claim, and protective language to be mutually agreed by the Plan

Proponents and Billitteri Group to resolve the Billitteri Group's concerns regarding sections 11.3

and 13.1 of the Plan.

## G. Confirmation of the Plan

1.       Confirmation of the Plan is in the best interests of the Estates, Creditors and

Equity Interest holders, and the Plan Proponents have satisfied all of the requirements for

confirmation of the Plan under section 1129 of the Bankruptcy Code.  Accordingly, the Plan will

be confirmed and approved in all respects by separate order.

*Approved as to Form and Content:*

By:  /s/ Kevin M. Lippman
    Joseph J. Wielebinski
    Texas Bar No. 21432400
    Kevin M. Lippman
    Texas Bar No. 00784479
    Kathleen M. Patrick
    Texas Bar No. 24037243
    **MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile:  (214) 855-7584

*Attorneys for Dennis L. Roossien, Jr.,*
*Chapter 11 Trustee*

By:  /s/ Holland N. O'Neil
    Holland N. O'Neil
    Texas Bar No. 14864700
    Daniel C. Scott
    Texas Bar No. 24051316
    **GARDERE WYNNE SEWELL LLP**
1601 Elm Street
3000 Thanksgiving Tower
Dallas, Texas 75201
Telephone: (214) 999-4607
Facsimile:  (214) 999-3607

*Attorneys for Official Committee of*
*Unsecured Creditors*

By: /s/ Michael R. Rochelle
    Michael R. Rochelle
    Texas Bar No. 17126700
    Christopher B. Harper
    Texas Bar No. 09025500
    **ROCHELLE McCULLOUGH LLP**
    325 N. St. Paul, Suite 4500
    Dallas, Texas 75201
    Telephone: (214) 953-0182
    Facsimile:  (214) 953-0185

    *Attorneys for Official Investors Committee*