Joseph J. Wielebinski
Texas Bar No. 21432400
Kevin M. Lippman
Texas Bar No. 00784479
Lee J. Pannier
Texas Bar No. 24066705
**MUNSCH HARDT KOPF & HARR, P.C**.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile:  (214) 855-7584

***Attorneys for Dennis L. Roossien, Jr.,***
***Chapter 11 Trustee***

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PROVIDENT ROYALTIES, LLC, *et al.*, | § | Case No. 09-33886-HDH |
| | § | (Jointly Administered) |
| Debtors. | § | |

## FEE APPLICATION COVER SHEET

Fee Application:              Third and Final

Applicant:                   Munsch Hardt Kopf & Harr, P.C.

Time Period:                 July 2, 2009 through June 14, 2010

Capacity:                    Attorneys for Dennis L. Roossien, Jr.,
                             Chapter 11 Trustee

Retainer Received:           None


***Compensation Period (February 1, 2010 through June 14, 2010)***

Total Fees:                  $1,337,255.50

Total Expenses:              $49,924.87

Fees and Expenses Paid Per
Modified Fee Procedure Order:                    $1,119,729.27

Unpaid Amount:                                   $267,451.10

Hours Billed (attorneys and paralegals):         4,186.20

Professional Rate Detail:
    Highest Attorney Rate:                   $535.00/hour
    Highest Paralegal Rate:                  $235.00/hour

Blended Hourly Rate (excludes paralegals):       $343.81/hour

Blended Hourly Rate (including paralegals):       $319.45/hour


### _Engagement Period (July 2, 2009 through June 14, 2010)_

Total Fees:                                      $2,919,663.50

Total Expenses:                                  $107,613.86

Total Fees and Expenses:                         $3,027,277.36

Fees Approved on an Interim Basis:               $2,324,796.80

Expenses Approved on Interim Basis:              $107,613.86

Total Fees and Expenses Paid:                    $2,759,826.26

Hours Billed (attorneys and paralegals):         9,070.20

Blended Hourly Rate (excluding paralegals):      $342.90/hour

Blended Hourly Rate (including paralegals):       $321.90/hour

Total Voluntary Fee Reductions:                  $25,743.50

Total Voluntary Expense Reductions:              $2,311.66

Dated:  August 12, 2010  **MUNSCH HARDT KOPF & HARR, P.C.**

3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile:  (214) 855-7584

By:  /s/ Kevin M. Lippman
      Joseph J. Wielebinski
      Texas Bar No. 21432400
      Kevin M. Lippman
      Texas Bar No. 00784479
      Lee J. Pannier
      Texas Bar No. 24066705

*Attorneys for Dennis L. Roossien, Jr.*
*Chapter 11 Trustee*

Joseph J. Wielebinski
Texas Bar No. 21432400
Kevin M. Lippman
Texas Bar No. 00784479
Lee J. Pannier
Texas Bar No. 24066705
**MUNSCH HARDT KOPF & HARR, P.C**.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

*Attorneys for Dennis L. Roossien, Jr.,*
*Chapter 11 Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PROVIDENT ROYALTIES, LLC, *et al.*,[1] | § | Case No. 09-33886-HDH |
| | § | (Jointly Administered) |
| Debtors. | § | |

## THIRD AND FINAL APPLICATION OF MUNSCH HARDT KOPF & HARR, P.C., ATTORNEYS FOR DENNIS L. ROOSSIEN, JR., CHAPTER 11 TRUSTEE, FOR THE ALLOWANCE OF FEES AND EXPENSES

TO THE HONORABLE HARLIN D. HALE, U.S. BANKRUPTCY JUDGE:

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON SEPTEMBER 15, 2010, AT 2:30 P.M. (CST), AT THE UNITED STATES BANKRUPTCY COURT, NORTHERN DISTRICT OF TEXAS, EARLE CABELL BUILDING, 1100 COMMERCE STREET, 14TH FLOOR, DALLAS, TEXAS 75242-1496.**

---

[1]  The Debtors include the following:  Provident Royalties, LLC, Case No. 09-33886; Provident Operating Company, LLC, Case No. 09-33893; Somerset Lease Holdings, Inc., Case No. 09-33892; Somerset Development, Inc., Case No. 09-33912; Provident Energy 1, LP, Case No. 09-33888; Provident Resources 1, LP, Case No. 09-33887; Provident Energy 2, LP, Case No. 09-33894; Provident Energy 3, LP, Case No. 09-33899; Shale Royalties II, Inc., Case No. 09-33889; Shale Royalties 3, LLC, Case No. 09-33891; Shale Royalties 4, Inc., Case No. 09-33890; Shale Royalties 5, Inc., Case No. 09-33895; Shale Royalties 6, Inc., Case No. 09-33896; Shale Royalties 7, Inc., Case No. 09-33898; Shale Royalties 8, Inc., Case No. 09-33900; Shale Royalties 9, Inc., Case No. 09-33902; Shale Royalties 10, Inc., Case No. 09-33901; Shale Royalties 12, Inc., Case No. 09-33903; Shale Royalties 14, Inc., Case No. 09-33905; Shale Royalties 15, Inc., Case No. 09-33904; Shale Royalties 16, Inc., Case No. 09-33906; Shale Royalties 17, Inc., Case No. 09-33913; Shale Royalties 18, Inc., Case No. 09-33907; Shale Royalties 19, Inc., Case No. 09-33908; Shale Royalties 20, Inc., Case No. 09-33910; Shale Royalties 21, Inc., Case No. 09-33909; and Shale Royalties 22, Inc., Case No. 09-33911.

---

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT ON OR BEFORE SEPTEMBER 6, 2010, WHICH IS TWENTY-FOUR (24) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Munsch Hardt Kopf & Harr, P.C. ("Munsch Hardt"), counsel for Dennis L. Roossien, Jr., the

Chapter 11 Trustee (the "Trustee") for the bankruptcy estates of Provident Royalties, LLC and its

affiliates (collectively, the "Debtors"), files its third and final application (the "Application"),

pursuant to sections 330, 331 and 503(b) of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for the allowance of fees and expenses for the period February 1, 2010 through June 14, 2010

(the "Compensation Period") and for the allowance, on a final basis, of Munsch Hardt's fees and

expenses that were previously allowed by the Court on an interim basis, respectfully stating as

follows:

## I.  JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334.

2. The Application constitutes a core proceeding within the meaning of 28 U.S.C. §

157(b)(2).

## II.  PRELIMINARY STATEMENT[2]

3. As the Court is aware, the Bankruptcy Cases were not the "run-of-the-mill"

Chapter 11 cases. Shortly after the Bankruptcy Cases were commenced, the SEC commenced an

---

[2] Capitalized terms used in the Preliminary Statement and not previously defined in this Application shall have the meaning ascribed to such terms in subsequent sections in this Application.

action in the District Court against the Debtors, among other defendants, pursuant to which the

District Court took exclusive jurisdiction and possession of the assets of the Debtors, appointed a

receiver for the estates of the Debtors, and dismissed all professionals retained by the Debtors.

The impact of the District Court Order on the Bankruptcy Cases, not surprisingly, caused several

parties, including the Creditors' Committee, to have serious concerns about the administration of

the Debtors' assets and how various stakeholders would be paid.   These concerns were

compounded by the fact that the Debtors had filed a few days after the Petition Date a motion to

sell a substantial portion of their assets to Sinclair Oil & Gas Company and a motion to approve

a settlement with Sinclair Oil & Gas Company and Sinclair Finance Company.  The settlement

motion addressed the very large unsecured claim asserted by Sinclair Finance Company against

certain of the Debtors, which was one of the largest claims in the Bankruptcy Cases.

4.    Instead of litigating the unique issues raised by the entry of the District Court

Order and because the pending sale motion and pending settlement motion required immediate

attention to determine the reasonableness and appropriateness of the relief requested in the

motions, Munsch Hardt initiated negotiations with the Creditors' Committee, the ad hoc

committee of preferred shareholders (which ultimately became the Investors' Committee), the

SEC, and the U.S. Trustee on developing a "protocol" with respect to the Bankruptcy Cases.  The

intent of the "protocol" was to address many of the concerns raised by various constituencies

with respect to the effect of the District Court Order, without the need for litigation, and permit

the Bankruptcy Cases and the receivership of the Debtors' estates to co-exist.   Although the

negotiations were painstaking and time-consuming, the product of the negotiations was the

Protocol.  The approval of the Protocol by this Court and the District Court avoided expensive

and protracted litigation, which likely would have included an appeal by the losing party, and

permitted the Trustee and the Committees to focus their attention on maximizing the recovery to

creditors and investors.

5.    During the Engagement Period, Munsch Hardt played a key facilitating,

negotiating and documenting role in achieving the relatively successful results in the Bankruptcy

Cases.  For example, Munsch Hardt expended significant time in connection with the sale of the

Debtors' assets.  Such efforts included working closely with the Trustee's other professionals

(including Raymond James & Associates, Inc. ("Raymond James") and Bridge Associates LLC

("Bridge")) and the Committees to develop a strategy to maximize the return on the Debtors'

assets, negotiating the terms and provisions of the asset purchase agreements with various

entities purchasing the assets, and addressing numerous closing issues related to those asset

sales.  To date, approximately $218,410,000.00 in value has been realized from the sale of the

Debtors' assets.[3]  Additionally, Munsch Hardt worked closely with the Committees in developing

an exit strategy for the Debtors to leave Chapter 11, which resulted in the filing of the "Gateway

Motions," the Disclosure Statement, the Plan, and the Plan solicitation procedures motion.[4]

Munsch Hardt was the primary drafter of most of the foregoing pleadings and it took the lead

role in seeking approval of each pleading (with the exceptions of the 3013 Motion, which the

Creditors' Committee presented to the Court).  This undertaking included addressing numerous

legal issues asserted by a group of class action attorneys.  Under the Plan, the proceeds of the

asset sales were used to pay all allowed unsecured claims in full with interest, which was by no

---

[3] This includes the credit bid in the amount of $150 million by Sinclair Oil & Gas Company for certain assets.

[4] The "Gateway Motions" were (i) the *Motion to Determine Classes of Creditors and Equity Security Holders Pursuant to Fed. R. Bankr. P. 3013* (the "3013 Motion") [Docket No. 579], (ii) the *Joint Motion for Approval of Distribution Settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 583], and (iii) the *Trustee's Motion for Approval of Settlement and Compromise with Sinclair Oil & Gas Company and Sinclair Finance Company Pursuant to Bankruptcy Rule 9019* [Docket No. 584].

means anticipated at the outset of the Bankruptcy Cases, and substantially fund the PR Liquidating Trust for the benefit of holders of preferred stock interests.

6.      Moreover, during the Engagement Period, Munsch Hardt expended significant time analyzing the numerous claims filed against the Debtors and defenses to these claims. Over nine thousand nine hundred (9,900) proofs of claim were filed in the Bankruptcy Cases, collectively asserting amounts owed in excess of $750 million. Munsch Hardt closely worked with Bridge to significantly reduce both the number of claims against the Debtors and the amount of those claims. Because much of this work was performed prior to confirmation of the Plan, a vast majority of the Debtors' creditors have already been paid in full. In fact, over $11 million has been distributed to creditors with allowed claims under the Plan. As of the filing of this Application, approximately twenty-five (25) disputed claims remain, and most of those claims are either the subject of claim objections or settlement motions pending before the Court.

7.      Munsch Hardt achieved the results in the Bankruptcy Cases in an efficient and effective manner. Although several attorneys at Munsch Hardt worked on the numerous issues that arose in the Bankruptcy Cases, a core group of four (4) attorneys performed more than half of Munsch Hardt's work in these cases. These attorneys were heavily involved in all aspects of the Bankruptcy Cases during the Engagement Period, and (with the assistance of their colleagues as appropriate and the efforts of the other professionals retained in the Bankruptcy Cases) were able to confirm the Plan prior to the one year anniversary of the commencement of the Bankruptcy Cases. Significantly, Munsch Hardt's blended hourly rates are the lowest among the law firms whose retention in these Bankruptcy Cases were approved by this Court, which reflects Munsch Hardt's efficient use of its staff and work allocation.

## III.  BACKGROUND

8.      On June 22, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby initiating the above-styled and jointly administered bankruptcy cases (the "Bankruptcy Cases").

9.      On July 1, 2009, the Securities and Exchange Commission (the "SEC") filed its *Complaint*[5] with United States District Court for the Northern District of Texas (the "District Court") against the Defendants and the Relief Defendants (as defined in the Complaint).  The SEC sought, among other things, the appointment of a receiver over the property and the estates (the "Receivership Estates") of the following Defendants and Relief Defendants:  Provident Royalties, LLC; Provident Asset Management, LLC; Provident Energy 1, LP; Provident Resources 1, LP; Provident Energy 2, LP; Provident Energy 3, LP; Shale Royalties II, Inc.; Shale Royalties 3, LLC; Shale Royalties 4, Inc.; Shale Royalties 5, Inc.; Shale Royalties 6, Inc.; Shale Royalties 7, Inc.; Shale Royalties 8, Inc.; Shale Royalties 9, Inc.; Shale Royalties 10, Inc.; Shale Royalties 12, Inc.; Shale Royalties 14, Inc.; Shale Royalties 15, Inc.; Shale Royalties 16, Inc.; Shale Royalties 17, Inc.; Shale Royalties 18, Inc.; Shale Royalties 19, Inc.; Shale Royalties 20, Inc.; Provident Operating Company, LLC; Somerset Lease Holdings, Inc.; Somerset Development, Inc.; Shale Royalties 21, Inc.; and Shale Royalties 22, Inc. (collectively, the "Receivership Defendants").  The Receivership Defendants are, for all practical purposes, the Debtors in the Bankruptcy Cases and, therefore, the Receivership Estates are also, for all practical purposes, the Debtors' bankruptcy estates (the "Estates").

---

[5] The "Complaint" is that certain pleading filed by the SEC with the District Court, thereby commencing Civil Case No. 3-09-CV-1238-L (the "SEC Action").  The Complaint is supported by the SEC's *Memorandum of Law in Support of Motion for Ex Parte Order Freezing Assets and Other Emergency Relief, in Support of Motion to Appoint Receiver and Order to Show Cause Why a Preliminary Injunction Should Not Issue*, which the SEC filed the same day as the Complaint.

10.     The following day, the Honorable Sam A. Lindsay granted the SEC the relief it requested in the SEC Action and entered the *Order Granting Temporary Restraining Order, Appointing Receiver, Freezing Assets, Staying Litigation, Prohibiting the Destruction of Documents and Accelerating Discovery* (the "District Court Order"), thereby, in effect, appointing the Trustee as the receiver of the Debtors.  Thereafter, the Trustee, represented by Munsch Hardt, proceeded to act as the trustee for the Estates.

11.     On July 17, 2009, the Bankruptcy Court and the District Court each entered the *Stipulation Approving Protocol for the Receiver to Serve as Chapter 11 Trustee in the Bankruptcy Cases* (the "Protocol").[6]  The Protocol validated the District Court Order by formally appointing the Trustee as the Chapter 11 trustee in the Bankruptcy Cases pursuant to section 1106 of the Bankruptcy Code and, at the same time, allowing the Trustee to continue to act as the receiver in the SEC Action, in accordance with the District Court Order and subject to the conditions set forth in the Protocol.

12.     On July 20, 2009, the U.S. Trustee's Office appointed the Trustee to serve as the Chapter 11 trustee in the Bankruptcy Cases.  By order [Docket No. 119] entered on the same day, the Trustee's appointment was confirmed and approved by the Court.

13.     The Trustee selected Munsch Hardt as his counsel and, on August 6, 2009, filed his *Application for Authority to Employ Munsch Hardt Kopf & Harr, P.C., Nunc Pro Tunc to July 2, 2009* [Docket No. 167].  On September 17, 2009, the Court entered its *Order Approving Chapter 11 Trustee's Application for Authority to Employ Munsch Hardt Kopf & Harr, P.C.*

---

[6] The Protocol was agreed to, accepted, and approved in all respects by the receiver, the SEC, the Official Committee of Unsecured Creditors, the Official Investors Committee (at such time being an ad hoc committee), the Honorable Sam A. Lindsay, and the Honorable Harlin D. Hale.

*Nunc Pro Tunc to July 2, 2009* [Docket No. 293] (the "<u>Employment Order</u>"), a true and correct copy of which is attached hereto as **<u>Exhibit A</u>**.[7]

14.     On June 10, 2010, the Court entered its *Order Confirming Fourth Amended Consolidated Plan of Liquidation for Debtors' Estates Under Chapter 11 of the United States Bankruptcy Code* [Docket No. 860] (the "<u>Confirmation Order</u>"), confirming the *Fourth Amended Consolidated Plan of Liquidation for Debtors' Estates Under Chapter 11 of the United States Bankruptcy Code* [Docket No. 748] (the "<u>Plan</u>").   The confirmed Plan provides, among other things, for the liquidation of the Debtors' remaining assets.

15.     On June 14, 2010, the Plan became effective (the "<u>Effective Date</u>").

## IV.   SUMMARY OF THE APPLICATION

### A.     The Compensation Period

16.     Munsch Hardt requests final approval of its fees in the amount of $1,337,255.50 and expenses in the amount of $49,924.87, for a total of $1,387,180.37, incurred during the Compensation Period, and that the Court authorize the Plan Agent (as defined in the Plan) to pay Munsch Hardt its unpaid fees and expenses in the amount of $267,451.10.   Munsch Hardt's invoices providing detailed time entries and the summary of the expenses incurred are attached hereto as **<u>Exhibit B</u>**.   A summary of Munsch Hardt's monthly invoices for the Compensation Period, payments received, and the amount remaining unpaid is attached hereto as **<u>Exhibit C-1</u>**.

17.     During the Compensation Period, Munsch Hardt's attorneys and paraprofessionals expended 4,186.20 hours in the representation of the Trustee.   An itemization of services rendered by timekeeper for the Compensation Period is attached hereto as **<u>Exhibit D-1</u>**.   A

---

[7] The exhibits to the Application have been filed with the Court, but are not being served on the parties receiving service of the Application via United States mail.  Upon written request, Munsch Hardt will provide the exhibits to a requesting party at no charge.

breakdown reflecting the various project areas in which Munsch Hardt expended time during the Compensation Period is set forth below and in the summary attached hereto as **Exhibit E-1.**

18.     During the Compensation Period, Munsch Hardt incurred actual expenses in the amount of $49,924.87.   A summary of the expenses incurred by Munsch Hardt during the Compensation Period is attached hereto as **Exhibit F-1**.

## B.     The Engagement Period

19.     During the period July 2, 2009 through June 14, 2010 (the "Engagement Period"), Munsch Hardt's fees totaled $2,919,663.50 and its expenses totaled 107,613.86.   A recap of the fees for the Engagement Period is attached hereto as **Exhibit C-2** and a summary of services rendered by timekeeper during the Engagement Period is attached hereto as **Exhibit D-2**.   A table summarizing all time expended in project areas during the Engagement Period is attached hereto as **Exhibit E-2**.   Additionally, a summary of the expenses incurred by Munsch Hardt during the Engagement Period is attached hereto as **Exhibit F-2**.

20.     Munsch Hardt requests that its fees and expenses previously allowed by this Court on an interim basis, totaling $1,640,096.99, be allowed on a final basis.

21.     Munsch Hardt has not received a retainer in connection with its representation of the Trustee.

## V.   PRIOR APPLICATIONS

## A.     Interim Compensation Procedures

22.     On July 2, 2009, the Debtors filed their *Motion to Establish Procedures for Monthly and Interim Compensation and Reimbursement of Expenses for Case Professionals* [Docket No. 64] (the "Interim Compensation Procedures Motion").   On July 31, 2009, the Court entered its order granting the Interim Compensation Procedures Motion [Docket No. 152] (the

"Interim Compensation Procedures Order").    Among other things, the Interim Compensation

Procedures Order allows the Debtors to pay, absent an objection, eighty percent (80%) of the

monthly fees and one hundred percent (100%) of the monthly expenses of all professionals

retained in the Bankruptcy Cases, including professionals retained by the Official Committee of

Unsecured Creditors (the "Creditors' Committee") or the Official Investors' Committee (the

"Investors' Committee," and together with the Creditors' Committee, the "Committees").

Additionally, the Interim Compensation Procedures Order requires each professional retained in

the Bankruptcy Cases to file interim fee applications beginning on November 2, 2009, and

thereafter at approximately four (4) month intervals.

23.    On September 4, 2009, the Trustee filed his *Motion to Modify the Order Granting*

*Motion to Establish Procedures for Monthly and Interim Compensation and Reimbursement of*

*Expenses for Case Professionals* [Docket No. 255] (the "Modified Interim Compensation

Procedures Motion").    The Modified Interim Compensation Procedures Motion sought Court

approval to include the Trustee, as well as his attorneys and financial advisors, as "Professionals"

for the purpose of the Interim Compensation Procedures Order and to authorize the Trustee and

his professionals to seek interim compensation pursuant to the procedures therein.    On

September 16, 2009, the Court entered an order [Docket No. 295] (the "Modified Interim

Compensation Procedures Order") granting the Modified Interim Compensation Procedures

Motion.

**B.    First Interim Fee Application**

24.    On November 3, 2009, Munsch Hardt filed its *First Interim Application of*

*Munsch Hardt Kopf & Harr, P.C., Attorneys for Dennis L. Roossien, Jr., Chapter 11 Trustee, for*

*the Allowance of Fees and Expenses for the Period July 2, 2009 through September 30, 2009*

[Docket No. 393] (the "First Interim Fee Application").  Thereafter, on November 18, 2009, Munsch Hardt filed a Supplement [Docket No. 428] to its First Interim Fee Application, which adjusted the fee amount due to an incorrect billing rate for one of its attorneys.

25.     During the time period encompassed in the First Interim Fee Application, Munsch Hardt rendered a total of 1,660.70 hours of professional services on behalf of the Trustee, resulting in fees of $551,156.00 (100%) and reimbursable expenses of $15,070.90 (100%), totaling $566,226.90.

26.     An order approving the First Interim Fee Application, as supplemented, was entered on December 9, 2009, and Munsch Hardt's fees and reimbursable expenses have been paid in accordance with the Interim Fee Procedures Order and the Modified Interim Fee Procedures Order.

**C.     Second Interim Fee Application**

27.     On February 26, 2010, Munsch Hardt filed its *Second Interim Application of Munsch Hardt Kopf & Harr, P.C., Attorneys for Dennis L. Roossien, Jr., Chapter 11 Trustee, for the Allowance of Fees and Expenses for the Period October 1, 2009 through January 31, 2010* [Docket No. 588] (the "Second Interim Fee Application").

28.     During the time period encompassed in the Second Interim Fee Application, Munsch Hardt rendered a total of 3,223.30 hours of professional services on behalf of the Trustee, resulting in fees of $1,031,252.00 (100%) and reimbursable expenses of $42,618.09 (100%), totaling $1,073,870.09.

29.     An order approving the Second Interim Fee Application was entered on March 25, 2010, and Munsch Hardt's fees and reimbursable expenses have been paid in accordance with the Interim Fee Procedures Order and the Modified Interim Fee Procedures Order.

# VI.   REQUEST FOR ALLOWANCE

## A.   Standards for Allowance of Fees and Expenses

30.     Pursuant to section 330 of the Bankruptcy Code, a bankruptcy court may allow reasonable compensation for actual, necessary professional services rendered by a professional in the case, determining the reasonableness of the compensation requested based upon the nature, extent and value of such services.  Similarly, a bankruptcy court may allow the reimbursement of actual, necessary expenses incurred by a professional in connection with the rendition of such services.  Specifically, section 330 provides in pertinence:

> (1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a . . . professional person employed under section 327 . . . –
>
> > (A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney and by any paraprofessional person employed by any such person; and
> >
> > (B) reimbursement for actual, necessary expenses.
>
> . . .
>
> (3) In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> > (A) the time spent on such services;
> >
> > (B) the rates charged for such services;
> >
> > (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code];
> >
> > (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> >
> > (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skills and expertise in the bankruptcy field; and

(F) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy Code].

11 U.S.C. § 330(a)(1) and (3).

31.    In considering the reasonableness of fees requested under section 330, the Fifth Circuit has traditionally used the lodestar method, whereby the loadstar is calculated by multiplying the number of hours reasonably spent on the work by the prevailing hourly rate in the community and then adjusted upward or downward based upon the factors listed in section 330(a)(3) and in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[8]  *See In re Cahill*, 428 F.3d 536, 539-40 (5th Cir. 2005); *see also Peele v. Cunningham (In re Texas Securities, Inc.)*, 218 F.3d 443, 445 (5th Cir. 2000); *Donaldson Lufkin & Jenrette Secs. Corp. v. National Gypsum Co. (In re National Gypsum Co.)*, 123 F.3d 861, 863 (5th Cir. 1997); *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298-99 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977).

**B.    Application of Standards to Munsch Hardt's Request for Fees**

32.    Munsch Hardt requests final allowance of its fees incurred during the Compensation Period in the amount of $1,337,255.50.  Such fees are reasonable and supported under the factors set forth in section 330(a)(3) and *Johnson*.

*(a)    Time Spent on Services and Nature of Services Rendered*

33.    During the Compensation Period, Munsch Hardt expended a total of 4,186.20 hours in the representation of the Trustee.  Except for categories with four hours or less, the

---

[8]    The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues addressed; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.

professional services rendered on behalf of the Trustee are summarized below by task description. A detailed description of the services performed during the Compensation Period may be found in **Exhibit B** attached hereto.

**Case Administration**. Munsch Hardt spent 47.10 hours under this category for total fees of $13,561.50. This category includes, among other things, the time spent by Munsch Hardt to: review the docket; calendar hearing dates and other critical deadlines; file monthly operating reports; address the audit inquiry from the Nebraska Department of Banking and Finance; confer with the SEC regarding the status of the Bankruptcy Cases; and provide information to the U.S. Trustee on the Shale Synergy bankruptcy cases.

**Employment of Professionals**. Munsch Hardt spent 7.90 hours under this category for total fees of $2,317.00. This category includes, among other things, the time spent by Munsch Hardt to: prepare the application, affidavit and order relating to the employment of Warner Norcross as special counsel for the Chapter 11 Trustee.

**Fee Applications.** Munsch Hardt spent 102.50 hours under this category for total fees of $31,848.50. This category includes, among other things, the time spent by Munsch Hardt to: address issues concerning Fox Rothchild's final fee application; prepare and serve the monthly fee statements for Munsch Hardt and the Trustee; prepare for and attend the hearing on the second interim fee applications for Munsch Hardt and the Trustee; assist Bridge with the finalization and filing of its second interim fee application; and review of monthly fee statements served by other professionals to insure adherence with the U.S. Trustee's Guidelines.

**Committee Communications.** Munsch Hardt spent 6.50 hours under this category for total fees of $2,703.00. This category includes, among other things, the time spent by Munsch Hardt to: review and transmit the Debtors' weekly cash activity report to the Committees; and discuss case issues with the Committees.

**Creditor/Investor Inquiries.** Munsch Hardt spent 205.30 hours under this category for total fees of $43,370.50. This category includes, among other things, the time spent by Munsch Hardt to: respond to inquiries from numerous creditors and/or investors relating to the Bankruptcy Cases.

**Automatic Stay Issues**. Munsch Hardt spent 67.40 hours under this category for total fees of $23,133.50. This category includes, among other things, the time spent by Munsch Hardt to: review, prepare pleadings in response to, and attend hearings on motions filed by former directors and officers (the "D&Os") of the Debtors seeking to use proceeds of the Debtors' D&O Policies to pay defense costs.

**Employee Issues**. Munsch Hardt spent 24.90 hours under this category for total fees of $8,459.00. This category includes, among other things, the time spent by Munsch Hardt to: prepare all necessary documents for the termination of the employees' 401(k) plan;

confer with the third party administrator relating to 401(k) distributions and termination of the plan; analyze and revise the notice of termination of the Debtors' health care plan; and respond to multiple inquiries from employees regarding distributions from the 401(k) plan.

**Asset Analysis**.  Munsch Hardt spent 6.90 hours under this category for total fees of $2,077.50.  This category includes, among other things, the time spent by Munsch Hardt to: address issues concerning the proof of claim filed by Shale Royalties 5, Inc. in the Crusader bankruptcy case, including the objection filed to that claim.

**Asset Sales/Disposition**.  Munsch Hardt spent 351.00 hours under this category for total fees of $106,703.50.  This category includes, among other things, the time spent by Munsch Hardt to: confer with various parties interested in the Debtors' assets; develop a comprehensive approach to liquidate the Debtors' assets to maximize their value; negotiate asset purchase agreements; prepare and prosecute sale motions; and negotiate and prepare numerous documents needed for the closing of the Court-approved sale transactions.  In performing the foregoing, Munsch Hardt worked closely with Raymond James and Bridge.  The state of the Debtors' records made negotiating and conveying the Debtors' oil and gas interest a challenge.

**Tax Issues.**  Munsch Hardt spent 139.30 hours under this category for total fees of $53,448.50.  This category includes, among other things, the time spent by Munsch Hardt to: review data related to the 2007 audit of Shale Royalties II; respond to the IRS regarding same; attend negotiation conferences with the IRS regarding the tax dispute; conduct extensive research on numerous tax issues, including the tax effect of substantive consolidation, the corporate existence doctrine, liquidating trust tax consequences, tax deduction for intercompany loss, margin tax issues, and bad debt deduction for worthlessness of intercompany receivables; and coordinate the preparation of the 2010 Texas Combined Franchise Tax Report of Provident Royalties, LLC, the 2008 U.S. Corporation Income Tax Return, and the 2008 Oklahoma Corporate Income Tax Return of Shale Royalties corporations, and file those returns with the appropriate taxing authorities.

**Claims Analysis/Objections**.  Munsch Hardt spent 1,073.80 hours under this category for total fees of $359,646.00.  This category includes, among other things, the time spent by Munsch Hardt to: analyze the numerous claims filed against the Debtors and the potential defenses to many of those claims; prepare and update status charts for all claims; discuss the claim analysis with the Committees; negotiate with several creditors agreements concerning the allowed amounts of their respective claims; and prepare and successfully prosecute several objections to claims..  Among the claims analyzed and partially addressed by Munsch Hardt during this period was the approximately $25 million claim filed by the Jordan River Liquidating Trust.  The efforts of Munsch Hardt during the Compensation Period not only significantly reduced the asserted claims against the Debtors, it permitted distributions to creditors to commence within days of the Effective Date of the Plan.

**Other Contested Matters**.  Munsch Hardt spent 23.70 hours under this category for total fees of $6,853.50.  This category includes, among other things, the time spent by Munsch Hardt to: review pending state court lawsuits to determine whether such actions should be removed to this Court; and prepare and file the Trustee's third motion to extend deadlines to remove actions, together with a request for expedited hearing on same.

**D&O Claims.**  Munsch Hardt spent 311.90 hours under this category for total fees of $78,575.00.  This category includes, among other things, the time spent by Munsch Hardt to: continue the process of electronically storing documents relevant to claims against the D&Os; investigate potential claims against the D&Os; research various legal issues; interview witnesses; prepare for and attend the deposition of John Herndon; and continue to draft the complaint against certain of the Debtors' former D&Os.

**Other Litigation**.  Munsch Hardt spent 568.40 hours under this category for total fees of $169,695.00.  This category includes, among other things, the time spent by Munsch Hardt to: prepare and file the Trustee's motions for removal and motions to transfer venue of the PFM and Penny Enterprises lawsuits from State Court to this Court; and continue its investigation into potential claims against certain parties, including various landmen used by the Debtors.

**Business Operations**.  Munsch Hardt spent 54.80 hours under this category for total fees of $17,966.00.  This category includes, among other things, the time spent by Munsch Hardt to: review the Debtors' weekly cash reports; address issues concerning financing insurance premiums; handle the resignation of the Debtors' registered agents and the appointment of new register agents; review and evaluate Joe Blimline's proposal to acquire assets of Somerset in Jefferson County and prepare lease purchase agreement forms relating to same; and participate in multiple conferences with expert regarding operations of Jefferson County interests by Tonner Petroleum and the scope and probability of environmental liability associated with same.

**Disclosure Statement/Plan of Reorganization**.  Munsch Hardt spent 1,172.80 hours under this category for total fees of $408,545.50.  This category includes, among other things, the time spent by Munsch Hardt to: work with the Committees and Bridge on the drafting of the Gateway Motions, the Plan solicitation procedures motion, the Disclosure Statement, and the Plan; prepare for and attend the contested hearings each of the foregoing pleadings; research numerous Plan-related issues; prepare the brief in support of confirmation of the Plan and the omnibus response to the objections filed to the Plan; prepare the Confirmation Order and the proposed findings of fact and conclusions of law in support of confirmation of the Plan; and prepare the objection to the motion for stay of the Confirmation Order pending appeal.  Other than the 3013 Motion, Munsch Hardt took the lead drafting role with respect to each of the foregoing pleadings and as well as the prosecution of same.

**Communications with Trustee**.  Munsch Hardt spent 7.20 hours under this category for total fees of $2,942.00.  This category includes, among other things, the time spent by Munsch Hardt to: confer with the Trustee on issues related to the Bankruptcy Cases.

**Blimline**.  Munsch Hardt spent 11.50 hours under this category for total fees of $4,248.00.  This category includes, among other things, the time spent by Munsch Hardt to: address the sale of J2 assets acquired with the Debtors' funds; and confer with opposing counsel regarding Blimline's outstanding debt to the Debtors.

### *(b)      Rates Charged for Such Services and Their Customary Nature*

34.      Pursuant to Munsch Hardt's approved fee arrangement in the Bankruptcy Cases, Munsch Hardt's fees have been determined on an hourly fee basis, utilizing the hourly rates customarily charged by Munsch Hardt to clients of the firm in other representations.  Munsch Hardt's rates during the Compensation Period ranged from $305 to $535 per hour for shareholders, $225 to $300 per hour for associates, and $190 to $235 per hour for paraprofessionals.  As stated above, a breakdown of the hours expended by each particular attorney and paraprofessional, and the respective hourly rate associated with each such person, is set forth in summary in **Exhibit D-1**.

### *(c)      Reasonableness of Fees*

35.      Munsch Hardt submits that its hourly fee structure is comparable to other firms located in this District having bankruptcy practitioners and paraprofessionals of the same expertise and experience level as Munsch Hardt.  In fact, Munsch Hardt's blended hourly rates are the lowest of the law firms whose retention were approved by this Court.

36.      Attached hereto as **Exhibit G** are the biographies of those attorneys and paraprofessionals who were principally involved in Munsch Hardt's representation of the Trustee during the Compensation Period.

37.     Munsch Hardt further submits that the amount of fees requested by Munsch Hardt during the Compensation Period in relation to the work undertaken is within the range of fees customarily approved by bankruptcy courts in cases of similar size, complexity and contentiousness, and that Munsch Hardt's experience and expertise in complex litigation and bankruptcy matters have resulted in the efficient handling of difficult tasks which would otherwise have required a greater expenditure of time had less experienced counsel handled these matters.

### (d)     Necessary and Beneficial Nature of Services

38.     Munsch Hardt submits that its efforts in assisting and representing the Trustee in the matters generally described above have been both necessary and beneficial, and resulted in very favorable results for the Estates and ultimately the creditors of the Estates.

39.     Although several of the asset sales involved many painstaking hours of preparation and work, Munsch Hardt believes that the results achieved from the asset sales described above were excellent.  Both auctions brought qualified bidders with serious interests in the assets, resulting in robust and spirited auctions.  The sales were extremely successful and resulted in much better than expected sales proceeds.  Additionally, the claims analysis and objection process eliminated a number of duplicate, amended and/or late-filed claims.  The combination of increased sales proceeds with the disallowance of numerous claims was beneficial to the Debtors' Estates.

### (e)     Reasonableness of Time Expended and Time Constraints

40.     Munsch Hardt's attorneys and paraprofessionals expended only that time which they deemed necessary to accomplish the Trustee's objectives in the Bankruptcy Cases.  While

certain of the issues encountered during the Compensation Period were not unduly complicated, many others were complex, novel and extremely time-consuming.

41.     Given the contentious nature of certain matters in the Bankruptcy Cases and the situation in which the Trustee was appointed, Munsch Hardt attorneys have been required to devote substantial amounts of time to Munsch Hardt's representation of the Trustee.  This, in turn, has limited their ability to take on other significant, long-term engagements.

**C.     Application of Standards to Munsch Hardt's Request for Allowance of Expenses**

42.     Munsch Hardt requests allowance of expenses actually incurred during the Compensation Period in the amount of $49,924.87.

43.     Munsch Hardt's expenses were charged at the same rates applied to Munsch Hardt's clients outside of the bankruptcy context.  With respect to in-house photocopying expenses, Munsch Hardt charged $0.20 per page.  With respect to facsimile expenses, Munsch Hardt charged $0.50 per page.  For outside vendors utilized by Munsch Hardt, such expenses were passed on at the actual cost incurred by Munsch Hardt.  As noted above, a summary of expenses incurred by Munsch Hardt during the Compensation Period is attached hereto as **Exhibit F-1**, with the summary of expenses during the Engagement Period attached hereto as **Exhibit F-2**.

44.     To the best of Munsch Hardt's knowledge, all of the expenses sought to be allowed and reimbursed are in compliance with the U.S. Trustee's Guidelines.

## VII.  CONCLUSION

WHEREFORE, Munsch Hardt respectfully requests that the Court:

(i)    allow, on a final basis, Munsch Hardt's fees and expenses that were previously allowed by the Court on an interim basis, totaling $1,640,096.99;

(ii)   approve the final allowance of compensation for services rendered and reimbursement of actual and necessary out-of-pocket expenses incurred during the Compensation Period in the aggregate amount of $1,387,180.37;

(iii)  authorize the immediate payment to Munsch Hardt of the unpaid amount owing to Munsch Hardt during the Compensation Period totaling $267,451.10; and

(iv)   grant it such other and further relief as is just and equitable.

Respectfully submitted on this 12th day of August, 2010.

**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile:  (214) 855-7584

By:____/s/ Kevin M. Lippman_____
    Joseph J. Wielebinski
    Texas Bar No. 21432400
    Kevin M. Lippman
    Texas Bar No. 00784479
    Lee J. Pannier
    Texas Bar No. 24066705

*Attorneys for Dennis L. Roossien, Jr.,*
*Chapter 11 Trustee*

## CERTIFICATE OF COMPLIANCE

This is to certify that I have read the foregoing Application, that to the best of my knowledge, information and belief, formed after reasonable inquiry, the compensation and reimbursement sought is in conformity with the U.S. Trustee's Guidelines, and the compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable than those customarily employed by Munsch Hardt Kopf & Harr, P.C. and generally accepted by its clients.

    /s/ Kevin M. Lippman       
Kevin M. Lippman

## CERTIFICATE OF SERVICE

On this 12th day of August, 2010, the undersigned hereby certifies that he caused Epiq Bankruptcy Solutions, LLC, as service agent, to serve a true and correct copy of the foregoing Application, <u>without exhibits</u>, upon all parties on the Master Service List, as updated from time to time, via first-class mail, postage prepaid, and upon the parties shown below, <u>with exhibits</u>, via electronic mail.

| | |
|---|---|
| Holland N. O'Neil<br>honeil@gardere.com | Michael Rochelle<br>buzz.rochelle@romclawyers.com |
| Daniel C. Scott<br>dcscott@gardere.com | David Phelps<br>dphelps@bridgellc.com |
| R. David Garlock<br>dgarlock@bridgellc.com | Tonya Ramsey<br>tramsey@velaw.com |
| Dennis L. Roossien<br>droossien@munsch.com | George F. McElreath<br>George.f.mcelreath@usdoj.gov |

    /s/ Lee J. Pannier       
Lee J. Pannier
